1   Thomas J. LaLanne (SBN 55199)
      tomlalanne@sbcglobal.net
2   Law Offices of Thomas J. LaLanne
    369 Broadway
3   San Francisco, CA  94133
    Tel:    (415) 434-1122
4   Fax:    (415) 434-1125

5   Attorneys for Defendants James C. Castle
    (aka J. Christopher Castle),  CCTT Group;
6   CJT Financial Group; and Oreplex International LLC

7   Ann McFarland Draper (State Bar No. 65669)
      ann@draperlaw.net
8   Draper Law Offices
    601 Montgomery Street, Suite 1150
9   San Francisco, California 94111
    Tel:    (415) 391-4200
10   Fax    415) 989-4739

11   Attorneys for Defendant James C. Castle
    (aka J. Christopher Castle)

12

13            **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15            **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 16   FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al, | Case No. 3:11-cv-00896 -SI |
| 17           Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| 18 | |
| 19     vs. | |
| 20   JAMES C. CASTLE aka J. CHRISTOPER CASTLE, et al, | **Hearing** |
| 21         Defendants. | Date:       November 4, 2011 |
| 22 | Time:       9:30 a.m. |
| | Courtroom:  Courtroom 10 |
| | Judge:      Hon. Susan Illston |
| 23 | No Trial Date Set |

24

25

26

27

28

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ........................................................................................................... 1

**LEGAL ARGUMENT** .................................................................................................... 3

    **I.**    **PLAINTIFFS HAVE FAILED TO ESTABLISH THAT A PRELIMINARY INJUNCTION SHOULD BE ISSUED** ................................................................. 3

        A.    Plaintiffs' Motion Is Based On An Incorrect Standard For Determining Whether A Preliminary Injunction Should Be Issued ................................. 3

        B.    Plaintiffs Have Not Offered Any Evidence – Let Alone Admissible Evidence – That They Are Likely To Succeed On The Merits ................. 4

            1.    Plaintiffs Offer No Evidence That They Will Prevail On Their Substantive Claims ....................................................................... 4

            2.    Plaintiffs Have Not Established That They Are Likely To Prevail On Their Claim For A Constructive Trust ...................................... 6

        C.    Plaintiffs Have Not Shown That They Are Likely To Suffer Irreparable Harm In The Absence of A Preliminary Injunction ................................... 7

        D.    Plaintiffs Have Not Shown That The Balance of Equities Tips In Their Favor .............................................................................................. 9

        E.    Plaintiffs Have Not Shown That There Is No Public Interest Involved .... 10

    **II.**    **IF THE COURT CONSIDERS ISSUANCE OF THE INJUNCTION IT MUST BE NARROWLY TAILORED AND AN ADEQUATE BOND REQUIRED** ................................................................................................ 10

    **III.**    **OBJECTIONS TO EVIDENCE** ....................................................................... 11

**CONCLUSION** ............................................................................................................. 12

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Advertise.com, Inc. v. AOL Advertising, Inc.,*
    616 F.3d 974 (9th Cir. 2010)..................................................................................... 4

4

*Engalla v. Permanente Medical Group, Ins.,*
    15 Cal.4th 952 (1997) .............................................................................................. 5

5

6

*FTC v. John Beck Amazing Profits, LLC,*
    2009 U.S. Dist. LEXIS 130923, 45 (C.D. Cal.  2009)..................................................... 10

7

*FTC v. Willms,*
    2011 U.S. Dist. LEXIS 103160, 34 (W.D. Wash. 2011) ............................................... 10

8

9

*Independent  Living Center of Southern California, Inc. v. Maxwell-Jolly,*
    572 F.3d 644 (9th Cir. 2009)............................................................................. 10, 11

10

*Johnson v. Couturier,*
    572 F.3d 1067 (9th Cir. 2009) ................................................................................ 8

11

12

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
    941 F.2d 970 (9th Cir.1991)................................................................................... 11

13

*Lazar v. Hertz Corp.,*
    143 Cal. App. 3d 128 (1983)................................................................................ 4, 7

14

15

*Los Angeles Memorial Coliseum Commission v. NFL,*
    634 F.2d 1197 (9th Cir. 1980)................................................................................. 8

16

*Matek v. Murat,*
    862 F.2d 720 (9th Cir. 1988).................................................................................. 4

