United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FIDELITY NATIONAL TITLE INSURANCE
COMPANY, *et al.*,

               Plaintiffs,

  v.

JAMES CASTLE, *et al.*,

               Defendants.

                             /

No. C 11-00896 SI

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

Before the Court is defendants' October 25, 2011 motion to dismiss plaintiffs' complaint. The motion is scheduled for a hearing on December 9, 2011. Pursuant to local civil rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss, and GRANTS plaintiffs leave to amend the complaint. If plaintiffs wish to amend the complaint, the amended complaint must be filed by December 22, 2011.

**BACKGROUND**

On August 31, 2011, plaintiffs[1] filed a First Amended Complaint ("FAC") alleging twelve causes of action against defendants.[2] Plaintiffs allege federal causes of action under the Racketeer Influenced

---

[1] Plaintiffs include Fidelity National Title Insurance Company, Ally Bank, Wesley W. Halihan, Gina L. Halihan, Li-Ling Sung, Tiee-Shan Tsai, Tatyana Madina, Commonwealth Land Title Insurance Company, Dawn R. Carifi, Karrie L. Hanna, Brian Phuong, Crichton Friedly, and Janet N. Friedly.

[2] Defendants include James Castle, Lara Karakasevic, Christopher Piscatelli, Brian Keith Liberia, John Sanders, Alicia Sanders, Shined-te-east-a, Walks With Spirit, Corporation Sole, John-Michael Di Chara, Golden Hills Trust, Remus Kirkpatrick, Sarah Contessa, Carolyn Hilbert, Laura Pezzi, Carl

United States District Court
For the Northern District of California

1  and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, for racketeering and conspiracy. They also

2  allege several state law causes of action against defendants claiming, in short, that they were defrauded

3  by defendants out of at least $1.7 million dollars in nine real estate transactions. Plaintiffs seek

4  compensatory damages, punitive damages, declaratory and injunctive relief, constructive trusts, and

5  attorneys' fees and costs.

6       The gravamen of the complaint is that defendants executed fraudulent reconveyances of

7  mortgage lenders' deeds of trusts on homes, thereby allowing defendants to represent to various

8  homebuying-plaintiffs that the homes were free and clear of liens when, in fact, they were burdened by

9  legitimate liens. After plaintiffs purchased the homes, the lenders discovered the fraudulent

10  reconveyances, cancelled them, and proceeded to foreclose on plaintiffs' properties. Plaintiffs allege

11  variations on this scheme committed by defendants, some involving phantom loans and phony short

12  sales that allowed plaintiffs' purchase moneys to flow into defendants' coffers, instead of back to the

13  legitimate lender. FAC ¶¶ 88-93.[3]

14       For example, in one iteration of the scheme known as the "Loch Dane Scheme," defendant Laura

15  Pezzi allegedly borrowed $396,000 from SCME Mortgage Bankers, Inc. in 2006; the loan was later

16  assigned to Aurora Loan Services. FAC ¶114. The loan was secured by a deed of trust ("Aurora DOT")

17  against defendant Pezzi's property, located at 4137 Loch Dane Court, Antelope, California. FAC ¶¶28,

18  114. In April 2010, defendant Pezzi signed and recorded a $374,000 deed of trust ("Oreplex DOT") in

19  favor of defendant Oreplex International LLC, which plaintiffs allege is controlled by defendant Castle.

20  FAC ¶115. Plaintiffs allege that this was a sham lien in that no money was ever actually loaned to

21  _____

22  Wallace, Oreplex International LLC, Real Estate Star LLC, Henrik Jensen, Todd J. Smith, Daniel R.
Young, Kelly E. Young, Brianna Hanson, Alatus Equity LLC, Kevin Keith, Christy Keith, Jennifer

23  Pezzi, Brenda Henderson, Financial Recovery Group, David Thompson, Melissa Thompson, Carl
Wallace, CCTT Group, Tisha Tribes, Terry Petty, Faced Ewers, Nadia Ewers, John Winter, Jolee Lange,

24  Ryan Styles, Bug Real Estate, Inc, Randall Crawford, Jason Young, Steve Danger, Donald Porto,
Patricia Porto, Tien Huynh-Danger, CF Escrow, Inc., Michelle Dornon, Tisha Tribes Realty, CJT

25  Financial Group, GJZ Group, Golden Hills Group, AFOG Group, CPC Mission Trust, and DOES 1
through 100.

26

27      [3] Without admitting to the allegations, in their briefing papers defendant Castle characterizes
defendants' activities as part of an "administrative default procedure," a purported assistance program
for homeowners burdened by liens that became invalid after their original lender securitized and sold

28  the loan. *See* Def.'s Opposition to Pl's Mot. for Preliminary Injunction, Doc. 70, at 2:20-24.

defendants.  FAC ¶115.  Defendants thereafter executed a reconveyance purportedly reconveying the Aurora DOT back to defendant Pezzi.  FAC ¶116.  The reconveyance is signed by Carl Wallace as an "authorized representative" of GMAC Mortgage.  FAC Ex. 27.  In May 2010, Nobuco Financials purchased the property from defendant Pezzi.  FAC ¶118.  Nobuco Financials then "flipped" the property to Real Estate Star LLC.  Id.  In August 2010, Real Estate Star sold the property to plaintiff Madina.  FAC ¶119.  However, because of the previous fraudulent reconveyance of the Aurora DOT back to Pezzi, none of the sale proceeds went to pay off the actual lien against the property through the Aurora DOT.  FAC ¶120.  After the sale closed, Aurora discovered and cancelled the fraudulent reconveyance.  FAC ¶121.  Aurora has since foreclosed on the Aurora DOT and has commenced unlawful detainer proceedings to remove Madina from her residence.  FAC ¶121.

