**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALLY BANK, FIDELITY NATIONAL TITLE INSURANCE COMPANY, ET AL.,**<br><br>    **Plaintiffs,**<br><br>    **vs.**<br><br>**JAMES C. CASTLE AKA J. CHRISTOPHER CASTLE, *ET AL.*,**<br><br>        **Defendants.** | Case No.: **11-CV-896 YGR**<br><br>**ORDER DENYING MOTION TO STAY, GRANTING MOTION TO STRIKE, AND GRANTING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND** |

Plaintiffs bring the instant Second Amended Complaint ("SAC") against the named defendants alleging claims for: (1) fraud; (2) civil conspiracy based on fraud; (3) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") [18 U.S.C. §1962(c)]; (4) RICO Conspiracy [18 U.S.C. § 1962(d)]; (5) breach of contract; (6) breach of implied covenant to convey merchantable title to property; (7) negligence; (8) notary liability; (9) constructive trust; and (10) negligent supervision.

Presently before the Court are the following motions:

1.      the Motion to Stay portions of Plaintiffs' Second Amended Complaint ("SAC") pursuant to *Colorado River* abstention doctrine, specifically to stay portions of this action relating

to two properties for which there are actions pending in state court, by Defendants Donald Porto, Patricia Porto, David R Thompson, and Melissa A Thompson (Docket No. 140);

2.      the Motion of Defendant Todd J. Smith to Dismiss SAC (Docket No. 141);

3.      the Amended Motion of Defendants Portos and Thompsons to Dismiss SAC and Motion to Strike [Fed. R. Civ. Pro. 1, 12(b)(6) and 12(f)] (Docket No. 154);

4.      the Amended Motion of Defendants Crawford, Eweises and Keith to Dismiss SAC (Docket No. 155);

5.      the Amended Motion of Defendants CJT Financial Group ("CJT"),[1] GJZ Group and Golden Hills Group Dismiss SAC and Motion to Strike [Fed. R. Civ. Pro. 1, 12(b)(6) and 12(f)] (Docket No. 156);

6.      the Amended Motion of Defendants Lange, Smith, D. Young and J. Young to Dismiss SAC and Motion to Strike (Docket No. 157);

7.      the Amended Motion of Defendants Alicia A. Sanders, Jon P. Sanders, Daniel R. Young, Kelly E. Young and Lara Karakasevic[2] to Dismiss SAC and Motion to Strike (Docket No. 158);

8.      the Amended Motion of Defendants Tisha L. Trites, Tisha Trites Realty and Ryan Styles to Dismiss SAC and Motion to Strike (Docket No. 159);

---

[1] Defendant CJT previously moved to dismiss claims in the First Amended Complaint ("FAC") and that motion was granted with leave to amend only as to the claims for breach of contract, breach of implied covenant, constructive trust, and equitable indemnity, and was otherwise denied. The motion of CJT to dismiss as to the RICO Enterprise, and RICO Conspiracy claims is therefore **DENIED** on this basis.

[2] Defendant Karakasevic previously moved to dismiss claims in the FAC and that motion was granted with leave to amend only as to the claims for breach of contract breach of implied covenant, constructive trust, and equitable indemnity, and otherwise denied. The motion of Karakasevic to dismiss as to the fraud, conspiracy to defraud, RICO Enterprise, and RICO Conspiracy claims is therefore **DENIED** on this basis.

United States District Court
Northern District of California

9.      the Amended Motion of Defendants Castle, CCTT Group and Oreplex International LLC to Dismiss SAC and Motion to Strike (Docket No. 172);

10.      the Amended Motion of Defendants Di Chiara and Shon-Te-East-A to Dismiss SAC and Motion to Strike  (Docket No. 173);

11.      the Amended Motion of Defendants Remus A. Kirkpatrick aka Al Kirkpatrick, Golden Hills Trust and Financial Recovery Group to Dismiss SAC  and Motion to Strike (Docket No. 174); and

12.      the Amended Motion of Defendant Laura M. Pezzi to Dismiss SAC and Motion to Strike  (Docket No. 175).

The parties appeared on May 8, 2012, and argued the motions.  Plaintiffs appeared by counsel Stephen Seto and Connor M. Day of Buchman, Provine, Brothers, Smith, LLP.  Defendants appeared by Ann McFarland Draper of Draper Law Offices and by Thomas J. LaLanne.

Having carefully considered the parties' arguments, the papers submitted, and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the motion to stay, **GRANTS IN PART**  the motions to strike, and **GRANTS IN PART** the motions to dismiss, with limited leave to amend, as stated herein.

### SUMMARY OF ALLEGATIONS

This action concerns nine (9) real properties to which the parties refer by the names of the streets on which the respective properties are located.[3]  Plaintiffs allege that all defendants were

---

[3]  "Brown Street," refers to 601 Brown Street, Santa Rosa; "Dunlay Drive," refers to 5479 Dunlay Drive, Sacramento; "Loch Dane," refers to 4127 Loch Dane Court, Antelope; "Shannon Bay," refers to 5170 Shannon Bay Drive, Rocklin; "Roaring Camp," refers to 1420 Roaring Camp Court, Plumas Lake; "Northcrest," refers to 3765 Northcrest Court, Simi Valley; "Valley West," refers to 2313 Valley West Drive, Santa Rosa; "Almondwood," refers to 7593 Almond Avenue, Citrus Heights; "Green Garden," refers to 6303 Green Garden Drive, Bakersfield.

United States District Court
Northern District of California

part of a scheme to defraud sellers and buyers of real property through fraudulent reconveyances of prior deeds of trust on those properties.  Defendants were involved in an "administrative default program" whereby they demanded lenders to prove their deeds of trust on the properties were valid and, when the lender failed to respond, recorded reconveyances of those deeds of trust such proceeds from the sale to a subsequent purchaser would not pay off the liens held by the original lenders.  Unbeknownst to the subsequent purchasers, such as the plaintiffs here, they would be subject to the prior liens once the original lender discovered the fraudulent reconveyance.  Consequently, Plaintiffs' properties are being or have been foreclosed upon by the original lenders.

Some of the defendants are former owners of one of the nine properties.  The remaining defendants fall into one or more of the following categories: (a) defendants who purchased from one of the homeowner-defendants and then re-sold the property to a Plaintiff; (b) defendants who signed documents reconveying the encumbrances on the properties as alleged agents of former holders of the deeds of trust; (c) defendants who notarized such documents; (d) realtor/brokers; and (e) defendants who were identified as beneficiaries on new deeds of trust encumbering the properties or were otherwise involved in the alleged scheme to remove the prior recorded deeds of trust on the properties.  Not every claim is stated against every defendant.  Different defendants are alleged to have played different roles, sometimes multiple roles in connection with the reconveyances of deeds of trust on the properties.

---

Lara Karakasevic was the former owner of Brown Street; Jon and Alicia Sanders were the former owners of Dunlay Drive; Laura Pezzi was the former owner of Loch Dane; Daniel and Kelly Young were the former owners of Shannon Bay; Kevin and Christy Keith were the former owners of Roaring Camp; David and Melissa Thompson were the former owners of Northcrest; Fahed and Nadia Eweis were the former owners of Valley West; Randall Crawford was the former owner of Almondwood; and Donald and Patricia Porto were the former owners of Green Garden.   All properties are in California.

**PROCEDURAL BACKGROUND**

This action was originally filed January 20, 2011, in state court alleging a scheme as to only one of the properties, Brown Street.  Then-Defendant Wells Fargo Bank removed the action to this Court on February 28, 2011.  On August 31, 2011, Plaintiffs filed a first amended complaint amending to include the alleged schemes concerning the eight additional properties, and thereby adding numerous additional plaintiffs and defendants to the action.  On October 25, 2011, Defendants Castle, Karakesevic, Oreplex, CCTT, and CJT ("Initial Movants") filed a motion to dismiss.  On December 8, 2011, the Court entered an order on the motion, granting it in part and denying it in part.

