| | |
|---|---|
| 1 | Stephen C. Seto (SBN 175458) |
| | (sseto@wcjuris.com) |
| 2 | Kimberly A. Millington (SBN 169200) |
| | (kmillington@wcjuris.com) |
| 3 | **BERGQUIST WOOD McINTOSH SETO** LLP |
| | 1470 Maria Lane, Suite 300 |
| 4 | Walnut Creek, CA  94596 |
| | Telephone:   (925) 938-6100 |
| 5 | Facsimile:    (925) 938-4354 |
| 6 | Attorneys for Plaintiffs |
| | FIDELITY NATIONAL TITLE INSURANCE |
| 7 | COMPANY, et al. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al.,<br><br>           Plaintiffs,<br><br>vs.<br><br>JAMES C. CASTLE aka J. CHRISTOPHER CASTLE et al., and Does 1 through 100, inclusive,<br><br>           Defendants.<br><br>And Related Cross-Actions | No. C-11-00896 YGR<br><br>**PLAINTIFF CHICAGO TITLE INSURANCE COMPANY'S NOTICE OF AND MOTION TO COMPEL DEFENDANT JAMES CASTLE TO PROVIDE FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR SANCTIONS AGAINST CASTLE AND HIS COUNSEL, ANN DRAPER, IN THE AMOUNT OF $14,276.50**<br><br>[Declarations of Stephen C. Seto and Kimberly A. Millington and [Proposed] Order Filed Concurrently Herewith]<br><br>Date:         June 17, 2014<br>Time:        2:00 p.m.<br>Courtroom: 1<br>Judge:       Hon. Yvonne Gonzalez Rogers<br><br>No Trial Date Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**YOU ARE HEREBY NOTIFIED THAT** on June 17, 2014 at 2:00 p.m., or as soon

-1-

**MOTION TO COMPEL**

thereafter as the matter may be heard by the Honorable Yvonne Gonzalez Rogers, Courtroom 1, United States District Court, Northern District of California, 1301 Clay Street, Oakland, California, Plaintiff CHICAGO TITLE INSURANCE COMPANY ("Plaintiff") will and hereby does move the Court for an order compelling Defendant JAMES C. CASTLE ("CASTLE") to: 1) provide amended responses that contain a statement as to whether or not CASTLE has responsive documents and only the objections CASTLE is relying upon to withhold documents responsive to each particular request; 2) prepare a Privilege Log of all withheld documents; 3) produce to the Court for *in camera* review all documents withheld on the basis of the attorney-client, attorney work product, and joint defense privileges so the Court can determine if the privileges or the crime-fraud exception apply; and 4) produce all documents responsive to the RFP that are not alleged to be privileged. Plaintiff further seeks sanctions in the amount of $14,276.50 against CASTLE and his counsel of record, Ann Draper, which constitute the reasonable expenses incurred by Plaintiff relating to this discovery dispute.

      This Motion is made on the grounds that pursuant to Federal law, Plaintiff is entitled to the requested relief for the reasons set forth more fully in the Motion.

      This Motion is based on this Court's ruling at the compliance hearing on April 29, 2014 and subsequent Order (Dkt. 670), Federal Rules of Civil Procedure Rules 26(g) and 37, United States District Court Northern District of California Civil Local Rules 37, this Notice, the Memorandum of Points and Authorities, the accompanying Declaration of Kimberly A. Millington and all attached exhibits, and the file in this matter.

Dated: May 9, 2014                    **BERGQUIST WOOD McINTOSH SETO LLP**

                                           /s/ Kimberly A. Millington
                                           STEPHEN C. SETO
                                           KIMBERLY A. MILLINGTON
                                           Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

For over two years, Plaintiff CHICAGO TITLE INSURANCE COMPANY ("Plaintiff") has been trying to obtain all documents that Defendant JAMES C. CASTLE ("CASTLE") has in his possession, custody, and control that relate to this litigation. In his Initial Disclosures, which referred only to the sale of his own property, CASTLE produced no documents. In his Amended and Supplemental Initial Disclosures, CASTLE produced a mere 16 pages of documents.