17

18

*Mattel, Inc. v. MGA Entertainment, Inc..,*
    616 904 (9th Cir. 2010)........................................................................................ 6

19

*Moore v. Payport Package Exp., Inc.,*
    885 F.2d 531 (9th Cir. 1989).................................................................................. 5

20

21

*Religious Technology Center v. Wollersheim,*
    796 F.2d 1076 (9th Cir. 1986), cert. denied, 479 U.S. 1103 (1987) ................................ 4

22

*Sampson v. Murray,*
    415 U.S. 61, 88 (1974) ......................................................................................... 9

23

24

*TAGC Management, LLC v. Lehman, Lee & Xu Ltd.,*
    2010 U.S. Dist. LEXIS 92138 (C.D. Cal. 2010)........................................................... 9

25

*Thalheimer v. City of San Diego*
    (2011) 645 F.3d 1109.......................................................................................... 3, 4

26

*Vaccaro v. Sparks,*
    2011 U.S. Dist. LEXIS 66141, 4 (C.D. 2011) ............................................................. 9

27

28

*Winter v. NRDC*
      (2008) 555 U.S. 7 ............................................................................... 3, 7, 8, 10

*Zepeda v. United States Immigration & Naturalization Service,*
      753 F.2d 719 (9th Cir. 1983) ................................................................. 12


**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................... 5

Fed. R. Evid 401, 402 and/or 403 ............................................................................ 12

Fed. R. Evid. 602 ...................................................................................................... 12

Fed. R. Evid. 701 ...................................................................................................... 12

Fed. R. Evid 801(c) and/or 802 ............................................................................... 12

Fed. R. Evid. 901 ...................................................................................................... 12

1

**INTRODUCTION**

2      Plaintiffs here seek to obtain a preliminary injunction freezing all the assets in bank

3  accounts belonging to the enjoined defendants.[1]  However they have utterly failed to meet their

4  evidentiary burden, often not even mentioning critical elements.  They have failed to make *any*

5  evidentiary showing of wrongful conduct on the part of the enjoined defendants, much less the

6  substantial showing necessary to preclude the enjoined defendants' use of their own money

7  pending an eventual trial, perhaps years from now.  They have not set forth the correct standard

8  for obtaining a preliminary injunction and have not even addressed two of the required elements.

9  They have not *attempted* to offer evidence that they will prevail on their substantive claims.

10  Their evidentiary showing that they will prevail on their request for equitable relief in the form

11  of a constructive trust is practically nonexistent.  Finally, they offer no evidence *whatsoever* that

12  the drastic remedy of an asset freeze is warranted with respect to the enjoined defendants.

13  Plaintiffs offer nothing more than vague and sweeping conclusions about "fraud" and "schemes"

14  and "sham liens."  Talk is cheap; plaintiffs have failed to show us the evidence.  Their request for

15  a preliminary injunction must be rejected.

16      This case arises out of the debacle created in the housing market by the banking

17  industry's "securitzation" of hundreds of thousands – if not millions – of home mortgage loans

18  in the industry's relentless scheme to squeeze ever  more money from the loans they made to

19  American homeowners.  In the end, the banking industry's reckless, and often illegal,  practices

20  made them billions of dollars but caused countless ordinary people to be ruined financially and

21  brought the entire economy to the edge of disaster, avoiding that result only by the massive

22  injection of taxpayer funds into the banks (which nevertheless went back to their former, ruinous

23  practices).

---

[1]    The defendants who are subject to the court's temporary restraining order are
JAMES C. CASTLE ("Castle"), CCTT GROUP, CJT FINANCIAL GROUP, OREPLEX
INTERNATIONAL LLC. and JTF CONSULTING LLC ("JTF").  They are collectively referred
to in this memorandum as the "enjoined defendants."  Counsel does not represent JTF and the
other four enjoined defendants have no knowledge of its alleged existence or conduct.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**    1
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1    The enjoined defendants here are not the schemers portrayed by plaintiffs as seeking to

2  defraud buyers of residential properties.  Instead, the enjoined defendants (beginning with a

3  home one of them owned) sought to help other homeowners quickly sell their homes in a falling

4  market.  To do so they followed a widely available (albeit not yet tested in California courts)

5  "administrative default procedure" through which the "lender" acquiesced in reconveyance of

6  the deeds of trust for loans that had been separately assigned and then "securitized" by the

7  original beneficiary of the deed of trust (i.e., the lender). The procedure employed included the

8  conduct of a securitization audit (including an extensive search of EDGAR records) through

9  which it was determined that the lender named in the deed of trust did not own the loan

10  originally secured by the deed of trust.  The procedure also included Qualified Written Request

11  letters ("QWRs") to the lender (to which the lenders were required under RESPA and other laws

12  to respond) seeking to validate the information revealed by the securitization audit and also to

13  provide the lender with multiple opportunities to respond to the audit findings.[2]   The effect of

14  this administrative procedure was to memorialize and record that the property no longer was

15  security for the note and document that the "lender" was estopped from later claiming otherwise.