Plaintiffs also allege ongoing and currently uncompleted fraudulent schemes similar to those already completed that involve several other properties where defendants have borrowed a significant amount of money from a financial institution secured by a deed of trust against a defendant's property.  *See*, FAC ¶¶189-194.  Defendants then signed and recorded a deed of trust in favor of a defendant entity in exchange for a loan.  Plaintiffs allege that these too are sham transactions because no money is being exchanged between the defendants and the defendant entity.  *See, e.g.*, FAC ¶190.  Plaintiffs allege that defendants are now attempting to sell these properties in a similar manner as the previously completed transactions.  *See, e.g.*, FAC ¶194.

Along with filing the FAC, plaintiffs filed an ex parte motion for a temporary restraining order to freeze the assets of each defendant, which the Court granted on September 6, 2011.  The temporary restraining order was dissolved on September 13, 2011 against all defendants except James C. Castle and related entities owned, managed, or controlled by him: defendants CCTT Group, CJT Financial Group, OREPLEX LLC, and JTF Consulting LLC.  Plaintiffs then moved for a preliminary injunction to continue the asset freeze, which the Court granted on December 5, 2011.

Defendant Castle and his wife Lara Karakasevic, as well as three companies "related to them," Oreplex International ("Oreplex"), CCTT Group ("CCTT"), and CJT Financial Group ("CJT") (collectively, the "moving defendants"), moved to dismiss the FAC on October 25, 2011.  Plaintiffs filed an opposition on November 8, 2011, and defendants replied on November 23, 2011.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).  While courts do not require "heightened fact pleading of specifics," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Id.*

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Defendants argue as a general matter that plaintiffs have failed to allege a short and plain statement of their claims.  They also argue that plaintiffs have failed to state a claim for fraud (first cause of action), conspiracy (second), RICO violations (third), RICO conspiracy (fourth), breach of contract (fifth), breach of implied covenant to convey merchantable title (sixth), equitable indemnity (ninth), constructive trust (tenth), and respondeat superior (twelfth).  Defendants do not move specifically to

1  dismiss the claims for negligence (seventh), notary liability (eighth),  or negligent supervision

2  (eleventh).  Defendants arguments will be discussed in turn.

3

4          **I.      "Short and Plain" Statement Requirement**

5          Federal Rule of Civil Procedure 8(a) requires a plaintiff to present his or her case in a pleading

6  that contains a "short and plain statement" showing that the pleader is entitled to relief.  FRCP 8(a).

7  Defendants argue that the plaintiffs have failed to do so, having instead filed an FAC that is 44 pages

8  long, with approximately 565 pages of exhibits, 13 plaintiffs and 52 defendants.  MTD at 2.  Defendants

9  point out that the complaint is broken into "disconnected parts," one identifying the "schemes" of which

10  each defendant is alleged to have been part (*see* FAC ¶¶ 14-81), another describing the general nature

11  of the schemes (¶¶ 87-93), another describing the specific allegations of conduct (¶¶ 93-221), and finally

12  the causes of action themselves (¶¶ 222-287).  Citing *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671,

13  673 (9th Cir. 1981) and *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996), the defendants argue

14  that such a complaint must be dismissed for failure to comply with Rule 8(a), especially since plaintiffs

15  "regularly refer to 'defendants' without specifying exactly *which* defendant or defendants is liable for

16  the alleged acts."  MTD at 1.

17          The Court disagrees that plaintiffs have failed to comply with Rule 8(a).  In FAC ¶¶ 87-93, the

18  plaintiffs provide an overview of the alleged schemes which concisely describes plaintiffs' allegations.

19  Moreover, the Court finds no fault with the length and complexity of the complaint, as that is a

20  necessary consequence of the number and complexity of the schemes alleged.  *Nevijel* and *McHenry* are

21  inapposite.  In *Nevijel*, the Ninth Circuit upheld the dismissal of a complaint where its 48 pages and 14

22  pages of addenda were "verbose, confusing and almost entirely conclusory."  651 F.2d 671 at 674.  In

23  *McHenry*, the Ninth Circuit upheld the dismissal of a complaint that was "argumentative, prolix, replete

24  with redundancy, and largely irrelevant."   84 F.3d 1172 at 1177.  Here, plaintiffs' complaint is

25  descriptive, relevant, and, by and large, clear.  Each of the 92 exhibits is referenced and used to support

26  a claim or factual allegation in the complaint.  While the defendants find fault with the structure of the

27  complaint, that structure allows for ease of understanding the rather complex allegations contained

28  therein.  By referencing the "Defendant Parties" section in ¶¶ 14-81, for example, one is put on notice

as to which defendants are alleged to have been involved in the "Fraudulent Transactions" described in ¶¶ 93-221.  Therefore, the Court rejects defendants' argument that plaintiffs have failed to comply with Rule 8(a) generally.  Number of pages alone does not evidence failure to comply with the short and plain statement rule.

## II.     First Cause of Action - Fraud

In their first cause of action, plaintiffs allege fraud against 34 of the defendants, including the moving defendants.  Under California law, the essential elements of fraud are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 211 (2011).  In addition to the short and plain statement requirement of Rule 8(a), allegations of fraud must be pled with particularity as to the circumstances constituting fraud or mistake; however, malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.  Fed. R. Civ. P. 9(b).  The Ninth Circuit has held that averments of fraud must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  The allegations must contain the "who, what, when, where, and how" of the misconduct charged, and must set forth not only neutral facts that identify the transaction, but "what is false or misleading about a statement, and why it is false." *Id.* (*citing Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