Plaintiffs filed their SAC on December 22, 2011.  On January 23, 2012, all the defendants filed motions: (1) to dismiss Plaintiffs' ninth claim for imposition of a constructive trust; and (2) to stay those portions of the case concerning the Dunlay Drive property and the Green Garden property on the grounds that other actions concerning the same claims are pending in the state courts.  On January 30, 2012, the non-Initial Movants amended their motions to seek dismissal of Plaintiffs' other claims against them for failure to state a claim and to strike certain allegations.

**ANALYSIS**

**I.      MOTION TO STAY**

Defendants move to stay portions of the action based upon the abstention principles in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) ("*Colorado River*") and *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662-63 (1978).  Defendants seek to stay portions of the instant action based upon two cases pending in the state courts:

1.  The action filed June 15, 2011, and currently pending in the Superior Court of California, County of Sacramento, concerning the Dunlap Drive property.

United States District Court
Northern District of California

2.  The action filed April 13, 2011, in the Superior Court of California, County of Kern, concerning the Green Garden property.

A court has authority under the *Colorado River* doctrine to abstain from exercise of its jurisdiction and stay a federal action if the controversy presented can be resolved more expeditiously in pending state court proceedings concerning the same subject matter.  *Will, supra,* 437 U.S. at 662-63.  The decision to stay is based upon considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. . . ." *Colorado River*, 424 U.S. at 817 (internal quotations omitted).  However, the *Colorado River* doctrine is only invoked upon demonstration of "exceptional circumstances," given the primary obligation of the federal courts to exercise the jurisdiction given to them.  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983); *see Colorado River, supra*, 424 U.S. 817.  Thus the party moving for a stay under *Colorado River* bears a heavy burden in justifying such an order.  *See Moses H. Cone, supra,* 460 U.S. at 25-26; *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 WL 701599 *3 (N.D. Cal. Mar. 23, 2005).

The Supreme Court's decision in *Colorado River* and its progeny have articulated several factors that district courts should consider when determining whether a stay is appropriate:

(1) whether the state court first assumed jurisdiction over the property or the *res*;
(2) inconvenience of the federal forum;
(3) the desirability of avoiding piecemeal litigation;
(4) the order in which jurisdiction was obtained by the concurrent forums;
(5) whether federal or state law provides the rule of decision on the merits;
(6) whether the state court proceedings are inadequate to protect the federal litigant's rights;
(7) whether exercising jurisdiction would promote forum shopping, and
(8) whether the parallel state court proceeding will resolve the issues between the parties.

*See Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002); *Colorado River, supra,* 424 U.S. at 818; *Moses H. Cone, supra,* 460 U.S. at 15-16, 23, 26.  "The factors relevant to a given case are subjected to a flexible balancing test, in which one factor may be accorded substantially more

weight than another depending on the circumstances of the case, and 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* at 870-71 (*citing Moses H. Cone,* 460 U.S. at 16).

The Court finds that the facts and circumstances here do not support abstention. First, while the two state court cases were filed before the first amended complaint added claims concerning these properties, those state court cases do not appear to have progressed substantially. Second, the state court cases presently do not involve the same issues as asserted here. In the Sacramento action regarding the Dunlap Drive property, Plaintiffs' counsel indicated that the overlapping claims of Plaintiffs Tsai and Sung have been dismissed in favor of proceeding in this action. In the Kern County action, the plaintiff is the original lender bank that is seeking to quiet title and cancel the alleged sham reconveyance. The Friedlys (plaintiffs here) are not asserting any affirmative claims in that action. Thus, all issues between the parties will not be resolved in the state court actions. Moreover, the federal case asserts federal law claims under RICO, an additional factor favoring federal jurisdiction.

As a result, the state law actions would not protect the rights asserted in this action adequately. The claims here allege that there was a similar scheme with respect to several properties, and that many of the same defendants were involved in multiple schemes. Even if the individual former property owners were to amend their state law complaints to include RICO claims, as here, and to add in the same affirmative claims as here, the actions would be missing the context of the other similar schemes. Indeed, the similarity of the alleged schemes, and the involvement of multiple defendants in more than one scheme, indicates that abstention here would only promote piecemeal litigation rather than avoid it.

United States District Court
Northern District of California

The factors of inconvenient forum and assumption of jurisdiction over the *res* (rather than the parties to the action) have not been demonstrated here.

In sum, Defendants have not established exceptional circumstances.  The balance of the *Colorado River* factors heavily favors maintaining federal jurisdiction.  As a result, the Court **DENIES** the Motion for Stay.

## II.    MOTION TO STRIKE

Defendant moves under Rule 12(f) of the Federal Rules of Civil Procedure to strike certain allegations in the SAC, i.e.: (1) paragraphs 303-06 regarding equitable indemnity; (2) the prayer for damages, treble damages under RICO, 18 U.S.C. § 1964(c), including attorneys' fees, costs, and injunctive relief; (3) the prayer for "damages in an amount according to proof" insofar as it implicitly seeks damages from certain defendants who were not alleged to have been involved in the schemes that injured certain plaintiffs; and (4) the request for punitive damage as to Plaintiffs' negligence claim.

First, Plaintiffs do not oppose the motion to strike paragraphs 303-06.  The motion is therefore **GRANTED** as to these allegations as made against all Defendants.

Second, as to the remaining bases for the motion, Plaintiffs argue that a motion to strike is inappropriate.  The Court agrees.  The Ninth Circuit applies Rule 12(f) to mean that a court may only strike matters from a pleading if they are: (1) an insufficient defense, (2) redundant, (3) immaterial, (4) impertinent, or (5) scandalous.  *Whittlestone, Inc. v. Handi-Craft Company*, 618 F.3d 970, 973- 974 (9th Cir. 2010).  A motion to strike it not available to strike portions of the

complaint simply on grounds that the alleged damages are unavailable as a matter of law. *Id*. at 976. Here, Defendants attempt to use Rule 12(f) for purposes beyond those the rule allows.[4]

Finally, the motion to strike the claim for relief under the RICO claim stands or falls based on the sufficiency of the claim. Defendants do not offer an independent basis for striking the relief sought.

For these reasons, the Motions to Strike are **GRANTED IN PART** as to paragraphs 303-06 only.

## III.    MOTIONS TO DISMISS

### A.      STANDARDS APPLICABLE TO THE MOTIONS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Review is generally limited to the contents of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. *Erickson v. Pardus,* 551 U.S. 89, 93, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v.*

---

[4] The Court notes that Defendants moved to strike the claim for punitive damages from the "negligence" claim. However, the prayer for punitive damages appears only to have been made in connection with the Tenth Claim for Relief, as to which none of the moving Defendants here is a party. (SAC ¶311, page 51:7-8.) No prayer for punitive damages or allegations to support a punitive damages claim were made in the Seventh Claim for Relief for Negligence against Defendants Dennis Young, Kelly

United States District Court
Northern District of California

*Iqbal*, 556 U.S. 662, __, 129 S.Ct. 1937, 1949-50 (2009) ("*Iqbal*").   A plaintiff's obligation to

provide the grounds of his entitlement to relief "requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) ("*Twombly*").   Rather, the

allegations in the complaint "must be enough to raise a right to relief above the speculative

level." *Id.*

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Conley v. Gibson,* 355 U.S. 41, 45–46.   However, "when the allegations in a complaint, however

true, could not raise a claim of entitlement to relief," dismissal is appropriate.   *Twombly, supra,* 550

U.S. at 558.   Thus, a motion to dismiss will be granted if the complaint does not proffer enough

facts to state a claim for relief that is plausible on its face.   *See id.* at 558-59.   "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'"   *Iqbal,*

*supra*, 556 U.S._, 129 S.Ct. at 1950.

Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be

stated with particularity."   Fed. R. Civ. P. 9(b).   Under Rule 9(b), the complaint must allege specific

facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged

fraudulent representation, how or why the representation was false or misleading, and in some

cases, the identity of the person engaged in the fraud.   *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1106 (9th Cir. 2003); *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997).   Pleading the

knowledge or scienter element of a fraud claim is not required to be made with particularity but

Young, David Thompson, Melissa Thompson, Donald Porto and Patricia Porto.   (*See* SAC at 46:14-47:3, 50:27-51:1.)

may be made generally, under Rule 9(b).  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind – or scienter – of the defendants may be alleged generally.").  However, knowledge must still be pleaded sufficiently to make entitlement to relief plausible.  *Twombly*, *supra,* 500 U.S. at 569; *see also Oestreicher v. Alienware Corp.*, 544 F. Supp 2d 964, 968 (N.D. Cal. 2008) *aff'd,* 322 F. App'x 489 (9th Cir. 2009).

### B.  ANALYSIS OF THE MOTIONS TO DISMISS

As an overall matter, the Court finds that the allegations here are sufficient to state claims against the former homeowners.  Their knowledge of the falsity of the documents and participation in a scheme to mislead subsequent purchasers of the properties into believing that the properties were free of liens from the original mortgage obligations are all apparent from the allegations here.  As the Court previously found with respect to motions to dismiss by other named defendants here, these defendants' knowledge, if not expressly pleaded is "present in the interstices of the complaint" (Dec. 8 Order, p.8:3-9).

As to the defendants alleged to be signatories on fraudulent reconveyances, their participation the alleged fraudulent conduct and conspiracy to defraud are pleaded sufficiently.  The allegations regarding their role as signatories does not, however, lead to an inference that they had control or management authority over a RICO enterprise.

As to those defendants alleged to have participated only as notaries, real estate agents, and escrow agents, the allegations do not sufficiently allege their knowledge of the falsity of the reconveyances.

Further, Plaintiffs allegations as to the "Other Schemes," while informative as to the far-reaching nature of the alleged misconduct here, do not establish a basis for liability to named

plaintiffs who were not damaged directly by that alleged conduct.  Defendants named only in connection with those "Other Schemes" are properly dismissed if no connection to these plaintiffs is alleged.

### 1. First Claim for Relief - Fraud

Defendants Jon Sanders, Alicia Sanders, Carl Wallace, John Winter, Jolee Lange, Daniel Young, Kelly E. Young, Jason Young, Todd J. Smith, Tisha L. Trites, and Ryan Styles move to dismiss the claims for fraud on the grounds that the claims are not alleged with specificity, fail to allege knowledge of the fraud, and fail to allege plaintiffs' reliance on any fraudulent statements or conduct.

> a.   Daniel Young, Kelly Young, Jon Sanders and Alicia Sanders --
> Former Homeowners

The Court denied the Initial Movants' motion to dismiss these same claims, finding that the FAC clearly described a scheme to execute "fraudulent reconveyances of mortgage lenders' deeds of trusts on homes, thereby allowing defendants to represent to various homebuying-plaintiffs that the homes were free and clear of liens when, in fact, they were burdened by legitimate liens." December 8 Order, p. 2:6-9. The Court further opined that "[t]he 'who, what, when, where and why' are sufficiently described in the complaint, and are supported by numerous exhibits attached thereto." December 8 Order, p.7:23-24.  Plaintiffs argue that the motion here should be denied for the same reasons.  The court previously found that defendants' knowledge is "present in the interstices of the complaint" (Dec. 8 Order, p.8:3-9), and now defendants are attempting to get a "second bite at the apple" by asserting that the SAC fails to allege fraud with the requisite particularity and knowledge.

The Court agrees that the fraud here is alleged with sufficient particularity as against these former homeowner defendants.  The allegations are specific as to the nature of the information that

United States District Court
Northern District of California

was omitted and why those omissions were misleading, as well as when, how, and by whom. Moreover, the former homeowners' knowledge—that they owed a certain amount to their original lenders and that those deeds of trust essentially were erased without the original debt being satisfied—is plain from the allegations as stated and the documents attached to the Second Amended Complaint. (*See* SAC ¶¶103-113, 129-139, Exh. 22, 24, 37, 41.) As the Court previously stated, "[i]t is readily apparent from the complaint what the factual basis for the allegation of 'sham loans' is—that the entities were accepting deep short sales simply because they never lent money in the first place." (December 8 Order at 10:9-11.) The former homeowners here signed off on deeds of trust purporting to be given as security for loans they knew they were not receiving. These allegations are sufficient to establish their knowledge of the alleged fraud.

The SAC alleges, for instance, that the Sanders had a $396,000 deed of trust in favor of Countrywide. The Sanders signed and caused to be recorded a deed of trust in favor of Golden Hills Trust on July 26, 2010, in the amount of $567,000, despite never receiving any loan funds from Golden Hills. (SAC ¶ 104.) Thereafter, "defendants" fraudulently executed a full reconveyance of the Countrywide DOT. (SAC ¶ 107, Exh. 22.) The Sanders then sold the property to plaintiffs here (Li-Lung Sung and Tiee-Shan Tsai) without ever disclosing the Countrywide DOT. (SAC ¶ 108 -113.) The Golden Hills DOT was disclosed per the escrow closing statement, indicating that a loan from Golden Hills Trust was paid off, though at an amount far less than the $567,000 amount of the deed of trust. (SAC Exh. 24.) The allegations with respect to fraud are sufficient as to the Sanders. The motion to dismiss these claims is therefore **DENIED**.

Similar allegations are made with respect to the Youngs, whose deeds of trust in favor of their original lenders, as well as a notice of default on one of the loans, were cancelled after they executed a deed of trust in favor of defendant Kirkpatrick in which they received no loan funds.

After the original deeds of trust were cancelled, they sold the property to Altus Equity, which

quickly resold to plaintiffs here.  (SAC ¶ 129, 130, 132, 135, 136, 139, Exh. 37, 40.)[5]  These

allegations are sufficient to establish fraudulent conduct and the Youngs' knowledge of its falsity.

Defendants argue that the Youngs did not sell directly to any plaintiff here, and therefore no

claim is stated against them.  However, Plaintiffs persuasively argue that the Youngs cannot escape

liability for fraud based upon a misrepresentation or concealment where it is intended or reasonably

foreseeable that it will be repeated and will be acted upon by the plaintiff, under the principle of

indirect deception.  *Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1548 (1998) (citing Restatement

(Second) of Torts §533 (1977)).  Thus, the allegations of the SAC are sufficient to state a claim

against these defendants based upon a plausible legal theory.  Therefore, the motion is **DENIED** as

against Daniel Young and Kelly Young.

> b.   *Jolee Lange, Jason Young and Todd Smith  –*
> *Signatories on Reconveyances and Deeds of Trust*

Defendants Jolee Lange and Jason Young argue that Plaintiffs fail to allege a fraud claim

because Plaintiffs do not allege that: (1) they were not actual agents of Aegis and JP Morgan; (2)

they knew they did not have authority to execute the reconveyances, (3) they knew that the

reconveyances were fraudulent; (4) Plaintiffs relied on the fraudulent reconveyances; and (5)

Plaintiffs' reliance on the reconveyance was the legal cause of Plaintiffs' damages.