On July 11, 2013, Plaintiff propounded a Request for Production of Documents ("RFP") on CASTLE. (A copy of the RFP is attached to the Declaration of Kimberly A. Millington ["Mill. Decl."] as **Exhibit "1"**. CASTLE served a Response, consisting of objections only, to the RFP ("Response") on August 21, 2013. (A copy of the Response is attached to the Mill. Decl. as **Exhibit "2"**.

On November 20, 2013, counsel for Plaintiff, Stephen C. Seto, requested that the parties meet and confer regarding CASTLE's Response. After several unsuccessful attempts to meet and confer with counsel for CASTLE, Ann Draper, Mr. Seto and Ms. Draper met and conferred at the Courthouse on December 2, 2013. (Declaration of Stephen C. Seto ["Seto Decl."], ¶ 4.)

On December 16, 2013, Mr. Seto sent Ms. Draper a proposed joint letter brief to the Court setting forth the discovery issue in compliance with this Court's Standing Order 8(d). Ms. Draper promised to provide comments on December 19, 23, 27, and 30, 2013 and also on January 2, 2014, but did not do so until the evening of January 6, 2014. The parties were unable to agree on the wording of the joint letter brief. (Seto Decl., ¶ 5.)

On December 17, 2013, Mr. Seto requested that Ms. Draper meet and confer on several sets of discovery but Ms. Draper was unable to meet in person or on the telephone at any time from mid-December to January 8, 2014. On January 8, 2014, she agreed to meet and confer but claimed that before meeting and conferring again on the substantive issues, the parties first had to meet and confer on whether or not Plaintiff had waited too long to try to compel further responses. (Seto Decl., ¶ 6.)

In the Joint Status Conference Statement for the January 13, 2014 status conference, Plaintiff provided an additional statement section explaining the problems with CASTLE's objections to the RFP and the attempted meet and confers which had taken place between both counsel and asked this Court to set deadlines for a joint letter brief, a deadline for a meet and confer by telephone, and order the parties to meet and confer at the courthouse on all substantive issues. (Dkt. 570, p. 6, line 22 through p. 7, l. 24.)

At the status conference on January 13, 2014, this Court ordered Ms. Draper to make a good faith effort to produce responsive documents and ordered her to do so by February 14, 2014 if her trial did not proceed and no later than March 14, 2014 if her trial did proceed. (Dkt. 574.) Ms. Draper did not comply with either order. (Seto Decl., ¶ 7.)

On February 12, 2014, counsel for CASTLE filed an administrative motion seeking a protective order in this case which the Court granted on February 13, 2014. (Dkt. 589 and 592.)

In its Joint Status Conference Statement for the March 24, 2014 status conference, Plaintiff informed the Court that it still had not received any documents. (Dkt. 637.) At the status conference on March 24, 2014, Ms. Draper stated that she had mailed the documents but Mr. Seto, indicated that as of that day, he still had not received them. The Court set a compliance hearing for March 31, 2014. After the status conference, Ms. Draper indicated to Mr. Seto and Ms. Millington outside the Courthouse that some of the documents were not CASTLE's documents but documents that she just had "lying around." (Mill. Decl., ¶ 6 and Seto Decl., ¶ 8.)

On March 26, 2014, counsel for Plaintiff received CASTLE's documents. On March 28, 2014, Plaintiff submitted a statement that it had received a CD containing 2164 pages of documents from CASTLE's Ms. Draper, along with the Protective Order. Plaintiff requested that the compliance hearing remain on calendar. (Dkt. 648.)