16  Plaintiffs have offered no evidence whatsoever that this procedure, or the way it was

17  implemented, is wrongful.[3]

18    This procedure was possible *only* because in each case the lender (or its successor) had

19  *voluntarily* assigned the note but not the deed of trust in order to generate more money from the

20  loan.  In the process, the lender was fully paid for the note when it sold that note and ignored

21  California law requiring that the note and deed of trust be assigned (if at all) together.  Thus,

22  although the borrower remained obligated on the note to its owner, the originating lender had no

23  ────────────────

24

25    [2]    The QWR letters requested other information as well.

26    [3]    The essence of the damages claimed is that the original lenders were not paid off
27  when the property was later sold.  However, in each case the lender refused to provide
    information (as it was required to do by federal law) establishing that it was, in fact, the owner of
28  the note.  A party cannot simultaneously refuse to provide evidence that it is entitled to enforce
    an obligation and enforce that same obligation.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**                              2
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1  legal right to foreclose.

2        The homeowner plaintiffs[4] may (or may not) have a claim for damages but if they do it is

3  against the lenders who wrongfully foreclosed on their property or otherwise clouded their title.

4  Similarly, the title company and bank plaintiffs, if they have a claim at all against the enjoined

5  defendants (which is doubtful) must rely on the contention that the enjoined defendants' conduct

6  (reconveyance of the deed of trust and failure to pay the note with the proceeds of the sale of the

7  homes) was wrongful in some manner.  They have not done so here.

8

9                                 **LEGAL ARGUMENT**

10  **I.  PLAINTIFFS HAVE FAILED TO ESTABLISH THAT A PRELIMINARY INJUNCTION SHOULD BE ISSUED**

11          **A.  Plaintiffs' Motion Is Based On An Incorrect Standard For Determining**

12                **Whether A Preliminary Injunction Should Be Issued**

13        Plaintiffs assert that the test for whether a preliminary injunction is appropriate is

14  "either a combination of probable success of [sic] merits and irreparable injury or that serious

15  questions are raised and the balance of hardships tips in his favor."  *See Memorandum of Points*

16  *and Authorities In Support of Exparte Motion For A Temporary Restraining Order, Order to*

17  *Show Cause Why a Preliminary Injunction Should Not Issue And Other Relief* ("Plaintiffs'

18  MPA") at 22:5-11.  This is simply not correct.

19        A party seeking a preliminary injunction must establish four elements:  (1) that he is

20  *likely* to succeed on the merits; (2) that he is *likely* to suffer *irreparable harm* in the absence of

21  preliminary relief; (3) that the balance of equities tips in his favor; and (4) that the injunction is

22  in the public interest.  *Winter v. NRDC* (2008) 555 U.S. 7, 20; *Thalheimer v. City of San Diego*

23  (2011) 645 F.3d 1109, 1115.  Plaintiffs have not even addressed the third and fourth required

24  elements at all, and have provided no evidence to support their bare claim that the first two

25  elements militate in their favor.

26  _____

27

28      [4]      The homeowner plaintiffs are those who bought the properties on which the deeds
of trust had been reconveyed.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI     3

1

**B.**     <u>Plaintiffs Have Not Offered Any Evidence – Let Alone Admissible Evidence –</u>
<u>That They Are Likely To Succeed On The Merits</u>

2

3

       **1.**     <u>Plaintiffs Offer No Evidence That They Will Prevail On Their</u>
<u>Substantive Claims</u>

4

       The first element that Plaintiffs must establish is that they are likely to prevail on the

5

merits of their substantive claims.  Unless that showing is made, the court need not consider the

6

remaining elements required for a preliminary injunction.  *See Thalheimer v. City of San Diego,*

7

*supra,* at1115; *Advertise.com, Inc. v. AOL Advertising, Inc.,* 616 F.3d 974, 982 (9th Cir. 2010);

8

*see also Lazar v. Hertz Corp*., 143 Cal. App. 3d 128, 139 (1983) (constructive trust requires

9

establishment of underlying claim).