The moving defendants are implicated in at least five of the alleged schemes: the Brown Street, Loch Dane, Northcrest, Skyline, and Whetstone schemes.  *See* FAC ¶¶ 93-221.  In the Brown Street scheme, for example, plaintiffs allege that defendants Karakasevic and her husband Castle owned the Brown Street property located at 601 Brown Street, Santa Rosa California.  In May of 2005, Karakasevic obtained a $495,000 loan from World Savings Bank (now Wells Fargo Bank) that was secured by a deed of trust (the "WFB DOT") against Brown Street.  Four years later, in October 2009, the "defendants fraudulently executed a Revised Full Reconveyance purportedly reconveying the WFB DOT to defendant Karakasevic.  The Brown Street Reconveyance states that it is signed by defendant Piscatelli as 'Authorized Agent/Trustee for Wachovia Mortgage, FSB.'"  FAC ¶ 95.  Karakasevic and

United States District Court
For the Northern District of California

Castle then quitclaimed the property to "J. Christopher Castle Irrevocable Trust." *Id.* ¶ 97. Castle then offered to sell Brown Street to plaintiffs Wesley and Gina Halihan. During the sale discussions, "Castle informed Mr. Halihan that he wanted to sell Brown Street to the Halihans because they were a nice family and that he wanted to sell the house quickly. Castle also represented that he owned Brown Street free and clear of liens, and he showed Mr. Halihan the Brown Street Reconveyance to 'prove it.'" FAC ¶ 98. The Halihans proceeded to purchase the home for $264,000. The plaintiffs allege that "none of the sale proceeds went to Wells Fargo to pay the WFB DOT. Instead, the proceeds went directly to defendants or to the IRS to satisfy defendants' tax obligations." FAC ¶ 99. Finally, when Wells Fargo discovered the fraudulent Brown Street Reconveyance, Wells Fargo rescinded it and foreclosed on plaintiffs. FAC ¶ 101.

Moving defendants level a number of attacks on the sufficiency of plaintiffs' allegations. They argue that plaintiffs have not alleged a single misrepresentation or omission; that plaintiffs have not alleged defendants had a duty to pay the original lenders; that Castle knew his statement that the title was free and clear was false; that the Halihans relied on that statement; nor that it is clear, at least in the cause of action section, who committed the fraud. MTD at 6-7. Plaintiffs argue that the elements of fraud are satisfied: (1) the FAC alleges the Castle falsely represented to plaintiffs that Brown Street was free and clear of liens, *citing* ¶ 98; (2) that Castle knew his statement was false because he knew there was an existing deed of trust against the Property, ¶¶ 88, 93-95; (3) that he made the misrepresentations with the intent to defraud Plaintiffs, ¶ 224; and (4) that the FAC alleges that plaintiffs would not have purchased the subject property had they known it had an existing lien on it that would not be paid through escrow. FAC ¶ 225.

The Court agrees with plaintiffs that they have sufficiently pled a claim of fraud against moving defendants. The "who, what, when, where, and why" are sufficiently described in the complaint, and are supported by the numerous exhibits attached thereto. In the Brown Street scheme, for example, plaintiffs allege that Castle "represented that he owned Brown Street free and clear of liens, and he showed Mr. Halihan the Brown Street Reconveyance to 'prove it.'" FAC ¶ 95. The Reconveyance is alleged to be fraudulent, FAC ¶ 94, and is attached as an exhibit. FAC, Ex. 11. The signatory on the Reconveyance, defendant Piscatelli, is elsewhere alleged to have executed and recorded multiple

1    fraudulent reconveyances.  FAC ¶ 230.  The misrepresentation is therefore adequately pled.

2         Defendants argue that plaintiffs fail to allege that Castle had knowledge of the falsity, the second

3    element of fraud.  It is true that plaintiffs nowhere state explicitly that Castle "knew" his statement was

4    that the home was free and clear of liens was false.  Yet the only possible inference from the complaint

5    is that Castle (and other defendants) knew the falsity of their statement.  The entire crux of the scheme

6    as alleged was to induce home purchasers to purchase homes believing that the original lenders' deed

7    had been reconveyed.  Indeed, this is why plaintiffs allege that Castle showed the Halihans the

8    Reconveyance to "prove it."  FAC ¶ 98.  Knowledge, therefore, is present in the interstices of the

9    complaint.  Allegations of fraud "must be specific enough to give defendants notice of the particular

10   misconduct which is alleged to constitute the fraud (or mistake) ... so that they can defend against the

11   charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731

12   (9th Cir.1985).  Even under 9(b), plaintiffs need not mechanically recite each element of fraud to put

13   the defendants on notice. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the

14   factual circumstances of the fraud itself must be alleged with particularity, the state of mind – or scienter

15   – of the defendants may be alleged generally.")  The Court finds sufficient allegations of knowledge of

16   falsity.

17        Defendants also argue that plaintiffs have failed to properly allege the third and fourth elements

18   of fraud: intent to induce reliance and justifiable reliance.  In the "First Cause of Action -Fraud" section

19   of their complaint, plaintiffs allege that

20            Defendants committed or conspired with the other defendants to commit the
              aforementioned fraudulent acts and make the aforementioned
21            misrepresentations and omissions with the intent to defraud plaintiffs.  As to
              defendant's misrepresentations, they were material because they contained
22            information upon which plaintiffs relied or would have relied to decide
              whether to purchase the subject properties.  Plaintiffs justifiably relied on the
23            misrepresentations and omissions.

24   FAC, ¶ 224-25.  Defendants argue that these are "mere conclusory allegations of fraud and are

25   insufficient to state a claim for fraud."  Def.'s Reply at 4.