Jolee Lange is alleged to be a "purported agent for Mortgage Electronic Registration

System, Inc. (MERS) as Nominee for Aegis Wholesale Corporation."  (SAC ¶ 57.) The SAC

---

[5]  Daniel Young is further alleged to have been involved in one of the "Other Schemes" (the Sand Ridge Scheme) by signing as an authorized representative of Chase Home Finance on a document substituting the trustee and reconveying the property to Shirley Roth.  (SAC ¶ 217, Exh. 89.)  However, he is not specifically alleged to be liable for fraud or conspiracy to defraud based upon his involvement that scheme.  (*See* SAC ¶ 242, 249 [not naming Daniel Young based on these allegations].)

alleges that a fraudulent reconveyance of the Valley West property was signed by Lange as "Agent" for MERS as nominee for Aegis.  (SAC ¶ 77.)

Jason Young is alleged to be an "an alleged agent for 'JP Morgan Chase Bank, N.A.'" (SAC ¶ 67.)  The SAC alleges that Young was involved in the schemes on the Almondwood and Green Garden properties.  (SAC ¶¶ 67, 75.)  Jason Young is alleged to have signed a reconveyance on the Almondwood property as the authorized representative of JP Morgan Chase Bank NA on October 15, 2010.  (SAC ¶ 189, Exh. 71.)  Jason Young is also alleged to have signed a reconveyance on the Green Garden property as authorized representative for Charter One Bank, N.A. on September 20, 2010.  (SAC ¶ 202, Exh. 80.)

The allegations of the SAC, taken as a whole, are that the reconveyances were falsely executed so as to appear that the original banks had wiped out the original mortgage liens when they had not.  Further, the SAC indicates that these defendants were the persons who executed the false reconveyances.  (*See* SAC Exh. 65, 71, 80.)  While the allegations of the SAC do not expressly state that Jolee Lange and Jason Young were not *actually* agents for the entities on whose behalf they signed reconveyances, the allegation that they signed as the "*purported* agents" on *false* reconveyances is sufficient.  No ambiguity exists with respect to the alleged basis for these defendants' fraud liability.   Therefore, the motion to dismiss the fraud claim as against Jolee Lange and Jason Young is **DENIED**.

Todd Smith is also alleged to have signed as an "authorized representative" for CitiMortgage on another transaction in the alleged "Other Schemes" (SAC ¶ 222.)  There are no allegations that any named plaintiff was harmed by these "other schemes."  Therefore the motion to dismiss is **GRANTED** with leave to amend to allege a basis for fraud liability of Smith to any named plaintiff on account of his conduct as an authorized representative.

*c. Todd Smith  -- Notary Liability*

The SAC also alleges that Todd Smith notarized the signature of Carl Wallace as authorized representative for GMAC Mortgage on a reconveyance of the Loch Dane property. (SAC ¶¶ 119, 120.)  While Plaintiffs argue in opposition to the motion that Smith knew Wallace was not an authorized representative of GMAC Mortgage, that allegation is not pleaded.  Likewise, Smith is alleged to have notarized signatures on quitclaim deeds of the Northcrest property and the Almondwood property, but no allegation is made that he knew the person appearing before him was either not the person stated or not authorized to sign.  (SAC ¶¶ 167, 188, 238.)  In the absence of allegations that Smith knowingly signed something false or misleading, Plaintiffs have not stated a claim for fraud based upon his conduct as a notary.  The motion to dismiss is **GRANTED** with leave to amend as to Todd Smith on these grounds.

*d. Tisha Trites – Notary and Broker Liability*

As with the allegations against Smith on account of his conduct as a notary, Plaintiffs argue that they have alleged that Tisha Trites notarized reconveyances as to the Northcrest property stating that Carl Wallace was authorized to sign on behalf of Bank of America even though she knew he was not.  However, the argument overstates what is actually alleged.  The allegations of the SAC do not plead that Trites had knowledge of the false or misleading information – they merely state that Trites "claimed" that Wallace appeared before her and that the "fraudulently executed" documents "appear to be signed" by Wallace as representative of Bank of America. (SAC ¶¶ 163-166, Exhibits 55 and 56.)  This is insufficient to hold Trites liable for intentionally misleading Plaintiffs by virtue of notarizing the documents.

Plaintiffs further argue that Trites was also the broker on the sale of the Northcrest property to Petto, who eventually sold to a plaintiff here (Carifi).  She is also alleged to have acted as broker

for two other defendants (the Eweisses) in their sale to plaintiff (Hanna).  Plaintiffs argue that, as a broker, she knew and should have disclosed the "odd" circumstances surrounding the forged reconveyances.  Again, Plaintiffs have not pleaded Trites' knowledge of forgery or "odd" circumstances.

The failure to do so is not trivial.  To prove liability for fraud, it is not enough that defendant had mere involvement in the transaction, but that the defendant knew of the false or misleading nature of the action, and intended to injure the plaintiff thereby.  The allegations here are not sufficient to state such liability against Trites and the motion to dismiss as against her is **GRANTED** with leave to amend.

*5.  Tisha Trites Realty and Ryan Styles  -- Liability for Broker Activities*

Again, Plaintiffs argue in their opposition brief that Trites, Tisha Trites Realty ("TTR), and Styles as the employee of TTR "knew" the reconveyances related to Valley West and Northcrest were fraudulent.  However, this knowledge is not pleaded.  While Plaintiffs contend that knowledge of the fraudulent conduct, and therefore liability for that conduct, can be "inferred" from the circumstances, such an inference is not warranted based upon the allegations in the SAC as to these defendants, given the limited role they are alleged to have played and the ambiguity as to whether they would necessarily have known that the transactions in which they were involved were based upon fraudulent documents.  The motion to dismiss these claims as against TTR and Styles is **GRANTED** with leave to amend.

**2.      *Second Claim for Relief - Conspiracy to Defraud***

Defendants Jon Sanders, Alicia Sanders, Daniel Young, Kelly E. Young, Jolee Lange, Jason Young, Todd J. Smith, Tisha L. Trites, and Ryan Styles move to dismiss the claim for conspiracy to

United States District Court
Northern District of California

defraud.  Defendants argue that there are no facts alleged to show an agreement among the alleged co-conspirators.

The elements of a civil conspiracy are: (1) agreement to and operation of a common design or plan; (2) a wrongful act done in furtherance of that common design or plan; and (3) resulting damage to the plaintiff.  *Rusheen v. Cohen,* 37 Cal.4th 1048, 1062 (2006); *see also Philips Med. Capital, LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1045 (N.D. Cal. 2007). "Although an express agreement need not be shown for a plaintiff to prevail on a civil conspiracy claim, there must be at least a tacit understanding."  *In re Sunset Bay Associates*, 944 F.2d 1503, 1517 (9th Cir. 1991)  "[T]he existence of a conspiracy 'may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances.'"  *Id.* (citing *Greenwood v. Mooradian,* 137 Cal.App.2d 532, 538 (1955)).  Indeed,

> [c]onspiracy (the agreement) is ordinarily not actionable by itself.  The cause of action arises out of some wrongful act committed by one or more of the conspirators, and if such a wrongful act is set forth the conspiracy averment is unnecessary to the statement of a cause of action.

*Unruh v. Truck Ins. Exch.*, 7 Cal. 3d 616, 631 (1972) abrogated on other grounds, see *Hendy v. Losse*, 54 Cal. 3d 723, 732 (1991).  The conspiracy allegation serves to establish liability of defendants who agreed to defraud the plaintiff, regardless of whether they were direct participants in the wrongful acts.  *See* 5 Witkin, *Cal. Proc.* 5th (2008) Pleading, § 921, p. 335.  To be liable under a conspiracy theory, it is not necessary that the defendant have been part of the agreement from the inception of the scheme, rather "every one who enters into such a common design is in law a party to every act previously or subsequently done by any of the others in pursuance of it." *de Vries v. Brumback*, 53 Cal. 2d 643, 648 (1960); *see also* California Jury Instr. (BAJI) Civil 13.93 ("[e]very person who joins a conspiracy after its formation, is liable for and bound by the acts done

United States District Court
Northern District of California

and declarations made by other members in pursuance and furtherance of the conspiracy before and during the time that [he] [she] is a member of the conspiracy").