On March 31, 2014, Ms. Millington and Ms. Draper appeared before the Court at the compliance hearing. The Court questioned Ms. Draper about the documents and why she had not produced them in compliance with the Court Order from January (Dkt. 547). She asked Ms. Draper if her trial had gone forwarded and Ms. Draper responded that it had not. Ms. Millington raised issues regarding the very small number of documents that were being produced, the fact

1  that it was not clear what documents belonged to CASTLE and which documents were just "lying
2  around", the fact that absolutely no correspondence such as e-mails, and the fact that the
3  production was not verified. After a lengthy conference, the Court ordered Ms. Millington and
4  Ms. Draper to meet and confer at the Courthouse regarding the responses. (Mill. Decl., ¶ 7.)

5  Ms. Millington and Ms. Draper met and conferred alone for approximately an hour.
6  While it appeared that some progress was made (such as Ms. Draper stating that the document
7  production should be considered as initial disclosures and not actually responsive to the RFP as
8  well as some agreements regarding the meaning and breadth of the requests), when the two met
9  with the Court's research attorney about the results of the meet and confer, much changed. (Mill.
10 Decl., ¶ 8.)

11 Ms. Millington and Ms. Draper met with the Court's research attorney to go over what
12 happened during the meet and confer but many of the issues that seemed to have been resolved
13 were raised again. Finally, Ms. Draper agreed that she would provide an amended response on
14 behalf of CASTLE to the RFP. This Court then issued an Order (Dkt. 652): setting a compliance
15 hearing and ordering CASTLE to serve amended, verified responses by April 21, 2014 that "will
16 identify the documents responsive to Plaintiff Chicago Title Insurance Company's Request for
17 Production of Documents that have been produced by Castle to date"; ordering the parties to file a
18 Joint Statement; and setting another compliance hearing for April 28, 2014, which was later
19 moved to April 29, 2014. (Mill. Decl., ¶ 9.)

20 On April 21, 2014, CASTLE served a 50-page Amended Response of James C. Castle to
21 RFP ("Amended Response") by mail and e-mailed a PDF copy of it to all counsel at 11:13 p.m.
22 The Amended Responses appear to be verified by CASTLE, although the word "Agent" is written
23 next to his signature for some unknown reason. (A copy of the Amended Response is attached as
24 **Exhibit "3"** to the Mill. Decl.)

25 On April 22, 2014, Ms. Millington prepared a Joint Statement in compliance with this
26 Court's Order. (Dkt. 652.) The Joint Statement included Plaintiff's statement regarding
27 CASTLE's compliance and requesting that the compliance hearing remain on calendar. Ms.
28 Millington e-mailed it to Ms. Draper when it was completed at 5:24 p.m. on April 22, 2014, and

due to scheduling issues, asked Ms. Draper to provide any changes to the draft Joint Statement portion and any additional statement she had by 1:00 p.m. on the due date, April 23, 2014, to ensure it was filed timely. Ms. Draper responded by electronic mail at 10:19 a.m. on April 23, 2014 that she had a death in her family and asked that someone else from Plaintiff's counsel's office be available to meet and confer with her in the afternoon. Ms. Millington responded at 10:36 a.m. that as no one was available from Plaintiff's firm in the afternoon to meet and confer, Ms. Millington would file a statement on behalf of Plaintiff only. Ms. Draper did not respond back but then e-mailed Ms. Millington at 12:56 p.m. saying she was attaching her changes although no changes were attached. After an e-mail from Ms. Millington, Ms. Draper provided her changes at 1:07 p.m. and the Joint Statement was filed with this Court. (Dkt. 668.) (Mill. Decl., ¶ 11.)

As set forth in more detail in the Joint Statement (Dkt. 668), the Amended Responses actually <u>add</u> numerous objections and seek to limit the breadth of the Requests by providing a long list of types of responsive documents CASTLE refuses to produce. CASTLE also explicitly refused to provide a Privilege Log, claiming that this was not required by Federal Law and even with those categories where CASTLE said he would produce documents, this statement was made subject to the 35 or so objections and no documents were produced. (Dkt. 668.)