10

       Here, Plaintiffs have made no attempt to show that they will prevail on their substantive

11

claims for fraud, conspiracy to defraud, Racketeer Influenced and Corrupt Organizations Act

12

("RICO") violation,[5] breach of contract, and breach of implied covenant to convey merchantable

13

title against the enjoined defendants.  Indeed, they barely mention these claims in their

14

supporting papers.   Instead they have submitted approximately 600 pages of purported

15

"evidence" but have provided no reference to any element of their claims.  It imposes an

16

intolerable burden on the Court and opposing counsel to expect them to dig through plaintiffs'

17

voluminous documentary "evidence" in quest of any admissible evidence that would likely prove

18

plaintiffs' claims.  Nevertheless, defendants' counsel has done so and found that there is none to

19

be had.

20

       For example, consider plaintiffs' First Cause Of Action for fraud.  *See First Amended*

21

*Complaint For: 1. Fraud, etc.* ("FAC") ¶¶ 222-228.[6]  Under California law the elements of fraud

22

that give rise to a tort action for deceit are (1) misrepresentation (false representation,

23

24

25

      [5]     The law is settled in this Circuit that an injunction is not available to a private
RICO plaintiff.  See *Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988), citing *Religious*

26

*Technology Center v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986), cert. denied, 479 U.S.
1103 (1987).

27

      [6]     Only three transactions directly implicate the enjoined defendants: Brown Street

28

(see Plaintiffs' MPA at3:12-4:12), Loch Dane (see Plaintiffs' MPA at 6:5-7:5), and Northcrest
(see Plaintiffs' MPA at 10:14-11:27).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**       4
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1  concealment or nondisclosure; (2) knowledge of falsity ("scienter"); (3) intent to defraud, i.e., to

2  induce reliance; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente*

3  *Medical Group, Ins.,* 15 Cal.4th 952, 974 (1997). While Plaintiffs' MPA is replete with

4  conclusory references to "fraud" and "fraudulently" and "sham" acts and "schemes," they proffer

5  *no* evidence that identifies a false representation, concealment or nondisclosure by the enjoined

6  defendants to the plaintiffs.[7] In fact, the FAC falls woefully short of the Rule 9(b) standards for

7  pleading fraud with particularity; the FAC also relies heavily on generic allegations that each

8  defendant is the "agent" and "alter ego" of each other defendant, but fails to specifically identify

9  the particular conduct attributable to each of the defendants. While these are matters that will be

10  raised in the Rule 12 motions, these legal deficiencies in pleading also infect the motion for

11  preliminary injunction. Thus, for example, while Plaintiffs allege that defendant Castle

12  represented that he owned the Brown Street property free and clear of liens and showed the

13  Brown Street reconveyance to prove that fact (*see* Plaintiffs' MPA at 3:25-28), *they offer no*

14  ***evidence*** *that this statement is false, nor have they alleged or established the elements of actual*

15  *and justifiable reliance.* Plaintiffs also argue that none of their purchase money was used to pay

16  off the note (*see* Plaintiffs' MPA at 4:1-5), but again *there is no evidence that the defendants had*

17  *a duty to pay the note or had promised to do so.*

18      Plaintiffs contend that the Loch Dane and Northcrest properties involved "sham" sales

19  because defendants did not actually make the loans to the buyers of the properties although they

20  recorded a deed of trust stating there was such a loan. *See* Plaintiffs' MPA at 6:10-14 and 10:22-

21  25 and Exhibits 11 and 32. But *absolutely no evidence is produced that such loans were not*

22  *made.* The motion is based on suspicion and surmise. In fact, the exact same allegations are

23  made in the FAC on information and belief (*see* FAC ¶¶ 115 and 148), and plaintiffs offer no

24

25  _____

26

27      [7]    There are neither charging allegations nor admissible evidence connecting the
enjoined defendants with the other transactions. See Fed. R. Civ. P. 9(b) and *Moore v. Payport*
28  *Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) [pleadings must specify "the time, place
and nature of the alleged fraudulent activities"].