26        The Court disagrees. The plaintiffs reallege and incorporate by reference all of the preceding

27   paragraphs in their fraud claim, and those earlier paragraphs specifically describe the fraudulent

28   behavior.  FAC ¶ 222.  It is common practice to incorporate by reference earlier factual allegations in

later claims for relief. *See Destifino v. Kennedy*, 2009 WL 63566, *4 (E.D. Cal. Jan. 8, 2009). "Properly used, such incorporation promotes simple, concise pleadings." *Id. (citing Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). Such is the case here. Plaintiffs describe each party's involvement in each scheme. When plaintiffs state that "plaintiffs justifiably relied on the misrepresentations," in ¶ 224, for example, with respect to the Brown Street scheme they are clearly referencing the Halihans' reliance on Castle's statement that the home was free and clear of liens. FAC ¶ 98. The complaint need not restate each element of fraud with respect to each plaintiff and each defendant; indeed, the defendants argue the complaint is overlong and thus not a short and plain statement. The Court finds that the elements of fraud are sufficiently pled.

Finally, moving defendants argue that plaintiffs have failed to state a claim of fraud against Oreplex and CCTT. The complaint alleges that "In April 2010, Laura Pezzi signed and caused to be recorded a $375,000 a [sic] deed of trust (the 'Oreplex DOT') in favor of defendant Oreplex International LLC, which is controlled by defendant Castle. On information and belief, the transaction was a sham in that no sums were ever lent by Oreplex to Laura Pezzi." FAC ¶ 115. Elsewhere plaintiffs allege that Castle controls Oreplex and "both Oreplex and he were involved in the fraudulent schemes alleged herein including the Loch Dane Scheme." FAC ¶ 30. With respect to CCTT, plaintiffs allege in the "Northcrest Scheme" that "the Thompsons [also defendants] signed and caused to be recorded a $575,000 deed of trust in favor of defendant CCTT group. On information and belief, the loan was a sham transaction in that no sums were ever lent by CCTT to the Thompsons ." FAC ¶ 148. The Thompsons later sold the house; plaintiffs allege that "the sale was an alleged short sale in that even though CCTT purportedly was wired $530,000, it sent escrow a payment demand for $265,000 . . . On information and belief, $269,365.12 of the sale proceeds went to CCTT . . ." FAC ¶ 156. For each of these allegations, plaintiffs attach the relevant document as an exhibit. FAC, Ex. 26, 47, 54.

Defendants argue that mere allegations that Oreplex and CCTT did not actually provide the loans signed for in the deeds of trust to the defendant-homeowners are insufficient, citing the rule that allegations of fraud based on information and belief do not satisfy Rule 9(b). Def.'s Reply at 7. They recognize that this rule may be relaxed with respect to matters within the opposing party's knowledge, but note that a plaintiff who makes allegations on information and belief must still state the factual basis

1   for the belief. *Id.* (*citing Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Defendants contend

2   plaintiffs provide no such factual basis.

3       The Court disagrees. Plaintiffs have alleged that a number of entities related to defendants

4   accepted "short sales" far below the loan amounts provided by those entities a short time earlier. *See,*

5   *e.g.,* FAC ¶ 111 (in Dunlay Drive scheme, Golden Hills purportedly lent $567,000 to homeowners; four

6   months later, Golden Hills accepted a short sale of $170,000). Plaintiffs provide, in Exhibit 26, a deed

7   of trust signed in favor of Oreplex (with James Castle listed as addressee) for $375,000. Following the

8   execution of the deed of trust, the house was quickly transferred twice in two months and sold to

9   plaintiffs for $210,000. FAC, Ex. 28-30. It is readily apparent from the complaint what the factual basis

10  for the allegation of "sham loans" is -- that the entities were accepting deep short sales simply because

11  they never lent money in the first place.[4] Defendants' reliance on *Neubronner* is inapposite. In

12  *Neubronner*, the Ninth Circuit found that the plaintiff "essentially admits in his fifth amended complaint

13  that he has alleged no more than 'suspicious circumstances'; those circumstances – i.e., that Milken was

14  an investment banker for Gibralter and that Gibralter eventually sank into financial trouble – do not

15  constitute a sufficient factual basis for allegations of insider trading." 6 F.3d at 672. Here, plaintiffs

16  have alleged much more than "suspicious circumstances."

17      In sum, Rule 9(b) requires that "allegations of fraud are specific enough to give defendants

18  notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

19  defend against the charge and not just deny that they have done anything wrong." *Neubronner*, 6. F.3d

20  at 672. Plaintiffs have sufficiently done so here. Defendants' motion to dismiss plaintiff's first cause

21  of action for fraud is DENIED.

22

23      **III.    Second Cause of Action - Conspiracy to Defraud**

24      Under California law, to state a cause of action for conspiracy the complaint must allege (1) the

25  formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3)

26  _____

27      [4]Moreover, taking the allegations as true, one can readily infer that part of the scheme was to
    show potential buyers the "sham" deed of trust on the house describing the far higher amount than the
28  sale price, and opining what a "deal" the short sale was.

United States District Court
For the Northern District of California

the damage resulting.  *Unruh v. Truck Ins. Exch.*, 7 Cal. 3d 616, 631 (1972).  Where a plaintiff alleges a conspiracy to commit fraud, Rule 9(b) requires more than conclusory allegations of conspiracy. *Southern Union Co. v. Southwest Gas Corp.,* 165 F. Supp. 2d 1010 (D. Ariz. 2001). To satisfy this requirement, a "plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." *Alfus v. Pyramid Technology Corp.*, 745 F. Supp. 1511, 1521 (N.D.Cal. 1990).  A plaintiff must show more than a common goal, unless there is a factually specific allegation that they directed themselves towards the wrongful goal by virtue of a mutual understanding or agreement.  *Id.*

The plaintiffs concede that they have not explicitly alleged an agreement to conspire.  Pl.'s Mot. at 4.  They argue, however, that "it can be reasonably inferred from the conduct of the defendants, as alleged in the FAC, that an agreement and conspiracy was formed and existed between the defendants." *Id.*  In support, they argue that the complaint sets forth that:

> Castle sold the Brown Street property to Plaintiffs and at the same time controlled CCTT Group, Oreplex International LLC and CJT Financial Group who provided phantom loans to defendants Thompson and Pezzi relating to the Loch Dane and Northcrest properties and then recorded deeds of trust against these properties.  FAC, ¶¶ 30, 99, 115, 148; Motion, p.1:15-18.  Defendant Pezzi sold the Loch Dane property to Plaintiffs, received a phantom loan from defendant Oreplex International LLC, notarized the fraudulent Substitution of Trustee and Deed of Reconveyance relating to the Shannon Bay property, executed a notice of rescission of notice of default as an "authorized representative" of California Reconveyance Company and notarized an assignment of a deed of trust from defendant Crawford to defendant Shined-te-east-a relating to the Almondwood property. FAC, ¶¶ 114, 120, 128, 130, and 171.  Defendant Wallace, all within the span of a few short months, executed three separate Substitution of Trustee and Deeds of reconveyance as an "authorized representative" on behalf of three separate banks, Aurora Bank, Wells Fargo Bank and Bank of America, relating to the Loch Dane and Northcrest properties.  FAC ¶¶ 116, 150, and 152.  Defendant Kirkpatrick provided a phantom loan to defendants Young relating to the Shannon Bay property and was the principal of Golden Hills Trust who provided phantom loans to defendants Sanders, Keiths, Ewers, Crawfords, and Portos relating to the Dunlay Drive, Valley West, Almondwood and Green Garden properties. FAC, ¶¶ 23, 103, 126, 162, 170 and 181.

Pl.'s Opp. at. 5.  According to plaintiffs, while these are only a few examples, they "clearly show that it can be reasonably inferred from the conduct of the defendants, as alleged in the FAC, that an agreement and conspiracy was formed and existed between the defendants." *Id.*

Defendants argue that plaintiffs fail to explain what the conspiracy was, "i.e., what was the

object of the conspiracy?"; that plaintiffs fail to allege the specific acts of each specific defendant involved in the conspiracy; and that plaintiffs do not allege an overall agreement to accomplish a wrongful goal.  Def.'s Reply at 9.

The Court disagrees.  Paragraph 230 of the FAC explains each defendants' role in the conspiracy. ("Castle [and] Karakasevic . . . participate in the conspiracy by, among other things, selling or causing to be sold the properties under the guise that they were free of encumbrances and recording fraudulent documents . . . Oreplex [and] CCTT Group participated in the conspiracy by causing fraudulent liens to attach to the properties, accepting funds for phantom obligations, luring victims into the scheme through a conjured short sale program and by otherwise planning the scheme.")  If the complaint is unclear as to some of the defendants roles in the conspiracy, it is not unclear with respect to the moving defendants.  Moreover, plaintiffs throughout the complaint describe "what the conspiracy was": they provide a number of exhibits revealing plaintiffs' funds funneled to moving defendants instead of original lenders.  *See, e.g.,* FAC Ex. 14.  Finally, the Court can reasonably infer from defendant's alleged conduct an agreement to conspire, particularly with respect to the moving defendants, who appear to be "key players" in the alleged conspiracy.  *See In re: 3Com Securities Litigation*, 761 F.Supp. 1411, 1418 (N.D.Cal. 1990).

Therefore, defendants' motion to dismiss plaintiffs' second cause of action for conspiracy to defraud is DENIED.

## IV.    Third Cause of Action - RICO

Plaintiffs' third cause of action is brought under 18 U.S.C. § 1962(c) of the Racketeering Influenced and Corrupt Organizations Act ("RICO").  It is brought against 40 defendants, including all of the moving defendants.  *See* FAC ¶¶ 234 - 244.  Plaintiffs allege that defendants have engaged in the conduct of an enterprise through a pattern of racketeering activity.  FAC ¶ 235.

The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."  *Living Designs*, 431 F.3d at 361 (internal quotation marks omitted); *see also* 18 U.S.C. §§ 1962(c), 1964(c).  The Supreme Court has held that "RICO is to be read broadly.  This is the lesson not

only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to be liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985).

Defendants argue that plaintiffs have failed to establish standing to bring the civil RICO claim; that they have not alleged the requisite predicate acts; that they have not alleged a RICO enterprise; and that they have failed to allege participation in the enterprise. Their arguments will be addressed in turn.

### a. Plaintiffs' RICO Standing

In order to establish standing under RICO, a plaintiff must be "injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c). RICO standing has a "directness" requirement, where "a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts, generally stands at too remote a distance to recover." *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268-269 (1992). Furthermore, the plaintiff's injury must result from defendant's commission of a predicate act, not from some other conduct of the defendant.

Defendants argue that plaintiffs have failed to establish standing because the plaintiffs were not the targets of the alleged racketeering activity; instead, the targets were "likely" the banks. MTD at 14; Def.'s Reply at 11. At best, defendants argue, plaintiffs were "peripheral victims." Def.'s Reply, n. 7. The Court disagrees. It was the plaintiffs' money that was wired to defendants, instead of to the allegedly legitimate lienholders. *See, e.g.,* FAC Ex. 14 (settlement statement showing sale proceeds went to defendants or to IRS to satisfy defendants' tax obligations). Moreover, because of the alleged mail, bank, and wire fraud (including the fraudulent reconveyances), plaintiffs' homes are worth far less than the purchase money provided. Indeed, because of the continued existence of the legitimate liens, some of plaintiffs' homes have been foreclosed upon and unlawful detainer proceedings have begun. *See, e.g.,* FAC ¶ 101 (Brown Street); ¶ 122 (Loch Dane). The Court therefore finds that plaintiffs have standing to bring a civil RICO action against moving defendants.