> a.    Jon Sanders, Alicia Sanders, Daniel Young, Kelly E. Young – Former Homeowners

In addition to their allegations of fraudulent conduct, Plaintiffs allege that Defendants "formed a malicious combination to cause injury [to them and] acted unlawfully and conspired to defraud."  (SAC ¶ 249.)  The former homeowner defendants are alleged to have "participated in the conspiracy by, among other things, selling or causing to be sold the properties under the guise that they were free of encumbrances and recording fraudulent documents."  (*Id.*)  Other defendants are alleged to have participated by causing fraudulent liens to attach to the properties, accepting funds for phantom obligations, luring victims into the schemes or otherwise planning the schemes.  While no agreement is alleged expressly, the nature of the alleged conduct and alleged roles of the parties gives rise to a reasonable inference that the homeowners were acting based upon the agreement of at least some of the other defendants to carry out the alleged scheme.  The motion to dismiss this claim as to the Sanders and the Youngs is **DENIED**.

> b.    Jolee Lange, Jason Young – Signatories on Reconveyances

Defendants Jolee Lange, Jason Young are alleged to have participated in a conspiracy by executing and recording fraudulent reconveyances. (SAC ¶ 249.)  These allegations, along with the more specific allegations regarding their conduct in the general allegations section and the incorporated allegations in the fraud claim, are sufficient to state a claim for conspiracy to defraud. The agreement to participate in the common design is implicit in the nature of the allegations.  The motion to dismiss this claim as to Jolee Lange and Jason Young is **DENIED**.

United States District Court
Northern District of California

c.      *Todd J. Smith, Tisha L. Trites, and Ryan Styles*

Todd J. Smith and Tisha L. Trites are alleged to have participated in a conspiracy by notarizing fraudulent reconveyances.  (SAC ¶ 249.)  In addition, Trites and Ryan Styles are alleged to have participated in the conspiracy by acting as real estate brokers for fraudulent short sales. (*Id.*)  As with the other defendants, no express allegation states that they agreed to participate in a conspiracy.  Moreover, the allegations are not just insufficient to state a claim for fraud against them, but do not support an inference of an agreement to participate in a common design to defraud any plaintiffs here.  As a result, the motion to dismiss the Second Claim for relief as to defendants Todd J. Smith, Tisha L. Trites, and Ryan Styles is **GRANTED** with leave to amend.

### 3.      *Third Claim for Relief – Civil RICO Enterprise Liability 18 USC §1962(c)*

Plaintiffs' Third Claim in the SAC is for RICO Enterprise Liability.  Defendants Jon and Alicia Sanders, Daniel and Kelly Young, Todd Smith, Jason Young, Ryan Styles, Tisha Trites, TTR, Golden Hills Group, and GJZ Group move to dismiss this claim.  To state a civil RICO claim under Section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (i.e., "predicate acts"), (5) causing injury to plaintiff's business or property.  *See Grimmett v. Brown* 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S. C. §§ 1964(c) and 1962(c)).  The Supreme Court has held that RICO is to be read broadly to "effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 498 (1985).

Defendants make several arguments as to the insufficiency of the RICO Enterprise allegations.  First, as to Defendants Todd Smith, Daniel Young, GJZ Group, and Golden Hills Group, it is argued that Plaintiffs have no standing to allege RICO claims against them because these defendants are only alleged to have been involved in the "Other Schemes" relative to other properties, and were not alleged to be involved in the properties that any plaintiff purchased.  Next,

United States District Court
Northern District of California

as to all the moving defendants, they argue that the predicate acts of mail fraud, wire fraud and bank fraud are not sufficiently alleged.  Finally, they argue that the allegations fail to show that defendants participated in an enterprise since none of the allegations against defendants could establish that they had a role in the "management of the enterprise."

### a.   Standing

In order to establish standing under RICO, a plaintiff must be "injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c).  There is "directness" requirement for establishing standing, such that "a plaintiff who complains of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts, generally stands at too remote a distance to recover." *Holmes v. Security Investor Protection Corp.*, 503 U.S. 258, 268-269 (1992). Moreover, the plaintiff's injury must be proximately caused by defendant's commission of a predicate act, not by some other conduct of the defendant. *Id.*

### 1.   Todd Smith, Daniel Young

Todd Smith is alleged to have been a notary on the Loch Dane Scheme and the Almondwood Scheme, and a signatory on false reconveyances in connection with "Other Schemes." (SAC ¶¶ 120, 167, 188, 222, 238.)  As stated above, Smith's alleged involvement as a notary alone is not sufficient to state a claim for fraud because the allegations do not clearly indicate that he had knowledge of any false or misleading statements.  The allegation that Smith was involved in the "Other Schemes" does not allege an injury that is sufficiently "direct" as to Plaintiffs here.  Thus, the motion to dismiss the RICO Enterprise claim as to Todd Smith is **GRANTED** on this basis.

Daniel Young is alleged to have been involved as a former homeowner selling the Shannon Bay property, as well as having been involved in the alleged "Other Schemes" where no sale of any

United States District Court
Northern District of California

property to any Plaintiff here is alleged.[6]  Young's participation as a former homeowner is

sufficiently direct to establish standing here.

2.      *GJZ and Golden Hills Group*

Defendants GJZ and Golden Hills Group also assert that Plaintiffs lack standing to bring

claims against them because they were not involved in the nine fraudulent short sales that closed.

Plaintiffs argue that because the entities are alter-egos of defendants who have already been

properly named as RICO defendants, standing is established. (SAC ¶¶ 220, 221, 230, 231 and 232,

Exh. 91 and 95.)  However, the alter ego allegations are little more than conclusions with no facts

alleged to support them.  In addition, Plaintiffs do not offer any allegation that GJZ and Golden

Hills Group were involved in the transactions that harmed them.  Thus, the SAC does not establish

the "directness" required to establish standing as against these defendants.  The motion to dismiss

as to GJZ and Golden Hills Group is **GRANTED** with leave to amend.

b.      **Predicate Acts**

Defendants next argue that Plaintiffs have not alleged the predicate acts necessary to

establish a RICO Enterprise claim.  The predicate acts alleged here are wire fraud, mail fraud, and

bank fraud.  Wire fraud under 18 U.S.C. § 1343 is established by the use of "interstate wire, radio

or television communications" to perpetuate "any scheme or artifice to defraud."  The Ninth Circuit

has held that "the only aspects of wire fraud that require particularized allegations are the factual

circumstances of the fraud itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007)

(allegations of the use of a credit card sufficient to constitute wire fraud).  Similarly, while the

details of the fraudulent scheme must be pleaded with particularity, use of the mails in furtherance

---

[6] There are other ambiguous allegations that "defendant Young" executed a false reconveyance.  It is unclear as to whether they refer to *Daniel* Young or *Jason* Young, both of whom are named as defendants here.  However, the SAC at ¶ 258 alleges that both Daniel Young and Jason Young participated in the RICO enterprise by executing fraudulent reconveyances.

of that scheme, as prohibited by 18 U.S.C. § 1341, may be pleaded generally.  *Schreiber Distrib.*

*Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (mail fraud sufficiently

pleaded by allegations that "the Defendants ... have engaged ... on two or more occasions the use of

the United States mail and/or use of interstate telephone calls for the purpose of executing or

attempting to execute the aforesaid fraudulent scheme").  Finally, bank fraud under 18 U.S.C. §

1344 is established by a scheme to defraud a financial institution or to obtain any of the funds

"owned by, or under the custody and control of, a financial institution by means of false or

fraudulent pretenses, representations or promises."