On April 29, 2014, the parties attended the compliance hearing. The Court questioned the parties for a great deal of time and went through the various issues that Plaintiff still had with the responses and the lack of documents that were produced. The Court questioned Ms. Draper extensively about the voluminous objections that were made in the responses. Ms. Draper confirmed that the sole objections that applied were attorney-client privilege, attorney work product doctrine, and her claim that the joint defense privilege also applied. She maintained that the objections were made to preserve the objections for the future. She also, <u>for the very first time,</u> claimed that CASTLE had no other responsive documents other than about 300 e-mails which she had not yet reviewed. At the end of the hearing, the Court ordered Plaintiff to file a Motion to Compel and set a briefing schedule. (Mill. Decl., ¶ 12.)

-6-
**MOTION TO COMPEL**

{00026479.1}

## II. ARGUMENT

### A. THIS COURT HAS THE AUTHORITY TO COMPEL CASTLE

Federal Rules of Civil Procedure ("F.R.C.P.") Rule 37(a)(3)(B)(iv) provides that a party may move for an order compelling an inspection of documents and F.R.C.P. Rule 37(a)(4) provides that an evasive or incomplete response must be treated as a failure to disclose, answer, or respond. As noted above, and as discussed in several conferences with the Court, CASTLE's responses are evasive as CASTLE has made objections that are not relevant, CASTLE appears to be improperly withholding documents based on privileges that likely do not pertain, CASTLE has failed to provide a Privilege Log, and CASTLE has failed to produce responsive documents.

#### 1. Plaintiff is Entitled to Amended Responses

Plaintiff is entitled to Amended Responses that contain a statement as to whether or not CASTLE has responsive documents and only the objections CASTLE is relying upon to withhold documents responsive to each particular request

As noted in the Joint Statement (Dkt. 668), in the Amended Response, CASTLE made 27 categories of objections in his General Objections and approximately 8 additional objections in each response. As a result, it is impossible to determine which objections are relied upon for withholding documents and whether or not the objections are valid. At the compliance hearing on April 29, 2014, Ms. Draper admitted to this Court that the sole objections she was relying upon were the attorney-client privilege, the attorney work product doctrine, and the joint defense privilege.

*Flanagan v. Benicia Unified School District* (E.D. Cal. 2008) 2008 WL 2073952 is similar to this case. The Court considered defendants' motion to dismiss complaint, or in the alternative, motion to compel and pointed out that "[t]he interrogatories and requests for production have been pending since last summer, approximately nine months, with responses in the form of general and boilerplate objections only, and no privilege log or declarations supporting burden objections." *Id.* at p. 5. The Court granted the motion to dismiss plaintiff's complaint for her abuse of the discovery process. The Court noted that:

> "Whether a responding party states a general objection to an entire discovery document ... or generally asserts a privilege objection within an individual discovery response, the

-7-

resulting 'blanket objection' is decidedly improper.' *Eureka Financial v. Hartford Acc. and Indem.,* 136 F.R.D. 179, 182 (E.D.Cal.1991). '[B]lanket assertions of the privilege[s] are 'extremely disfavored.' ... The privilege[s] must ordinarily be raised as to each record sought to allow the court to rule with specificity." *Clarke v. American Commerce Nat. Bank,* 974 F.2d 127, 129 (9th Cir.1992) (referring to the attorney client privilege) (citation omitted).[FN4] The party asserting the privilege has the burden to establish each element. *Id.* '[T]his burden can be met only by an evidentiary showing based on competent evidence, and cannot be 'discharged by mere conclusory or ipse dixit assertions.' *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y.1993) (quoting *von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 (2d Cir.1987)). *See also In re Grand Jury Investigation,* 974 F.2d 1068, 1070-71 (9th Cir.1992) (finding privilege log and affidavits met burden)." *Id.* at p. 4.