1   better evidence here.[8]

2          There is a similar lack of evidence to establish that the defendants knew of the alleged

3   falsity, intended to defraud the plaintiffs, that the plaintiffs justifiably relied on the alleged

4   misrepresentations or that there any resulting damages.  Instead of providing admissible

5   evidence, plaintiffs attempt to focus solely on whether they have established a right to a

6   constructive trust and asset freeze pending trial.  Constructive trust, however, is an equitable

7   *remedy* that compels the transfer of wrongfully held property to its rightful owner.  *Mattel, Inc. v.*

8   *MGA Entertainment, Inc.*, 616 904, 908-909 (9th Cir. 2010);  Plaintiffs have put the cart before

9   the (in this case nonexistent) horse.  First they must establish that they have legally viable claims

10  upon which they are likely to prevail at trial.  Only then can they proceed to establish that they

11  would be entitled to a constructive trust based on those claims.  As it turns out they can do

12  neither.[9]

13          **2.     Plaintiffs Have Not Established That They Are Likely To Prevail On**
            **Their Claim For A Constructive Trust**

14

15          Even assuming plaintiffs had provided evidence to establish that they are likely to prevail

16  on their substantive claims, they have not provided evidence that they would then be entitled to a

17  constructive trust.

18          Plaintiffs correctly argue that they must show three elements to justify the imposition of a

19  constructive trust: (1) the existence of a *res*; (2) the plaintiff's right to that *res*, and (3) the

20  defendant's gain of that *res* by a wrongful act.  *Lazar v. Hertz Corp.*, *supra*, at 139.  But they fail

21  to provide evidence of those elements.

22          Plaintiffs identify the *res* as the money that (some of the) homeowner plaintiffs paid the

23  _____

24

25          [8]     Plaintiffs also contend that the reconveyances to the home buyers were signed by
    Carl Wallace as an authorized agent for the original lender.  See Plaintiffs' MPA at 6:15-19, 11:
26  1-8.  Mr. Wallace is not an enjoined defendant but defendants note that there is no evidence
    proffered that he is not an authorized agent.

27
            [9]     Note that an injunction is a matter of equitable discretion; it does not follow from
28  success on the merits as a matter of course.  *Winter v. NRDC, Inc., supra,* at 32.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**                    6
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1   enjoined defendants when they purchased their homes.   *See* Plaintiffs' MPA 22:23-24.

2   However, they proffer no evidence of any kind whatsoever that the res they claim resides in the

3   frozen assets.  A constructive trust in a specific *res* is not the same as a general attachment of

4   funds to secure a damages claim.[10]  Plaintiffs claim they have a right to the *res* "because the liens

5   that those monies should have been used to pay either remain on their properties or have been

6   foreclosed on.  *See* Plaintiffs' MPA 22:23-25.  But plaintiffs have not even alleged, much less

7   provided (admissible) evidence, that the enjoined defendants ever had an obligation to pay off

8   the note, which was no longer secured by the real property.  The alleged wrongful act is asserted

9   to be diverting the "[p]laintiffs' purchase monies for [the enjoined defendants'] own use by

10  fraudulently reconveying the legitimate deed of trust on the property thereby allowing [the

11  enjoined defendants] to abscond with [p]laintiffs' purchase money.  *See* Plaintiffs' MPA 22:25-

12  27.  There is no evidence supporting this argumentative assertion.  No evidence was presented

13  that the deed of trust was "fraudulently" reconveyed.  In any case the alleged "wrongful act" is

14  unconnected to the alleged right of the plaintiffs to the *res*:  If their right to the money is based

15  on the enjoined defendants' failure to pay the note that was originally secured by the real

16  property, the enjoined defendants' reconveyance is irrelevant.

17          Plaintiffs have failed to show that it is likely that they will obtain a constructive trust on

18  the enjoined defendants' assets after a trial on the merits; they thus cannot obtain a preliminary

19  injunction on that theory now.