13

### b. The Predicate Acts

Plaintiffs allege violations of RICO within the meaning of 18 U.S.C. § 1961(1)(B) for bank fraud, wire fraud, and mail fraud.  According to the complaint,

> Defendants committed bank fraud by executing the fraudulent reconveyances and diverting and converting sale proceeds from fraudulent sales and short sales. Defendants committed mail fraud by sending documents and causing to be sent documents through the U.S. mail in furtherance of the fraud.  Defendants committed wire fraud by causing plaintiffs and their banks to wire transfer funds in interstate commerce that were diverted and converted by defendants.  Moreover, information concerning these fraudulent transactions was sent by electronic transmission through interstate commerce.

FAC ¶¶ 242-43.  Plaintiffs also provide a series of exhibits describing transfers, mailings of documents, and demands for escrow payments from plaintiffs' bank accounts to defendants' bank accounts. *See, e.g.,* FAC Exs. 22, 30, 14, 22, 19, 20, 59 and 66.  Defendant argue that plaintiffs have failed to make out any of the predicate acts for a RICO claim.

### 1. Wire Fraud

For the offense of wire fraud, 18 U.S.C. § 1343 prohibits the use of "interstate wire, radio or television communications" to perpetuate "any scheme or artifice to defraud."  Plaintiffs point to exhibits demonstrating that defendants caused plaintiffs and their banks to wire transfer funds to defendants or their creditors.  Pl.'s opp. at 7.  Plaintiffs cite to Exhibit 30 in particular, a settlement statement that plaintiffs allege shows "payment from Halihan to pay Castle [sic] IRS lien." *Id.*  Such exhibits demonstrate, according to plaintiffs, the use of wire transfer.

Defendants argue that these are not sufficient allegations of the use of "wires."  They claim that plaintiffs provide only "meager allegations" of causing certain bank to wire transfer to defendants or their creditors.  Moreover, according to defendants, plaintiffs only allege that the recordings were "electronic" in their opposition, not in the FAC, and thus fail to establish wire fraud.

The Court disagrees.  The Ninth Circuit has held that "the only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (allegations of the use of a credit card sufficient to constitute wire fraud).  Here, plaintiffs have alleged nine different schemes, each involving a multitude of money

14

transfers.  The FAC explicitly alleges the use of wires to transfer funds in interstate commerce.  FAC ¶ 242.  Moreover, plaintiffs have provided exhibits of public documents, settlement statements, and title transfers from which one can infer the use of wires.

### 2. Mail Fraud

For substantially the same reasons, the Court finds that plaintiffs have adequately alleged the predicate act of mail fraud.  Plaintiffs allege that defendant committed mail fraud through the use of the mails.  FAC ¶ 242.  Moreover, a number of the allegedly forged reconveyances and other related documents provided by plaintiffs state that after being recorded they should be mailed to defendants. *See, e.g.,* FAC Exs. 13, 19, 20, and 44.  Defendants argue that plaintiffs cannot simply rely on an inference that documents were mailed.  Def.'s Reply at 13.  But plaintiffs do not; plaintiffs explicitly state that "defendants committed mail fraud by sending documents and causing to be sent documents through the U.S. mail in furtherance of the fraud."  FAC ¶ 242.  This is sufficient.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (finding mail fraud sufficiently pled where the complaint stated that "[T]he Defendants ... have engaged ... on two or more occasions the use of the United States mail and/or use of interstate telephone calls for the purpose of executing or attempting to execute the aforesaid fraudulent scheme").

### 3. Bank Fraud

Plaintiffs allege that "defendants committed bank fraud by executing the fraudulent reconveyances and diverting and converting sale proceeds from fraudulent sales and short sales."  FAC ¶ 242. Defendants argue that plaintiffs have failed to state a claim for bank fraud, because "the essence of financial institution fraud under § 1344 is a scheme to swindle the bank or financial institution in order to obtain money or property from it, which plaintiffs have simply not alleged."  Def.'s Reply at 14.  Moreover, defendants argue, a standing problem exists because the "targets of the § 1344 claim" are not parties to this action. *Id.*

Defendants appear to assume that the bank fraud allegations are brought because of fraud committed against the original lending banks.  However, plaintiffs are alleging bank fraud against

*plaintiffs'* banks, from whom defendants demanded and received the proceeds of the home sales. With respect to those banks, plaintiffs' allegations and exhibits sufficiently plead bank fraud.

### c. RICO Enterprise

Section 1962(c) requires the existence of an "enterprise." Congress intended for the term "enterprise" within the meaning of RICO to be read broadly. *U.S. v. Turkette*, 452 U.S. 576, 593 (1981). The "enterprise" must be separate and apart from the alleged racketeering activity, but need not have a structure beyond that necessary to carry out its pattern of illegal racketeering activities. *Odom*, 486 F.3d at 551. An "associated in fact" enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583. In order to establish the existence of such an enterprise, a plaintiff must provide allegations of an ongoing organization, whether formal or informal, and evidence that the various associates function as a continuing unit. *Odom*, 486 F.3d at 551.