Plaintiffs allege that Defendants "committed bank fraud by executing the fraudulent

reconveyances and diverting and converting sale proceeds from fraudulent sales and short sales."

(SAC ¶ 261.)  They allege mail fraud "by sending documents and causing to be sent documents

through the U.S. mail in furtherance of the fraud."  (*Id.*)  They allege "wire fraud by causing

plaintiffs and their banks to wire transfer funds in interstate commerce that were diverted and

converted by defendants." (SAC ¶ 262.)  The allegations and exhibits to the SAC establish the basis

for a claim based upon wire fraud in they can fairly be read to allege that payments were made to

certain defendants and their creditors, and those payments were made by wire transfer of funds

from banks.  (*See, e.g.,* SAC Exh. 24.)  As to the mail fraud allegations, a number of the

reconveyances and other related documents indicate that they were mailed or required to be mailed

to defendants upon recording.  (See, e.g., Exh. 21, 22, 39, 40, 41.)  As the Court previously stated

in the Order denying the prior motion to dismiss on these same grounds, allegations that defendants

engaged in a scheme to obtain funds from plaintiffs' banks by making false representations as to

encumbrances on the properties, along with the detailed allegations of the schemes as to each

property, are sufficient to establish bank fraud.  (December 8 Order at 15:20-16:2.)  The predicate acts are sufficiently pleaded here.

### c.       Participation In An Enterprise

Defendants next argue that Plaintiffs have not sufficiently alleged participation in an enterprise.  Section 1962(c) requires the existence of an "enterprise," a term that Congress intended to be read broadly. *U.S. v. Turkette*, 452 U.S. 576, 593 (1981).  An "associated in fact" enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, *supra,* 452 U.S. at 583.  In order to establish the existence of such an enterprise, a plaintiff must provide allegations of an ongoing organization, whether formal or informal, and evidence that the alleged participants conducted themselves as a continuing unit.  *Odom*, *supra,* 486 F.3d at 551. To "participate, directly or indirectly, in the conduct of such enterprise's affairs one must have some part in directing those affairs." *Walter v. Drayson*, 538 F.3d 1244, 1248 (9th Cir. 2008) (*citing Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)).  Thus, a proper RICO defendant must have exerted "managerial control" over the enterprise, not simply have been used to further the wrongful efforts of the enterprise.  *See Baumer v. Pachl,* 8 F.3d 1341, 1344 (9th Cir. 1993) [attorney who prepared partnership agreement and assisted in bankruptcy did not exercise managerial control]; *Webster v. Omnitron Int'l Inc.,* 79 F.3d 776, 789 (9th Cir. 1996) [corporate officer who made statements promoting fraudulent scheme determined to have a "purely ministerial" rather than managerial role in enterprise].  Those persons occupying a mere ministerial or "service provider" role are not proper defendants.  *See Walter,* 538 F.3d at 1249.

The former homeowner defendants are alleged to have sold or caused to be sold "properties under the guise that they were free of encumbrances and recording fraudulent documents." (SAC ¶ 249, 258.)  As with the fraud and conspiracy to defraud claims, their alleged knowledge of the

United States District Court
Northern District of California

scheme to conceal the original encumbrances is plain from the allegations and the allegations of fraud are sufficiently particular as to the details of the schemes here.  Further, the Court reasonably can infer from these allegations that the former homeowners directed or managed the enterprise, at least insofar as it relates to their own properties.  Thus, the motion to dismiss this claim as against Defendants Jon Sanders, Alicia Sanders, Daniel Young, and Kelly E. Young is **DENIED**.

With respect to the defendants who are alleged to have executed and recorded fraudulent reconveyances (Jason Young, Jolee Lange)[7], the allegations of the complaint are only that they "participated" in the conduct, not that they managed the enterprise.  (SAC ¶ 258.)[8]  In contrast to those defendants who the Court found to be "key players" in ruling on the prior motion to dismiss the FAC, here the involvement of the fraudulent signatory defendants appears to be limited to carrying out a part of the scheme with respect to one, or perhaps two, of the nine properties, rather than directing and controlling the course of the alleged enterprise.  The motion to dismiss is therefore **GRANTED** with leave to amend as to Jason Young and Jolee Lange to allege facts that would support a claim that they had had "some part in directing" the affairs of the enterprise.  *See Walter,* 538 F.3d at 1249.

Finally, as to the defendants alleged to have been involved as notaries or real estate brokers (Trites, Styles, TTR), their alleged conduct likewise does not rise to the level of managerial or

---

[7]  Although paragraph 258 alleges that Trites executed a false reconveyance, the only allegations in the general allegations section concerning Trites allege that she notarized certain documents and that she acted as the real estate broker on certain transactions, not that she executed a false reconveyance herself. (SAC ¶¶ 164, 166, 168, 179, 223.)  Therefore, there are no factual allegations to support RICO liability on the part of Trites on account of executing a false reconveyance.

Though Daniel Young is also alleged to have entered into a false reconveyance, the basis for his liability is established by the allegations against him as a former homeowner.

[8]  Plaintiffs generally allege that "[e]ach defendant managed *or* participated in the conduct of the enterprise."  (SAC ¶ 258, emphasis supplied.)  However, they go on to allege participation *and* management only by the former homeowner defendants (Sanders, Young) and the real estate broker defendants (Trites, TTR, Styles).  (*Id.*) As to the defendants who are alleged to have executed and recorded fraudulent reconveyances, and to have notarized fraudulent documents, Plaintiffs allege only participation.  (*Id.*)

operational control of the enterprise, but appears to be merely ministerial in accomplishing its ends. No matter how liberally the allegations are construed, they are not sufficient presently to establish RICO Enterprise liability against the notary or real estate defendants.  *See Walter,* 538 F.3d at 1248.  The motion to dismiss is therefore **GRANTED** with leave to amend as to Tisha Trites, TTR and Ryan Styles.

### 4.      *Fourth Claim for Relief – Civil RICO Conspiracy Liability, 18 USC §1962(d)*

Section 1962(d) makes it unlawful for a person "to conspire to violate any of the provisions of subsections (a), (b), or (c) of [section 1961]."  "[C]onspiracy to violate RICO requires a showing that defendant 'was aware of the essential nature and scope of the enterprise and intended to participate in it.'" *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) (citing *United States v. Muskovsky,* 863 F.2d 1319, 1324 (7th Cir.1988), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989)).  Plaintiffs must allege a RICO claim under section 1962(c) and an agreement to commit at least two predicate acts.  *See Howard v America Online, Inc.* 208 F.3d 741, 751 (9th Cir. 2000); *Neibel v. Trans World Assur. Co.,* 108 F.3d 1123, 1127 (9th Cir. 1997).  "In a RICO conspiracy, as in all conspiracies, agreement is essential." *Baumer,* 8 F.3d at 1346.

Defendants Jon Sanders, Alicia Sanders, Daniel Young, Kelly Young, Jolee Lange, Jason Young, Todd Smith, Tisha Trites, TTR, Styles, GJZ Group, and Golden Hills Group move to dismiss this claim.  They argue that the RICO conspiracy claim fails because the underlying RICO claim fails, and because an agreement is not alleged sufficiently.

The Court agrees that if no RICO Enterprise claim was stated against a defendant, as stated in section 3 above, Plaintiffs have likewise failed to allege a viable RICO Conspiracy claim against those defendants.  Therefore the motion to dismiss this claim as to Defendants Jolee Lange, Jason

1  Young, Todd Smith, Tisha Trites, TTR, Styles, GJZ Group, and Golden Hills Group is **GRANTED**

2  with leave to amend.