A successful objection should specifically state the objection and how it relates to the particular request being opposed, and not merely incant the familiar litany that a request is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.' Rather, the objection must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is irrelevant or overly broad, burdensome or oppressive. In short, in light of the broad construction given to discovery requests, the objecting party has a heavy burden to show why discovery should be denied, by clarifying and explaining its objections, and providing support therefor. Failure to meet this obligation may result in waiving the objections. *Id.*

Due to the requirements of Federal law and the concessions made by Ms. Draper to this Court, Plaintiff is entitled to amended responses which state if CASTLE has responsive documents or not and set forth only those objections to a particular request that CASTLE is relying upon to withhold documents.

### 2. CASTLE Must Prepare a Privilege Log of All Withheld Documents

CASTLE contends in his objection "Q" in the Amended Response that no privilege log is required by Federal law and that the mere preparation of a privilege log would violate the attorney-client privilege, the attorney work product doctrine, and the joint defense privilege. (See Amended Response, paragraph Q p. 4, line 19 through p. 5, line 4.)  CASTLE is wrong.

In *Narog v. City of Redwood City* (N.D. Cal. 2014) 2014 WL 1088297 at p. 3, the Court recently pointed out that:

"[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer,* 285 F.R.D. 481, 485 (N.D.Cal.2012). Federal Rule of Civil Procedure 26 also provides that a party withholding information under a claim that it is privileged or subject to protection as trial preparation material must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed. R. Civ. Proc. 26(b)(5)(A). A privilege should be asserted within thirty days of a request for production. *See* Fed.R.Civ.P. 34(b)(2)(A)."

There is simply no basis for CASTLE's contention that he does not have to provide a privilege log. No Federal Court case makes such a holding. Without a Privilege Log, it is impossible to determine if CASTLE is withholding documents and if his claims of privilege are valid. The Court in *Flanagan*, *supra.*, 2008 WL 2073952 at p. 7, pointed out the problem:

> "[Defendant] has not provided a privilege log in regard to the document requests, and has provided no further explanation to support the privileges claimed in response to the interrogatories, or any explanation beyond that given in the objections cited above. No substantive responses have been given. Even at this time the court and defendants are not aware of what documents have been withheld on account of the asserted privileges. The documents withheld could number one, ten, one hundred-who knows? [Plaintiff's] counsel has been compelled to make his plea that no privilege/immunity attaches without recourse to the basic, essential information which would enable him (and the court) to sensibly determine whether particular documents were indeed privileged."

It is proper, pursuant to F.R.C.P. Rule 26 and Federal law, that CASTLE be compelled to prepare a Privilege Log as to any withheld document.

### 3. All Documents Withheld on the Basis of Privilege Should Be Produced to This Court for an *In Camera* Review

Plaintiff believes that the attorney-client privilege, the attorney work product doctrine, and the joint defense privilege are unlikely to apply in this case to the vast majority of documents that Plaintiff has requested in the RFP. It is unlikely that Ms. Draper was representing CASTLE when the fraudulent real estate transactions that are at issue in this litigation took place, and if she was, then the crime-fraud exception applies. It is also unlikely that the parties were represented by attorneys at that time and thus the joint defense privilege does not apply or the crime-fraud exception would require disclosure of the documents.

In *United States v. Gonzalez* (9th Cir. 2012) 669 F.3d. 974, 978 the 9th Circuit explained the joint defense privilege as follows:

> "The Ninth Circuit has long recognized that the joint defense privilege is 'an extension of the attorney-client privilege.' *United States v. Henke,* 222 F.3d 633, 637 (9th Cir.2000) (explaining that a JDA had established an implied attorney-client relationship between the codefendants and their counsel); *see also United States v. Austin,* 416 F.3d 1016, 1021 (9th Cir.2005) (recognizing joint defense privilege as extension of attorney client privilege that 'protects not only the confidentiality of communications passing from a party to his or her attorney but also 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel'") (quoting *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989)). The privilege is also referred to as the 'common interest' privilege or doctrine, because it has not been limited to criminal defense situations or even situations in which litigation has commenced:

> Whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims. *In re Grand Jury Subpoenas,* 902 F.2d 244, 249 (4th Cir.1990)."