20          **C.    <u>Plaintiffs Have Not Shown That They Are Likely To Suffer Irreparable</u>**
            **<u>Harm In The Absence of A Preliminary Injunction</u>**

21

22          Plaintiffs seeking preliminary relief must also demonstrate that irreparable injury is likely

23  in the absence of an injunction.  *Winter v. NRDC, Inc.*, *supra*, at 22.  All of plaintiffs' claims of

24  irreparable injury constitute monetary harm.  *See* Plaintiffs' MPA 23:1-18.  Monetary injury is

25  not normally considered irreparable.  *Los Angeles Memorial Coliseum Commission v. NFL,* 634

26  _____

27

28          [10]     Plaintiffs neither seek, nor are they entitled to, a Right To Attach Order.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO               7
MOTION FOR PRELIMINARY INJUNCTION; Case No. 3:11-cv-00896 SI

1    F.2d 1197, 1202 (9th Cir. 1980).

2           Plaintiffs claim here, however, that the preliminary relief of an "asset freeze" is necessary

3    because the defendants "will dispose of, conceal or send abroad all of the Assets."  *See* Plaintiffs'

4    MPA 23:15-16.  Their evidence for this claim:  None!

5           A party seeking an asset freeze must show a *likelihood* of dissipation of the claimed

6    assets, or other inability to recover monetary damages, if relief is not granted.  *Johnson v.*

7    *Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).  Not a single piece of the voluminous so-called

8    "evidence" submitted in support of this motion justifies even an inference that the enjoined

9    defendants will abscond with money claimed by plaintiffs, and plaintiffs do not argue that there

10   is such evidence.  Instead they contend that "it is clear from Defendants' blatant disregard of the

11   law and their utter disregard for the welfare of their victims that absent the Asset Freeze,

12   Defendants will dispose of, conceal or send abroad all of the Assets."  *See* Plaintiffs' MPA

13   23:14-16.   The court in *TAGC Management, LLC v. Lehman, Lee & Xu Ltd.*, 2010 U.S. Dist.

14   LEXIS 92138 (C.D. Cal. 2010) decisively rejected a similar claim:

15              Plaintiffs conclusorily argue that, because the alleged facts in this
                case paint Defendant [the defendant] as a fraudster "there is a
16              substantial likelihood that [he] will flee the Court's jurisdiction [if
                temporary relief is not granted.]" Pl.'s Mem. at 20. The fact that
17              Defendants may have been engaged in some sort of fraud does not
                automatically justify the issuance of an asset freeze. Plaintiffs
18              allegations of injury are financial in nature and, therefore,
                compensable. In addition, although Plaintiffs speculate that a given
19              defendant's willingness to commit a fraud evinces the same

20              defendant's willingness to wrongfully dissipate assets or to flee the
                Court's jurisdiction, "[s]peculative injury does not constitute
21              irreparable injury." [Citation omitted.]  The only support that
                Plaintiffs offer for the specific claim that Defendants are likely to
22              dissipate assets or flee the Court's jurisdiction is the conjectural
                assertion that "[defendant] will go to any length to achieve his goal
23              [of defrauding Plaintiffs]." Pl.'s Mem. at 20. Plaintiffs have failed
                to meet their burden of showing that they are entitled to the
24              "drastic remedy" of emergency injunctive relief. [Citation
                omitted.]

25

26   *Vaccaro v. Sparks*, 2011 U.S. Dist. LEXIS 66141, 4-6 (C.D. 2011).  *Ad hominem* attacks cannot

27   substitute for evidence establishing that irreparable harm to the plaintiffs is likely in the absence

28   of injunctive relief.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**                    8
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1       In this case, no evidence of any kind has been produced that even purports to establish

2   that "[d]efendants will dispose of, conceal or send abroad all of the Assets."  In such

3   circumstances a preliminary injunction is improper.  *See Sampson v. Murray*, 415 U.S. 61, 88,

4   91-92 (1974) (when no witnesses were heard on the issue of irreparable injury, respondent's

5   complaint was not verified, and affidavit she submitted to the District Court did not touch in any

6   way upon considerations relevant to irreparable injury order for preliminary injunction was

7   improper).  And even if there were evidence of fraud, such evidence, alone, would be insufficient

8   to justify an asset freeze.  *Compare FTC v. John Beck Amazing Profits, LLC*, 2009 U.S. Dist.

9   LEXIS 130923, 45-46 (C.D. Cal.  2009) (fraud alone will not justify an asset freeze) *with FTC v.*

10  *Willms*, 2011 U.S. Dist. LEXIS 103160, 34-35 (W.D. Wash. 2011) (evidence that defendants had

11  likely engaged in misleading marketing practices, had foreign bank accounts through which they

12  transferred funds and email activity suggested the movement of funds outside of the United

13  States might have been for an improper purpose justified asset freeze).  The enjoined defendants

14  have no such foreign bank accounts and have not transferred any monies they have received to

15  such accounts.  *See* Castle Decl. ¶ 11.