Plaintiffs allege an association in fact enterprise of defendants as follows:

> Defendants were part of an association-in-fact that engaged in the business of real estate sales, real estate leasing, mortgage loans, notarizing real property documents, performing escrow services, performing real estate brokerage services and other activities affecting interstate commerce. Although the association-in-fact conducted some legitimate activities such as rental activity, the primary purpose of the association was to defraud plaintiffs through a series of phantom loans, fraudulent reconveyances, phony short sales and subsequent re-sales to plaintiffs. Defendants worked together as members of the association-in-fact to achieve the association's purpose of defrauding plaintiffs. Examples of such cooperation include falsifying loan transactions, executing fraudulent reconveyances, concealing liens, wire transferring funds for phantom obligations, notarizing fictitious reconveyances signed by individuals without authority and performing escrow services for sham short sales.
>
> ...
>
> Each defendant managed or participated in the conduct of the enterprise. For example, defendants Castle, Karakasevic, Laura Pezzi, Jon Sanders, Alicia Sanders, Daniel Young and Kelly Young participated and managed the enterprise by, among other things, selling or causing to be sold the properties under the guise that they were free of encumbrances and recording fraudulent documents. Defendants Piscatelli, Contessa, Wallace, Hanson, Smith, Tribes, Jennifer Pezzi, Winter and Lange and Daniel Young and Jason Young participated in the enterprise by, among other things, executing and recording fraudulent reconveyances . . . Defendants [Oreplex, CCTT Group, and CJT Financial Group] participated and managed the enterprise by causing

fraudulent liens to attach to the properties, accepting funds for phantom obligations, luring victims into the scheme through a conjured short sale program and by otherwise planning the schemes.

FAC ¶¶ 237, 239.

Defendants contend that these allegations do not plead facts establishing an enterprise distinct from the alleged pattern of racketeering. Def.'s Reply at 15. In support, they cite *Simon v. Value Behavioral Health, Inc., et al.*, 208 F.3d 1073, 1080-84 (9th Cir. 2000). In *Simon*, the Ninth Circuit affirmed the dismissal of RICO claims for failure to identify a distinct enterprise where plaintiff alleged a "mass conspiracy" among six mental health providers to withhold benefits fraudulently and to restrain trade. The court found that plaintiff merely alleged a collaboration, without any structure or system of authority. *Id.* at 1083. Here, plaintiffs have alleged a detailed system distinct from the alleged racketeering activities, with repeat players and distinct roles, a system of command (with moving defendants high in that chain) that evolved over time and, in fact, continues to operate. FAC ¶ 238. The Court finds that plaintiffs have sufficiently alleged an association in fact enterprise.

### d.    Participation in the Enterprise

Section 1962(c) makes it unlawful for any person associated with the enterprise "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To "participate, directly or indirectly, in the conduct of such enterprise's affairs one must have some part in directing those affairs." *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (*citing Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)).

Defendants argue that plaintiffs have failed to establish defendants' participation in the enterprise. They argue that the "generalized examples" in FAC ¶ 239 are mere conclusory allegations of participation and do not specify "exactly what was done by whom." MTD at 21. However, as noted above, the cause of action incorporates and realleges the preceding paragraphs of the complaint. It is in the detailed "schemes" that the plaintiffs describe the particular activities of each defendant. Defendants also contend that "merely acting as a lender, notary or real estate agent in a sales transaction" is not sufficient to establish "participation." They cite *Reves*, in which the Supreme Court held that an accounting firm that reviewed a series of transactions and incorrectly certified records of

17

the enterprise could not be held liable for participation in that enterprise. 507 U.S. at 177. According to defendants, "the notaries and real estate agents in this case are no different from the accounting firm in *Reves*." Def.'s Reply at 15. However, none of the *moving* defendants are notaries or real estate agents; they are all alleged to be in authoritative positions in the enterprise. *See, e.g.*, FAC ¶¶ 237, 239 (Castle and Karakasevic "managed the enterprise by . . . selling or causing to be sold the properties under the guise that they were free of encumbrances.") The Court therefore finds that plaintiffs have sufficiently pled participation.

Because plaintiffs have sufficiently pled that defendants engaged in conduct of an enterprise through a pattern of racketeering activity that caused injury to plaintiffs' business or property, defendants' motion to dismiss the third cause of action for violations of RICO is DENIED.

## V.     Fourth Cause of Action - RICO Conspiracy

Section 1962(d) makes it unlawful for a person "to conspire to violate any of the provisions of subsections (a), (b), or (c) of [section 1961]." Plaintiffs allege that defendants violated § 1962(d) because "they have agreed to manage, conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, or agreed to assist or profit from such conduct or participation. In addition, the defendants knew their conduct or the conduct of their co-conspirators constituted a pattern of racketeering activity." FAC ¶ 247.

Defendants argue that because plaintiffs failed to make out a claim under § 1962(c), their derivative RICO conspiracy claim fails as matter of law. However, the Court has found that plaintiff has pled a viable RICO claim, *see* Sec. IV, and, therefore, a conspiracy claim may be viable as well.

Defendants also argue that plaintiffs have failed to sufficiently allege conspiracy because they have not alleged that any of the individual defendants "specifically agreed with others to conduct or participate in the affairs of a RICO enterprise, or to commit predicate acts of racketeering." MTD at 22. However, in the RICO conspiracy claim, plaintiffs allege an "agreement" to manage, conduct or participate in the affairs of an enterprise. FAC ¶ 247. Moreover, as the Court found *supra*, Sec. III, an agreement can be inferred from the facts as alleged.

The Court therefore DENIES defendant's motion to dismiss plaintiff's fourth cause of action for

United States District Court
For the Northern District of California

1   RICO conspiracy.

2

3        **VI.    Fifth Cause of Action - Breach of Contract**

4        In their fifth cause of action, plaintiffs allege moving defendants Castle and Karakasevic (among

5   others) "breached the respective purchase agreements by, among other things, failing to tender to

6   plaintiffs merchantable title to the properties, failing to disclose the ongoing encumbrances against the

7   properties suffered by defendants and failing to tender the properties free of such encumbrances. As a

8   result of defendants' breach, plaintiffs have been damaged."  FAC ¶ 252-53.

9        In order to establish a cause of action for breach of contract, a plaintiff must allege (1) a contract,

10  (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the

11  plaintiff.  *Walsh v. West Valley Mission Community College Dist.,* 66 Cal. App. 4th 1532, 1545 (1998).