3       With respect to the former homeowner defendants, the allegations are sufficient to state a

4  RICO Enterprise claim as well as to infer an agreement to participate in the enterprise and to carry

5  out at least two of the alleged predicate acts in furtherance of that enterprise.  (SAC ¶¶ 105, 107,

6  113, Exh. 21, 22, 24 [Sanders]; ¶¶ 113, 135, 137, 144, Exh. 39, 40 [Young].)  Thus, the motion is

7

8  **DENIED** as to Defendants Jon Sanders, Alicia Sanders, Daniel Young, and Kelly Young.

9       ### 5.    *Fifth and Sixth Claims for Relief - Breach of Contract and Breach of the Implied Covenant of Merchantable Title*

10

11       Defendants Randall C. Crawford, Jon Sanders, Alicia Sanders, Kevin Keith, Christy Keith,

12  Fahed Eweis, and Nadia Eweis move to dismiss the claims for breach of contract and breach of the

13  implied to convey merchantable title.  They argue that the alleged purchase agreements, and the

14  implied covenant, require that sellers disclose any matter affecting title to their property that is

15  known to them, but these defendants are not alleged to have known that there was any question

16  about the title to their property or that any third party might claim an interest in the property.

17

18       Plaintiffs argue that they have pleaded that these defendants knew, but failed to disclose,

19  that they had not repaid their original loans and that they knew that no sums were ever lent to them

20  by the holders of the new deeds of trust on their properties, made after the allegedly false

21  reconveyances, pointing to allegations in paragraphs 112, 155, 182, and 193 of the SAC.

22  Moreover, Plaintiffs argue that, as to the implied covenant claim, the seller's knowledge is not

23  relevant, only the question of whether a purchaser would have purchased knowing the full facts.

24

25       The allegations are similar as to each property.  As an example, the Sanders are alleged to

26  have signed and recorded a deed of trust in favor of Defendant Golden Hills Trust in the amount of

27  $567,000 without ever having received any loan proceeds.  They are alleged to have assigned their

28

rights in that deed of trust to two other defendants here, Shon-te-east-a and DiChiara.  Thereafter a reconveyance of the original lender's deed of trust was recorded and the Sanders sold the property to some of the plaintiffs here.  (SAC ¶¶ 103-108.)  The Sanders are alleged to have failed to disclose that: (1) that Sanders' loan from Countrywide had not been fully repaid; (2) the reconveyance purporting to negate Countrywide's deed of trust was fraudulent because the underlying loan had not been fully repaid; and (3) no sums were ever lent to the Sanders by Golden Hills. (SAC ¶ 112.)   The proceeds of the sale are alleged to have gone to Golden Hills Trust, in part, but in an amount much below the deed of trust in favor of Golden Hills Trust.  (SAC ¶ 113.)

Randall Crawford is alleged to have signed and recorded a $280,000 deed of trust in favor of Golden Hills Trust, again with no loan proceeds received.  Crawford is alleged to have quitclaimed the property to Shon-te-east-a and assigned his rights in his original deed of trust. Shon-te-east-a is alleged to have then quitclaimed the property back to Crawford.  Thereafter "defendants" are alleged to have executed a reconveyance of the original lender's deed of trust. Crawford subsequently sold the property to a plaintiff here, Phuong.  (SAC ¶¶ 186-190.)  The Court notes that Crawford is not a signatory to that reconveyance, but is listed as the party to whom it should be mailed upon recording.  (SAC Exh. 71.)  Golden Hills is alleged to have made a payoff demand of just over $70,000, in the escrow of the sale of the property to Phuong.  (SAC ¶¶ 194, 195.)

The Keiths are alleged to have signed and recorded a deed of trust in favor of Golden Hills Trust in the amount of $283,000 with no loan proceeds received.  "Defendants" are alleged to have fraudulently reconveyed the deed of trust in favor of the original lender.  The Keiths thereafter sold their property to Heinz, who purchased title insurance from Plaintiff FNTIC.  (SAC ¶¶ 149-152, 158.)  Like Crawford, the Keiths did not sign the reconveyance of the original lender's deed of

United States District Court
Northern District of California

trust, but were listed as the party to receive the copy upon recording. (SAC Exh. 48) The proceeds of the sale are alleged to have gone, in part, to Golden Hills Trust. (SAC ¶ 156.)

The Eweises are alleged to have signed and recorded a deed of trust in favor of Golden Hills Trust in the amount of $580,000 but without receipt of any loan funds. Plaintiffs allege that "defendants" fraudulently executed a Notice of Rescission of Notice of Default issued by the Eweises original lender. Likewise "defendants" are alleged to have executed a reconveyance of the original lender's deed of trust. The Eweises were not signatories to the reconveyance or the notice of rescission of default. (SAC Exh. 64, 65). The Eweises then sold the property to a plaintiff here. (SAC ¶¶ 173-180.) Proceeds of the sale went to Golden Hills Trust to pay off the allegedly fraudulent deed of trust. (SAC ¶ 183.)

That the former homeowners' knew that their original debts were reconveyed without payment to the original lenders is clear from the allegations as stated and the documents attached to the Second Amended Complaint. While they entered into new deeds of trust with Golden Hills Trust, the allegations are that there was no actual loan underlying that deed of trust. The allegations are sufficient to state a claim against the former homeowners for breach of contract due to failure to disclose all matters they knew might affect title. Thus, the motion to dismiss the fifth claim for breach of contract as to Defendants Randall C. Crawford, Jon Sanders, Alicia Sanders, Kevin Keith, Christy Keith, Fahed Eweis, and Nadia Eweis is **DENIED**.

Moreover, the sixth claim for relief on a theory of breach of the implied covenant does not require such knowledge. The claim is based upon the legal principle that a seller has a duty to furnish good and marketable title. *King v. Stanley*, 32 Cal. 2d 584, 590 (1948) (disapproved on other grounds by *Patel v. Liebermensch*, 45 Cal. 4th 344 (2008)). The test of whether title is considered good and marketable is "'whether a reasonable purchaser, knowing that a third party

29

might claim an interest in the property, would nevertheless proceed with the transaction.'"

*Dollinger DeAnza Associates v. Chicago Title Ins. Co.*, 199 Cal. App. 4th 1132, 1148 (2011)

*quoting Mellinger v. Ticor Title Ins. Co.*, 93 Cal.App.4th 691, 695-96 (2001).  While the allegations

clearly indicate that the former homeowners did have such knowledge, they need not have known

that the prior liens were not paid off or that their reconveyance was a sham in order to have

breached the implied covenant.  Therefore, the motion of Defendants Randall C. Crawford, Jon

Sanders, Alicia Sanders, Kevin Keith, Christy Keith, Fahed Eweis, Nadia Eweis, and Lara

Karakasevic to dismiss the sixth claim for relief is **DENIED**.

### 6.      *Seventh Claim for Relief - Negligence*

This claim is alleged against former homeowner defendants Daniel R. Young,[9] Kelly

E.Young, David Thompson, Melissa Thompson, Donald Porto, and Patricia Porto, each of whom

move to dismiss based upon the argument that they are not alleged to have known that the

reconveyances of the original deeds of trust and the new deeds of trust in favor of other defendants

here were not valid or that the debts to the original lenders were not satisfied.

To plead a claim for negligence, Plaintiffs must allege that Defendants had a duty of care,

that Defendants breached that duty of care, and that the breach proximately caused an injury to

them.  *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).  Where the defendant has no

actual knowledge of the facts that would make the harm foreseeable, no duty arises.  *See Rowland

v. Christian, supra* (1968) 69 Cal.2d 108, 113; *Uccello v. Laudenslayer*, 44 Cal. App. 3d 504, 513

(1975).