However, the joint defense privilege ONLY applies to "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice," the privilege is narrowly construed, and the party asserting the privilege, in this case CASTLE, bears the burden of proving that it applies. *Narog v. City of Redwood City* (N.D. Cal. 2014) 2014 WL 1088297 at p. 3; *United States v. Richey* (9th Cir. 2011) 632 F. 3d. 559, 566.

The Court in *Holmes v. Collection Bureau of America, Ltd.* (N.D. Cal. 2010) 2010 WL 143484 at p. 2 pointed out that:
> The 'joint-defense' or 'common-interest' privilege is an extension of the attorney-client privilege and work-product doctrine designed to facilitate communication among joint parties regarding matters that are important to protect their interests in litigation. The concept of a joint defense is not technically a privilege in and of itself but instead constitutes an exception to the rule on waiver where communications are disclosed to third parties. *See Continental Oil Co. v. United States,* 330 F.2d 347, 350 (9th Cir.1964) (recognizing a joint-defense privilege over communications made among potential codefendants and their counsel). The concept applies where parties are represented by separate counsel but engage in a common legal enterprise. . . . The joint-defense exception, however, protects *only* those communications that are part of an on-going and joint effort to set up a common defense strategy. "

The *Holmes* court pointed out that courts have not found the privilege to exist in cases that involve "either assertions of a common commercial (not legal) interest, communications between defendants and non-parties, communications between defendants' employees but not counsel, or situations where defendants did not share the same legal interests." *Id.* at p. 3. Thus, any arguments that this privilege exists solely because the defendants were engaged in a common commercial interest, or any of these other situations, would not protect the documents from disclosure. Moreover, in *Gonzalez, supra,* 669 F.3d. at 983, the 9th Circuit noted that the privilege can apply to a particular time but can end.

There is also a crime-fraud exception to all of the privileges asserted by CASTLE that may likely apply in this case. As this Court is aware, this case involves allegations that the defendants, including CASTLE, engaged in fraudulent schemes regarding real property, including preparing and recording fraudulent documents to deceive Plaintiffs into believing that

valid loans against the properties had been paid off. If any of the communications with Ms. Draper or prior counsel Mr. LaLanne were performed to perpetuate the fraud, the documents are not privileged.

In *In re Napster, Inc. Copyright Litigation* (9th Cir. 2006) 479 F.3d 1078, 1090, abrogated on other grounds in *Mohawk Ind. v. Carpenter* (2009) 558 U.S. 100, the 9th Circuit noted:

> "Notwithstanding its importance, the attorney-client privilege is not absolute. The 'crime-fraud exception' to the privilege protects against abuse of the attorney-client relationship. <u>Hodge & Zweig,</u> 548 F.2d at 1355. As the Supreme Court wrote in <u>Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933)</u>, 'The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.' <u>Id. at 15, 53 S.Ct. 465</u>."

The exception applies whether or not the attorney is aware of the client's improper purpose. *Id.* at 1090. Because the joint defense privilege is an extension of the attorney-client privilege, the crime-fraud exception also applies to it. (*See* Loustalet v. Refco (C.D. Cal. 1993) 154 F.R.D. 243, 245-248.) It does not matter if Ms. Draper and Mr. LaLanne thought that their clients were acting properly for this exception to apply.

In *Zolin v. Church of Scientology* (9th Cir. 1990) 905 F.2d 1344, 1345, the Court noted that "[t]o invoke the [crime-fraud] exception successfully the party seeking disclosure ... must make out a prima facie case that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity." The Court noted that it is proper for a party who believes that the crime-fraud exception exists to ask the Court to review the withheld documents *in camera*. *Id.* See also *United States v. Gonzalez* (9th Cir. 2012) 669 F.3d. 974, 983.