16      An asset freeze is not justified in such circumstances.  *See FTC v. Willms, supra,* at 35

17  (asset freeze could not be ordered against defendants who did not engage in offshore transfer of

18  assets).

19      Plaintiffs have not produced any evidence, much less sufficient evidence, to justify

20  freezing the assets of the enjoined defendants.

21      **D.**    <u>**Plaintiffs Have Not Shown That The Balance of Equities Tips In Their Favor**</u>

22      In order to obtain preliminary relief the plaintiffs mush show that the balance of equities

23  tips in their favor.  In each case, courts must balance the competing claims of injury and must

24  consider the effect on each party of the granting or withholding of the requested relief. *Winter v.*

25  *NRDC*, Inc., *supra*, at 24; *Independent  Living Center of Southern California, Inc. v. Maxwell-*

26  *Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

27      Plaintiffs have made no effort to address the balance of equities in their request for a

28  preliminary injunction.  The only "equity" in favor plaintiffs is apparently the speculation that

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**     9
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1  the enjoined defendants might possibly abscond with the funds before trial.  As set forth in Part

2  C, above, that is insufficient to support a preliminary injunction.

3      On the other hand, the equities in favor of *not* issuing the preliminary injunction are

4  substantial.  Defendant Castle requires approximately $10,500 per month to meet the basic

5  expenses of himself and his family.  *See* Castle Decl. ¶ 8   He also needs funds to defend this

6  litigation.

7      The funds in the bank accounts to which he has access are the major source of paying

8  those expenses.  *Id*. ¶ 10 To preclude him from accessing those accounts during what no doubt

9  will be protracted litigation would cause serious financial hardship and could eventually lead to

10  bankruptcy.  *Id*.  Such a result would be  unconscionable in any circumstance but particularly so

11  here where the defendants have done nothing more than sling insults without any supporting

12  evidence.

13      **E.      Plaintiffs Have Not Shown That There Is No Public Interest Involved**

14      The public interest analysis for the issuance of a preliminary injunction requires the court

15  to consider whether there exists some critical public interest that would be injured by the grant of

16  preliminary relief.  *Independent Living Center of Southern California, Inc., supra* 659.  Plaintiffs

17  have failed to produce any evidence or argument on this one way or another.

18
19  **II.     IF THE COURT CONSIDERS ISSUANCE OF THE INJUNCTION IT MUST BE
      NARROWLY TAILORED AND AN ADEQUATE BOND REQUIRED**

20      Injunctive relief must be tailored to remedy the specific harm alleged.  *Lamb-Weston, Inc.*

21  *v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir.1991).  An overbroad injunction is an abuse

22  of discretion. *Ibid*.  This is particularly true when a preliminary injunction is involved.  *Zepeda v.*

23  *United States Immigration & Naturalization Service*, 753 F.2d 719, 728, fn. 1 (9th Cir. 1983).

24      In this case if the court considers issuing an injunction at all (and the enjoined defendants

25  vehemently dispute that an injunction would be improper) it must *exclude* from the order

26  freezing assets such funds as are necessary to permit Castle expend the reasonably necessary

27  funds for his living expenses and funds necessary for the enjoined defendants to defend

28  themselves in this lawsuit (costs which are likely to be extremely substantial).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI          10

1        In addition, the court should require the plaintiffs to post a bond adequate to cover the

2    losses to the enjoined defendants in the event they do not prevail. That would include loss of

3    home, automobile, interest, damage to credit, and the collateral damage from loss of access to

4    funds necessary to defend this action.  The current bond of $10,000 is woefully inadequate. *See*

5    *Declaration of Ann McFarland Draper In Opposition to Plaintiffs' Motion for Preliminary*

6    *Injunction*.

7    **III.   OBJECTIONS TO EVIDENCE**

8

9        Defendants object to the declarations, documents and request for judicial notice proferred

10   by Plaintiffs as "evidence" in support of their *Ex Parte Motion For A Temporary Restraining*

11   *Order, Order to Show Cause Why A Preliminary Injunction Should Not Issue*, specifically the

12   declarations of David Hanna, Wesley Halihan, Li-Ling Sung, Richard Heinz, Brian Phuong,

13   Tamar Schiller and Stephen Seto, as well as the Request for Judicial Notice.  Defendants further

14   request that all inadmissible evidence be stricken and be not considered by the Court in

15   determining the issues raised in the motion.