12  Defendants argue that plaintiffs have failed to allege a contract at all; instead, they "simply refer to 249

13  paragraphs of the complaint and refer to 'respective purchase agreements.'"  MTD at 24.  Moreover,

14  they argue, there is no allegation setting forth the terms of the contract.  *Id.*  Defendants argue that

15  "because plaintiffs failed to provide the Court with a copy of the alleged contract or set out verbatim

16  what provisions of it were breached, they have not satisfied the elements of their breach of contract

17  claim."  *Id.* (*citing Johnston v. Ally Fin., Inc.* 2011 U.S. Dist. LEXIS 83298, at 6 (S.D. Cal. 2011)).

18       In their opposition, plaintiffs argue that the contract referred to is the Halihans' agreement to

19  purchase Brown Street "provided that Karavesevic and Castle were tendering to plaintiff Halihan

20  merchantable title to the property and that the property was free and clear of any encumbrances."  Pl.'s

21  Opp. at 11.  However, plaintiffs do not allege the existence of an agreement between the Halihans and

22  defendants in the FAC, nor do they allege the specific provisions of the purported contract that

23  defendants' breached.  Plaintiffs' citation to  the attached grant deed does not save their claim, because

24  the grant deed does not mention any agreement that the property was free and clear of liens.  "If the

25  action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body

26  of the complaint or a copy of the written instrument must be attached and incorporated by reference."

27  *Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 459 (1985).  The plaintiffs have failed to do so

28  here.

Therefore, defendants' motion to dismiss plaintiffs' fifth cause of action for breach of contract is GRANTED.  Plaintiffs are GRANTED leave to amend.

**VII.    Sixth Cause of Action - Breach of Implied Covenant to Convey Merchantable Title**

A seller of real property has the duty to convey good and marketable title, and "the right of the vendee to receive such marketable title is not dependent upon the terms of the contract but is given by the law itself."  *King v. Stanley*, 32 Cal. 2d 584 (1948), *overruled on other grounds*.  Plaintiffs contend that defendants breached the "respective purchase agreements by, among other things, failing to tender to plaintiffs merchantable title to the properties, failing to disclose the ongoing encumbrances against the properties suffered by defendants and failing to tender the properties free of such encumbrances." FAC ¶ 252.

Defendants argue that plaintiffs fail to properly allege this claim because "(1) having incorporated all of the preceding 293 paragraphs of the FAC into the cause of action for breach of the implied covenant to convey marketable title there is no 'short and plain' statement of the claim against defendants Karaksevic and Castle and (2) the FAC also makes clear that the owner of the property sold to the Halihans was the J. Christopher Castle Irrevocable Trust."  Def.'s Reply at 19 (*citing* FAC ¶ 97, Exs. 12, 13.)  Plaintiffs contend that the FAC "clearly alleges that plaintiffs Wesley and Gina Halihan purchased the Brown Street property from defendant Karakasevic and Castle," and, therefore, it would be clear which implied covenants were referred to.

The Court agrees with defendants.  Unlike the previous claims, it would be difficult to extract from the complaint exactly what *implied* covenants were made in which transactions, particularly with respect to defendant Castle, whose name and related entities appear in multiple schemes.  The plaintiffs do provide the quitclaim deed from Castle and Karakasevic to the "J. Christopher Castle Irrevocable Trust," Ex. 12, followed by the grant deed from that trust to the Halihans, with J. Christopher Castle listed as the trustee.  Ex. 13.  Nonetheless, as defendants arguments have sufficient merit that the claim as pled does not put defendants on notice as to the wrong alleged, the Court GRANTS defendants' motion to dismiss the sixth cause of action for breach of implied covenant, with leave to amend.

United States District Court
For the Northern District of California

### VIII.   Ninth Cause of Action - Equitable Indemnity

Defendants argue that plaintiffs' claim for equitable indemnity is misplaced, because the doctrine applies only among defendants who are jointly and severally liable to plaintiffs. MTD at 25. Plaintiffs offer no response to defendants' argument. The Court therefore GRANTS defendants' motion to dismiss the ninth cause of action for equitable indemnity, with leave to amend.

### IX.   Tenth Cause of Action - Constructive Trust

In order to state a claim for a constructive trust, a plaintiff must make out the existence of a res (property or some interest in the property); the plaintiff's right to the res; and the defendant's acquisition of the res by some wrongful act. *Calistoga Civiv Club v. City of Calistoga*, 143 Cal. App. 3d 111, 116 (1983). In the FAC section regarding the tenth cause of action, plaintiffs make no claim as to the existence of a res, or their right to that res. *See* FAC ¶¶ 274-278. While in their opposition plaintiffs argue that "the trust res consists of Plaintiffs' purchase monies and the properties they purchased from the defendant homeowners" and that "plaintiffs have a right to their purchase monies because their money was diverted by defendants through their fraudulent conduct," such allegations are nowhere to be found in the FAC. Defendants' motion to dismiss plaintiffs tenth cause of action for Constructive Trust is therefore GRANTED with leave to amend.

### X.   Twelfth Cause of Action - Respondeat Superior

Plaintiffs' twelfth cause of action for "respondeat superior" is DISMISSED without leave to amend. Respondeat superior is not an independent cause of action; rather, it is a theory of liability. *See Mason v. Ambrose Recreation and Park Dist.*, 2010 WL 3076263 at *2 (N.D.Cal. Aug. 5, 2010).

### CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to the fifth, sixth, ninth, tenth, and twelfth causes of action for breach of contract, breach of implied covenants, equitable indemnity, constructive trust, and respondeat superior, respectively. It is DENIED with respect to the rest of the claims. Plaintiffs are GRANTED leave to

21

amend.  They must file an amended complaint by <u>December 22, 2011.</u>

**IT IS SO ORDERED.**

Dated: December 8, 2011

_____
SUSAN ILLSTON
United States District Judge