Defendants argue essentially that no duty arose here because Plaintiffs did not allege that

Defendants knew the reconveyances on the original debts and the new liens that were recorded

---

[9] The heading states Mr. Young's name, apparently erroneously, as "Dennis" Young.  The remainder of the SAC refers to him as Daniel R. Young.  (SAC at p.46.)

United States District Court
Northern District of California

were "bogus" such that the original lenders were not paid off.   Though the allegations do not expressly state that these defendants had actual knowledge that the deeds of trust and reconveyances were false, the clear implication of the allegations is that each of these defendants knew their original loans were not paid off, and knew that the deeds of trust they were executing not supported by an underlying note or obligation to the new beneficiary on the deed of trust.  (*See* SAC ¶¶ 198, 203, 290-91 [Portos]; ¶¶ 161-162, 290-91 [Thompsons]; ¶¶ 135, 137, 139, 290-91 [Youngs].)  These allegations are sufficient to allege that harm to the purchasers such as Plaintiffs was foreseeable, giving rise to a duty of due care.  Based upon these allegations, the negligence claim is stated and the motion is **DENIED**.

> **7.     *Eighth Claim for Relief – Notary Liability***

Defendants Todd Smith and Tisha Trites move to dismiss this claim for notary liability. Plaintiffs indicated at the hearing that they are withdrawing this claim.  The motion to dismiss is therefore **GRANTED** without leave to amend as to the eighth claim for relief.[10]

> **8.     *Ninth Claim for Constructive Trust***

All Defendants moved to dismiss the ninth claim for relief on the grounds that a constructive trust is a remedy and not a claim in and of itself.  The weight of the legal authority supports this view.  *See* 13 Witkin, SUMMARY CALIF. LAW 10th (2005) Trusts, § 319, p. 892. Moreover, at the hearing on these motions, Plaintiffs conceded the point.

The motions to dismiss this claim are therefore **GRANTED** with leave to amend to allege the remedy of a constructive trust in connection with any claim for relief in the SAC.

### CONCLUSION

Therefore, the Court Orders as follows:

1.      The Motion to Stay by Defendants Donald Porto, Patricia Porto, David R Thompson, and Melissa A Thompson (Docket No. 140) is **DENIED**;

2.      The Motion of Defendant Todd J. Smith to Dismiss SAC (Docket No. 141) is **DENIED** as to the First Claim for fraud based upon allegations that he was a signatory on a fraudulent reconveyance, and **GRANTED WITH LEAVE TO AMEND** as to the Second, Third, and Fourth and Ninth claims and **GRANTED WITHOUT LEAVE TO AMEND** as to the Eighth Claim for notary liability;

3.      The Amended Motion of Defendants Portos and Thompsons to Dismiss SAC (Docket No. 154) is **DENIED** as to Seventh claim for negligence, and **GRANTED WITH LEAVE TO AMEND** as to Ninth Claim, and the motion to strike is **GRANTED IN PART** as to paragraphs 303-06 only and otherwise **DENIED**;

4.      The Amended Motion of Defendants Crawford, Eweises and Keith to Dismiss SAC (Docket No. 155) is **DENIED** as to the Fifth and Sixth claims and **GRANTED WITH LEAVE TO AMEND** as to Ninth Claim and the motion to strike is **GRANTED IN PART** as to paragraphs 303-06 only;

5.      The Amended Motion of Defendants GJZ Group and Golden Hills Group to Dismiss SAC (Docket No. 156) is **GRANTED WITH LEAVE TO AMEND** as to the RICO Enterprise and Conspiracy Claims (Third and Fourth) and as to Ninth Claim, and the motion to strike is **GRANTED IN PART** as to paragraphs 303-06 only;

6.      The Amended Motion of Defendants Lange, Smith, Daniel Young and Jason Young to Dismiss SAC (Docket No. 157) is:

---

[10] Although Defendant Laura Pezzi is named, she did not move to dismiss as to this cause of action. (*See* Pezzi Motion to Dismiss Dkt. No. 175.)  Nevertheless, given the representation that the claim is withdrawn, any amended complaint should not include such a claim against her.

United States District Court
Northern District of California

As to Defendant Jolee Lange, **DENIED** as to the First and Second claims and **GRANTED WITH LEAVE TO AMEND** on the Third, Fourth, and Ninth claims;

As to Defendant Todd Smith, **DENIED** as to the First claim, **GRANTED WITH LEAVE TO AMEND** on the Second, Third, Fourth, and Ninth claims;

As to Defendant Daniel Young, **DENIED** as to First, Second, Third, Fourth and Seventh claims and **GRANTED WITH LEAVE TO AMEND** on the Ninth Claim;

As to Defendant Jason Young, **DENIED** on the first and second claims and **GRANTED WITH LEAVE TO AMEND** on the Third, Fourth, and Ninth claims; and

The motion to strike is **GRANTED IN PART** as to paragraphs 303-06 only;

7.      The Amended Motion of Defendants Alicia A. Sanders, Jon P. Sanders, Daniel R. Young, and Kelly E. Young to Dismiss SAC (Docket No. 158) is **DENIED** as to the First, Second, Third and Fourth claims and **GRANTED WITH LEAVE TO AMEND** on the Ninth claim, and the Motion to Strike is **GRANTED IN PART** as to paragraphs 303-06 only;

8.      The Amended Motion of Defendants Tisha L. Trites, Tisha Trites Realty and Ryan Styles to Dismiss SAC (Docket No. 159) is **GRANTED WITH LEAVE TO AMEND** as to the First, Second, Third, Fourth, Eighth, and Ninth claims, and the Motion to Strike is **GRANTED IN PART** as to paragraphs 303-06 only;

9.      The Amended Motion of Defendants Castle, CCTT Group and Oreplex International LLC to Dismiss Ninth Claim for Relief in the SAC (Docket No. 172) is **GRANTED WITH LEAVE TO AMEND** and the Motion to Strike is **GRANTED IN PART** as to paragraphs 303-06 only;

10.      The Amended Motion of Defendants Di Chiara and Shon-Te-East-A to Dismiss Ninth Claim for Relief in the SAC (Docket No. 173) is **GRANTED WITH LEAVE TO AMEND** and the Motion to Strike is **GRANTED IN PART** as to paragraphs 303-06 only;

33

United States District Court
Northern District of California

11.      The Amended Motion of Defendants Remus A. Kirkpatrick aka Al Kirkpatrick, Golden Hills Trust and Financial Recovery Group to Dismiss Ninth Claim for Relief in the SAC (Docket No. 174) is **GRANTED WITH LEAVE TO AMEND** and the Motion to Strike is **GRANTED IN PART** as to paragraphs 303-06 only; and

12.      The Amended Motion of Defendant Laura M. Pezzi to Dismiss Ninth Claim for Relief in the SAC (Docket No. 175) is **GRANTED WITH LEAVE TO AMEND** and the Motion to Strike is **GRANTED IN PART** as to paragraphs 303-06 only.

Plaintiffs have filed a motion for leave to supplement the complaint, adding allegations similar to those in the Second Amended Complaint but with respect to three new, additional properties, and with new and existing defendants alleged to have played similar roles as alleged in the SAC.  The Court has granted the motion to supplement by separate order issued this date. Plaintiffs are **ORDERED** to amend their supplemental allegations consistent with the rulings herein and incorporate them into the Third Amended Complaint.

Plaintiffs shall file their Third Amended Complaint no later than September 10, 2012.

Defendants shall file their responsive pleadings no later than October 1, 2012.  To the extent that Defendants' response is additional motions directed at the pleadings, Defendants are directed to file consolidated motions and to make appropriate requests to the Court as necessary, in advance of the deadline, to file a single, overlength brief.

The case management conference currently set for October 1, 2012, at 2:00 p.m. remains on calendar.

**IT IS SO ORDERED**.

Date: August 20, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**