No documents responsive to the RFP that pre-date Ms. Draper or Mr. Lalanne's involvement in this case should be claimed to be privileged. As for any documents that CASTLE claims are privileged, due to the serious claims in this case as well as the serious abuses of the F.R.C.P. by CASTLE and Ms. Draper, Plaintiff requests that any withheld documents claimed privileged be produced *in camera* to this Court for review of the same.

**4.    Plaintiff is Entitled to All Documents Responsive to the RFP**

CASTLE had an obligation to produce all documents relating to this litigation in his Initial Disclosures. He failed to do so. CASTLE had an obligation to produce all documents

responsive to the RFP back in August of 2013. CASTLE and his counsel have engaged in every possible game playing tactic to avoid doing so.

Plaintiff has obtained e-mail correspondence between CASTLE and many of his co-conspirators that were sent to some of the defendants in this case. CASTLE should have copies of e-mails that he received and should certainly have copies of e-mails that he wrote. Copies of documents that Plaintiff received from Joan Hangarter show the type of documents that Plaintiff believes CASTLE has in his possession, custody, and control as to most, if not all, of the properties that are the subject of this litigation. (Copies of the documents are attached as **Exhibit "4"** to the Mill. Decl.) CASTLE should be ordered, once again, to produce all responsive documents in his possession, custody, and control, to Plaintiff and Ms. Draper should be ordered to produce the 300 e-mails she told the Court that she has in her possession immediately.

## B. THIS COURT SHOULD AWARD SANCTIONS AGAINT ANN DRAPER AND CASTLE IN THE AMOUNT OF $14,276.50 TO PLAINTIFF

It is proper for this Court to award Plaintiff attorney's fees against CASTLE and his attorney, Ms. Draper, relating to this discovery dispute. F.R.C.P. 26(g)(1)(B)(i-iii) provides that an attorney's signature on discovery responses certifies that the responses are consistent with the F.R.C.P., not interposed for any improper purpose, and not unreasonable or unduly burdensome and oppressive. F.R.C.P. 37(a)(5)(A) allows a Court to require a party or its attorney, or both, to pay the moving party's reasonable expenses incurred in making a motion to compel, including attorney's fees. It also allows the Court to impose sanctions when a party fails to comply with a Court order enforcing the F.R.C.P. *Flanagan v. Benicia Unified School District* (E.D. Cal. 2008) 2008 WL 2073952 at p. 2. The Court pointed out in *Flanagan* that "'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfullness, bad faith or fault." *Id.* at p. 9. See also *Clement v. Allegre* (2009) 177 Cal. App. 4th 1277 in which the California Court of Appeal upheld sanctions against an attorney for providing nitpicking and unmeritorious objections to discovery,

There has simply been no reason that CASTLE and Ms. Draper could not have provided responses in conformance with Federal law, prepare a Privilege Log, and comply with this

Court's prior rulings, and produce responsive documents. Plaintiff and this Court have spent a great deal of time simply trying to get CASTLE and Ms. Draper to do what they are required by law to do – give adequate discovery responses and produce documents relating to this litigation. Sanctions in the amount of $14,276.50 , the amount of attorney's fees incurred by Plaintiff in seeking responses to the RFP, should be awarded to Plaintiff against CASTLE and Ms. Draper. (Seto. Decl., ¶ 9 and Mill. Decl., ¶¶ 14 and 15.)

### III. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the Motion and order CASTLE and Ms. Draper to pay sanctions to Plaintiff.

Dated: May 9, 2014                    **BERGQUIST WOOD McINTOSH SETO LLP**

/s/ Kimberly A. Millington
STEPHEN C. SETO
KIMBERLY A. MILLINGTON
Attorneys for Plaintiffs