16       The proffered "evidence" is replete with inadmissible hearsay, and includes material that

17   is irrelevant, argumentative, and for which the declarant lacks personal knowledge or

18   competence.  The attached exhibits are also inadmissible hearsay, are unauthenticated, and in

19   most cases lack foundation.  These deficiencies are particularly egregious in the case of the

20   Tamar Schiller, who is merely a claims counsel for Plaintiff Fidelity National Title, yet attempts

21   (improperly) to authenticate voluminous documents for which she lacks personal knowledge, is

22   not the custodian, and cannot lay a foundation for admissibility.  No explanation is given as to

23   why evidence was not proffered through competent witnesses – such as a title officer in charge

24   of the title plant, or a bank officer as to loan documents, or an escrow officer as to escrow

25   documents . . . particularly in light of the fact that movants spent months preparing their motion

26   papers.

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**                 11
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI

1    In addition, although Tamar Schiller's declaration allegedly attaches 79 exhibits, counsel

2  is unable to locate Exhibits 71 through 75 anywhere in the ECF system, and therefore concludes

3  that they were never filed.  Defendant objects to any consideration of these unfiled exhibits.

4    A party's declaration testimony is properly disregarded where the declaration cannot be

5  based upon otherwise inadmissible evidence, including but not limited to: statements of "fact"

6  that are irrelevant, immaterial and/ or prejudicial (Fed. R. Evid 401, 402 and/or 403); statements

7  that are hearsay (Fed. R. Evid 801(c) and/or 802; statements that lack foundation (Fed. R. Evid.

8  602); and statements of opinion (Fed. R. Evid. 701).  Statements that lack documentary support

9  and/or are contrary on their face are likewise inadmissible (Fed. R. Evid. 602 and 901).

10 Declarations containing such inadmissible evidence are to be disregarded by a court.

11   The motion papers comprise approximately 600 pages of documents.  The declarations

12 submitted consist uniformly of inadmissible material, and there are numerous exhibits.

13 Defendants have set forth the general nature of their evidentiary objections above, in the body of

14 the brief, but under the circumstances, given the overwhelming volume of evidence and the

15 extent of inadmissibility involved, Defendants will also submit a separate Supplement Detailing

16 Defendants' Evidentiary Objections and an administration motion seeking leave to do so.

17

18                                    **CONCLUSION**

19          It goes without saying that an injunction is an equitable remedy. It
            "is not a remedy which issues as of course," [citation omitted] or
20          "to restrain an act the injurious consequences of which are merely
            trifling." [Citation omitted.]  An injunction should issue only
21          where the intervention of a court of equity "is essential in order
            effectually to protect property rights against injuries otherwise
22          irremediable."

23 *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982).  Plaintiffs have not even

24 attempted to meet this high standard.  Therefore, based on the arguments and authorities stated

25 herein, the enjoined defendants request this court to (1) dissolve the temporary restraining order

26 issued against the enjoined defendants and (2) deny the plaintiffs' motion for a preliminary

27 injunction and expedited discovery.  In the event the court does issue an injunction, it must

28 exclude a restraint on monies necessary for the enjoined defendants to meet their living expenses

1   and costs in this litigation and require a substantial bond to be posted by the plaintiffs to protect

2   the enjoined defendants.

3

4   DATED: October 10, 2011                    RESPECTFULLY SUBMITTED,

5                                              **LAW OFFICES OF THOMAS J. LALANNE**

6
                                   By:         _____/s/ Thomas J. LaLanne_____
7                                              THOMAS J. LALANNE

8                                              Attorneys for Defendants James C. Castle
                                               (aka J. Christopher Castle),  CCTT Group;
9                                              CJT Financial Group; and Oreplex International
                                               LLC
10

11                                             **DRAPER LAW OFFICES**

12                                 By:         _____/s/ Ann M. Draper_____
13                                             ANN McFARLAND DRAPER

                                               Attorneys for Defendant James C. Castle
14                                             (aka J. Christopher Castle)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**                     13
**MOTION FOR PRELIMINARY INJUNCTION**; Case No. 3:11-cv-00896 SI