1  Ann McFarland Draper (State Bar No. 65669)
     ann@draperlaw.net
2  Draper Law Offices
   75 Broadway, Suite 202
3  San Francisco, California 94111
   Tel:   (415) 989-5620
4
   Attorneys for Defendant, Counter-claimant
5  and Cross-Defendant James C. Castle
   (aka J. Christopher Castle)
6

7                    **UNITED STATES DISTRICT COURT**

8                    **NORTHERN DISTRICT OF CALIFORNIA**

9                              **OAKLAND DIVISION**

| | |
|---|---|
| 10  FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al, | Case No. 4:11-cv-00896 –YGR |
| 11                           Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY SANCTIONS** |
| 12      vs. | |
| 13  JAMES C. CASTLE aka J. CHRISTOPER CASTLE, et al, | |
| 14 | |
| 15                           Defendants. | **Hearing** |
| 16  JAMES C. CASTLE aka J. CHRISTOPHER CASTLE, individually and as Trustee of the J. CHRISTOPHER CASTLE IRREVOCABLE TRUST, | DATE:       June 17, 2014<br>Time:         2:00 p.m.<br>Courtroom: 1<br>Judge:        Hon. Yvonne Gonzalez Rogers |
| 17 | |
| 18 | |
| 19                    Counterclaimant,<br>     vs. | Trial Date:    Not Set |
| 20  REMUS A. KIRKPATRICK aka AL KIRKPATRICK, et al, | |
| 21 | |
| 22                           Counterdefendants. | |
| 23  And Other Related Cross-Actions and Counter-Claims. | |
| 24 | |

25

26

27

28

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

# Table of Contents

Table of Contents ...................................................................................................................i

INTRODUCTION ................................................................................................................ 1

LEGAL ARGUMENT .......................................................................................................... 1

I.    CASTLE WILL PROVIDE FURTHER AMENDED RESPONSES ................................ 1

    A.    CIT IS NOT ENTITLED TO AN ORDER REQUIRING VERIFIED RESPONSES TO ITS REQEUSTS FOR PRODUCTION OF DOCUMENTS .... 1

    B.    CONTENT OF CASTLE'S FURTHER AMENDED RESPONSES ..................... 2

II.   THE JOINT DEFENSE DOCTRINE PROTECTS COMMUNICATIONS AMONG CO-DEFENDANTS AND/OR THEIR COUNSELS RELATING TO ATTORNEY ADVICE, STRATEGY, AND DEFENSE OF THE CASE ............................................................. 7

III.  CASTLE IS NOT REQUIRED TO PREPARE A PRIVILEGE LOG SEPARATELY IDENTIFYING EACH INDIVIDUAL ATTORNEY-CLIENT COMMUNICATION AND EACH WORK PRODUCT DOCUMENT ................................................................. 9

IV.  CASTLE AND HIS ATTORNEY SHOULD NOT BE SUBJECTED TO AN *IN CAMERA* REVIEW OF PRIVILEGED DOCUMENTS ..................................................... 10

V.   THE REQUESTED MONETARY SANCTIONS SHOULD BE DENIED .................... 12

CONCLUSION ...................................................................................................................... 13

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO
CHICAGO TITLE'S MOTION TO COMPEL FURTHER RESPONSES
AND FOR MONETARY SANCTIONS**

**INTRODUCTION**

By this motion, Plaintiff Chicago Title Insurance Company ("CTI") seeks burdensome and intrusive discovery orders and monetary sanctions that will do nothing to further legitimate discovery in this case and will further oppress Castle's counsel, who is not being paid and has not been allowed to withdraw.

Castle is willing to provide reasonable further responses, as detailed below, but opposes the excessive scope of relief requested and opposes the requested monetary sanctions.

Counsel for Castle opposes the request for imposition of monetary sanctions against her and opposes any request that she be ordered to turn over any privileged documents for *in camera* review.

**LEGAL ARGUMENT**

**I.   CASTLE WILL PROVIDE FURTHER AMENDED RESPONSES**

Castle is willing to provide further written responses, as stated in the most recent compliance hearing regarding the discovery matters.   The parameters and content of those responses is yet to be determined.   However, the amended responses need not be verified.

*A.  CIT IS NOT ENTITLED TO AN ORDER REQUIRING <u>VERIFIED</u> RESPONSES TO ITS REQEUSTS FOR PRODUCTION OF DOCUMENTS*

CIT complained to this Court that Castle had not provided a verification of his written responses,[1] and CIT wrongfully demanded that this Court order Castle to provide verified <u>amended</u> responses.[2]   Although counsel for Castle stipulated that Castle would do so, she did so

---

[1]   See Moving MPA, 4:27-5:3 ["On March 31, 2014 … Ms. Millington raised issues regarding … the fact that the production was not verified."].

[2]   See Moving MPA, 5:13-15 ["Finally, Ms. Draper agreed … This Court then issued an Order (Dkt 652) … ordering CASTLE to serve amended, verified responses …"].

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)                                                                    1
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1  as a matter of courtesy, and in the spirit of cooperation, and not because CTI was entitled to have
2  the responses verified.
3      *Au contraire,* **in federal practice, the response to a request for production need not**
4  **be signed "under oath" by the party to whom the request is directed**.  See Fed.R.Civ.Proc.
5  Rule 26(g)(1).  This contrasts with California practice, where responses to inspection demands
6  must be verified by the party.   Accordingly, although Castle did provide a verification for his
7  amended responses to the requests for production, CTI was not entitled to demand that Castle do
8  so, and is not entitled to register that complaint again here.
9
10     *B.  CONTENT OF CASTLE'S FURTHER AMENDED RESPONSES*
11     CTI has many complaints about the content of Castle's current amended responses, and
12  requests that Castle further amend his responses.  Castle has already stated his willingness to
13  further amend his responses, but the parties disagree on the scope of amendment required.
14             **(1)  The Parties' Agreement Regarding ESI**
15     In December 2014, the parties finally conferred regarding ESI and made an agreement
16  regarding discovery of ESI, specifically that the parties would search their respective emails for
17  the names of parties to this action.  Castle has complied with this agreement (although Castle has
18  not received any disclosure of ESI from CTI or other plaintiffs).
19             **(2)  The Scope of Castle's Search For Responsive Documents**
20     Castle is required to make a **<u>reasonable</u> <u>search</u>** of the documents within his custody,
21  possession or control and produce unprivileged responsive documents.  At this point, Castle does
22  not have hard-copy documents.  The documents in Castle's possession are ESI, and Castle
23  believes he has made a reasonable search.
24      Castle's amended responses describe the scope of his search for documents in response to
25  CTI's Requests.  Castle's search of his ESI is text-based.  He does not believe that he has any
26  non-text-searchable documents responsive to CTI's Requests, but he also does not have a way to
27  search his hard drive for imaged documents that are not text-searchable.  Castle is an individual,
28

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)                                                    2
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1   not a mammoth corporation with great financial resources.  Castle's specific responses, as well
2   as his general prefatory comments reflect this and object to the extent that CTI's Requests seek
3   to impose an unreasonable, burdensome or economically oppressive method to search the
4   content of images that are not labeled or stored in folders that Castle can associate with key
5   words in CTI's requests.

6   Castle has searched his ESI for the search terms agreed to in the parties' ESI agreements.
7   Castle has search his ESI for communications and property addresses by searching for the first
8   and last names of the person identified, the property addresses associated with the person
9   identified, and the first and last names known to Castle to be associated with a person or address
10  inquired about.  The search included not only Castle's emails but also folders of documents.
11  Castle believes that he has provided all unprivileged documents in his possession, custody or
12  control that could possibly be responsive to the requests.

13  Castle believes that his Amended Responses have identified what he searched for, what
14  he has, and what he has produced.  However, to the extent that CTI or the Court believes that the
15  explanation is not sufficiently clear, Castle is willing to further amend his responses.  CTI's
16  motion, however, does not identify specifics that would aid Castle in doing so.

17  **(3) Castle's Specific Responses**

18  Property Address Requests.

19  These requests are drafted in such a broad way that they necessarily call for documents
20  protected by attorney-client privilege and as work product, including the joint defense extensions
21  of those protections.  Castle asserted those objections and will not produce such protected
22  documents.  The over-broad nature of these requests also calls for documents protected by
23  various statutory and constitutional privileges and/or privacy rights.  Castle asserted those
24  objections to preserve them, and will not produce such protected documents if found, but his
25  search did not find any such documents.  Castle also objected that these requests are potentially
26  uncertain with respect to use of the property address and interprets the requests as calling for
27  documents that refer or related to the accused transactions concerning the subject property.

28
*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)            3
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1  Although counsel for CTI has complained that this is a "limitation" of its request, it has not

2  offered a different interpretation to be used.  Castle believes that his interpretation has not

3  resulted in the "withholding" of any documents or reduced the number of documents identified

4  by his search.

5      Castle has searched the records in his possession and custody, as well as the records

6  subject to his control (including those in the possession of his attorneys).  Castle has objected to,

7  and has not searched, the following:  recorded documents (which are equally or more available to

8  CTI); pleadings filed in court cases (also equally available to CTI); and documents produced in

9  discovery (which counsel for Plaintiffs already have).  Castle also does not agree to re-produce

10 documents already disclosed by him in response to other requests or in voluntary disclosure.

11     <u>Entity Requests</u>.

12     These requests are also drafted in such a broad way that they necessarily call for

13 documents protected by attorney-client privilege and as work product, including the joint defense

14 extensions of those protections.  Castle asserted those objections and will not produce such

15 protected documents.  The over-broad nature of these requests also calls for documents protected

16 by various statutory and constitutional privileges and/or privacy rights, including first

17 amendment rights of free speech, political speed and the right of association.  Castle asserted

18 those objections to preserve them, and will not produce such protected documents if found.

19 Castle agreed to produce responsive documents relating to ownership and control of the

20 respective entities and responsive documents relating to the accused transactions relating to

21 properties at issue in this transaction.  Castle has also produced contracts and agreements in his

22 possession, custody or control involving such entities.

23     Castle objected to having to search for, identify or produce other documents potentially

24 covered by the broad phrase "refers or relates to" merely because then refer to an entity as being

25 unduly burdensome and outside the scope of discovery.  Castle has objected to, and has not

26 searched, the following:  recorded documents (which are equally or more available to CTI);

27 pleadings filed in this or other court cases and the exhibits thereto (also equally available to

28

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)    4
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1  CTI); news reports and articles published in any newspaper or magazine of general circulation
2  (including online publications and websites); decisions of any court of this country; and
3  documents produced in discovery (which counsel for Plaintiffs already have).  Castle also does
4  not agree to re-produce documents already disclosed by him in response to other requests or in
5  voluntary disclosure.

6  Castle was a member of Oreplex International and of CCTT Group, and has responsive
7  documents.  However, Castle was not a member of, or involved in, GJZ Group or AFOG Group,
8  and accordingly has very few documents that mention these entities.  Finally, as Castle stated in
9  his amended responses, the entity Recontrust Company is a captive trustee of Bank of America
10 and as such was involved in tens of thousands of secured lending transactions that have been the
11 subject of recorded documents, litigation and news reports.  Castle did conduct a diligent
12 electronic search for documents in his possession or custody that refer or relate to Recontrust
13 Company and will produce any found, but objects to the request insofar as it calls for documents
14 unrelated to the accused transactions.[3]

15 Defendant Communications Requests.

16 These requests are also drafted in such a broad way that they necessarily call for
17 documents protected by attorney-client privilege and as work product, including the joint defense
18 extensions of those protections.  Castle asserted those objections and will not produce such
19 protected documents.  The over-broad nature of these requests also calls for documents protected
20 by various statutory and constitutional privileges and/or privacy rights, including first
21 amendment rights of free speech, political speed and the right of association.  Castle asserted
22 those objections to preserve them, and will not produce such protected documents if found.

23 Castle agreed to produce responsive documents relating to the underlying business
24 transactions, but not materials relating to defense of the litigation, as to which Castle has asserted
25 privileges.  The documents responsive to this request fall into several groups:  (1) transaction-

---

[3] For example, counsel for Castle has documents in ***her*** files (concerning matters of other clients), that refer or relate to Recontrust Company but are not subject to ***Castle's*** control.

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)                      5
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1  related communications and documents, including deeds, letters, powers of attorney,

2  securitization audits, and the like, which Castle agrees to produce; and (2) emails, as to which

3  unprivileged emails relating to the properties or transactions at issue in this case[4] will be

4  produced and emails that are privileged or do not relate to the properties or transactions at issue

5  in this case will not be produced.

### (4) Castle's Preliminary Statements and General Objections

7  CTI complains that Castle has asserted a large number of general objections. Castle

8  responds that this necessarily results from CTI's failure to propound narrowly drawn document

9  requests.

10  All the requests here call for every scrap of papers that REFERs or RELATES to a

11  specified address, entity or defendant. Thus, every pleading filed, every email from attorney to

12  client, every analytical chart and memo, that in any way mentions one of these addresses, entities

13  or defendants is vulnerable to disclosure … including documents that are irrefutably protected as

14  attorney-client communications and/or attorney work-product. As a result of the way the

15  requests are drafted, it is necessary for Castle to assert these objections, regardless of what

16  documents he has in his possession, custody or control.

17  Similarly, the excessive breadth of the requests give rise to assertion of other objections

18  and statements of limitations on CTI's attempt to unduly burden Castle in responding to its

19  discovery.

20  The inclusion of such objections is necessary to preserved the privileges and protections.

### (5) Castle Is Not Required To Particularize Privileges in Specific Responses

22  CTI complains it cannot tell which privileges are relied upon to withhold documents

23  otherwise responsive to a particular request. This position makes no sense as a practical matter,

24  because there is likely to be at least one attorney-client communication and at least one work-

25  product document withheld for every single request.

---

[4]   During the course of "meet and confer," Mr. Seto agreed to limit the "communications" requests to those relating to the properties and transactions at issue in this case.

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)   6
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1    Nonetheless, Castle submits that CTI is not entitled to that information.  In some cases,
2  providing that information would reveal the protected information (e.g., by indicating the topic
3  of a privileged communication).  Even in cases requiring a privilege log, there is no requirement
4  that the log identify what request the document would otherwise be responsive to.  **CITE
5

6  **II.   THE JOINT DEFENSE DOCTRINE PROTECTS COMMUNICATIONS AMONG CO-DEFENDANTS AND/OR THEIR COUNSELS RELATING TO ATTORNEY ADVICE, STRATEGY, AND DEFENSE OF THE CASE**
7

8    The joint defense privilege or common interest doctrine has been long recognized in the
9  Ninth Circuit as an extension of the attorney-client privilege. See *Hunydee v. U.S.*, 355 F.2d 183
10 (9th Cir. 1965); *Continental Oil Co. v. U.S.*, 330 F.2d 347 (9th Cir. 1964); *United States v.*
11 *Gonzalez*, 669 F.3d 974, 978 (9th Cir. Cal. 2012).  It is not actually a privilege per se, but rather
12 an exception to the rule on waiver where otherwise privileged communications are disclosed to
13 third parties." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).
14   The joint defense privilege permits a party or counsel to share otherwise privileged
15 information with other parties facing a common litigation opponent pursuant to an agreement or
16 understanding that the shared information remains privileged.  A written agreement is not
17 required; it may be implied from conduct and situation, such as attorneys exchanging
18 confidential communications from clients who are or potentially may be co-defendants or have
19 common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. Cal.
20 2012).
21   The joint defense privilege has been extended to civil co-defendants because "[t]he need
22 to protect the free flow of information from client to attorney logically exists whenever multiple
23 clients share a common interest about a legal matter." *United States v. Schwimmer*, 892 F.2d 237,
24 243-44, (2d Cir. 1989).  It applies to civil defendants sued in separate actions, *Transmirra*
25 *Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y. 1960).  It is not limited to
26 cases of actual codefendants, and may apply to "potential" litigation as well.  *United States v.*
27 *Gonzalez, supra*, 669 F.3d at 980.
28

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)   7
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1   The rule applies not only to communications subject to the attorney-client privilege, but
2   also to communications protected by the work product doctrine." *In re: Grand Jury Subpoenas*,
3   902 F.2d 244, 249 (4th Cir. 1990) (citing *Transmirra Products Corp. v. Monsanto Chemical Co.*,
4   26 F.R.D. at 572, 578 (S.D.N.Y. 1960); *Am. Tel. and Tel. Co.*, 642 F.2d at 1298-99; *Resilient*
5   *Floor Covering Pension Fund v. Michael's Floor Covering, Inc*., 2012 U.S. Dist. LEXIS 104398,
6   18-19 (N.D. Cal. July 26, 2012).

7   Once the joint defense is established, all parties are holders of the privilege. One party to
8   a joint defense agreement cannot unilaterally waive the privilege for the other holders. *United*
9   *States v. Gonzalez*, *supra*, 669 F.3d at 979-981.

10  In this case, Castle was formerly represented by attorney LaLanne as well as his present
11  counsel Draper. LaLanne also represented other defendants in this case. The joint defense
12  privilege protects all communications and work product materials shared between Draper and
13  LaLanne, as well as communications and work product materials between LaLanne and his many
14  clients, even if more than one client was named or copied on an email. The joint defense
15  privilege also protects communications between the co-defendants made for the purpose of
16  facilitating attorney client communications (e.g., regarding defense strategy, or what the attorney
17  said, or what to say to the attorney).

18  Castle does **not** suggest that the underlying transaction documents, or pre-litigation
19  communications between co-defendants relating to those transactions, are protected from
20  discovery by the joint defense privilege. Those documents have been produced. The joint
21  defense privilege applies only to common-interest communications and materials relating to
22  defense of litigation, not the underlying real estate transactions that gave rise to the litigation.

23  All of the attorney client and work product materials for which privilege is claimed were
24  considered to be confidential when made and protected against disclosure to Plaintiffs; and none
25  of them are required to be produced in discovery in this case.

26
27
28
*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)   8
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1  **III.  CASTLE IS NOT REQUIRED TO PREPARE A PRIVILEGE LOG SEPARATELY IDENTIFYING EACH INDIVIDUAL ATTORNEY-CLIENT COMMUNICATION AND EACH WORK PRODUCT DOCUMENT**

2

3   CTI demands that Castle prepare a privilege log identifying every individual document

4  withheld.  Castle submits that CTI overstates Castle's burden and seeks to impose an

5  unreasonable and intrusive burden on Castle and his (unpaid) counsel.

6   Fed.R.Civ.Pro Rule 26(B)(5)(A) does not expressly require a privilege log.  Under the

7  Rule, it is sufficient to describe the nature of the documents, communications and tangible things

8  in a manner that enables the parties to assess the claim of privilege *__without__* disclosing the

9  privileged document or content.

10   The request to prepare a privilege log individually listing all attorney-client

11  communications and all attorney work product is particularly egregious.  Those documents are

12  inherently protected and no legitimate purpose is served by requiring Castle to itemize each

13  email to and from his attorneys.[5]  Not only is it unreasonably burdensome to require each

14  document in counsel's office be separately itemized, but the preparation of such a log

15  unnecessarily intrudes into the attorney-client relationship and could itself reveal the content of

16  confidential communications (e.g., through correlating log details with events that occurred to

17  infer the topic of the communication).

18   To the extent the Court should order preparation of a privilege log, Castle requests that it

19  be the minimum necessary to support a claim of attorney-client privilege or attorney work

20  product, and that Castle be permitted to identify documents in groups rather than individually:

21  for example, emails from Draper to Castle, copied to LaLanne; email from Draper to Castle,

22  copied to Draper staff; emails from LaLanne to Castle and Trites, copied to Draper, and so on.

23  all research notes and memos prepared by Castle's counsel and her staff; all charts and other

24

---

25  [5]   Indeed, counsel for CTI might take a different view of the issue were Castle to (A) propound a set of document requests to FNTIC asking for every communication in its possession, custody *or control* that refers or relates to a communication with each named plaintiff  and (B) insist that FNTIC prepare a privilege log itemizing every communication it withheld on a claim of privilege.

26

27

28

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)        9
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

1  analytical materials prepare by Castle's counsel and her staff.  These materials are

2  unconditionally protected and do not need to be itemized with date, title, subject, etc. in order to

3  be protected; indeed, it would be unreasonably intrusive to impose such a requirement.  See, e.g.,

4  *Kashin v. Hershey Co.*, 2014 U.S. Dist LEXIS 23886 (N.D. Ca. Feb. 21, 2014) establishing

5  limits on what can be required in a discovery log.

6  As the Supreme Court has stated, "[a]n uncertain privilege, or one which purports to be

7  certain but results in widely varying applications by the courts, is little better than no privilege at

8  all." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999) (quoting *Upjohn Co. v. United*

9  *States*, 449 U.S. 383, 393 (1981)).

10
    **IV.   CASTLE AND HIS ATTORNEY SHOULD NOT BE SUBJECTED TO AN *IN*
11         *CAMERA* REVIEW OF PRIVILEGED DOCUMENTS**

12  CTI also demands in its motion that the Court conduct an in camera review of **all**

13  documents claimed to be privileged.  Castle submits that this is another unreasonably intrusive

14  demand and further that CTI has not established a foundation supporting *in camera* review.

15  Although a District Court is authorized to conduct *in camera* inspection of documents in

16  order to determine whether defendants' claims of privilege are valid, *in camera* review of

17  materials claimed to be privileged is not generally favored [*Nishka, Ltd. v Fuji Photo Film Co.*

18  (1998, DC Nev) 181 FRD 465], and *in camera* procedures should be a rare procedure in

19  discovery disputes [*Krenning v Hunter Health Clinic* (1996, DC Kan) 166 FRD 33].

20  The seminal case on *in camera* review is *United States v. Zolin*, 491 U.S. 554 (U.S.

21  1989).  Before a district court may engage in *in camera* review at the request of the party

22  opposing the privilege, that party must present evidence sufficient to support a reasonable belief

23  that *in camera* review may yield evidence that establishes that the documents are is not

24  privileged. *United States v. Zolin,* supra, 491 U.S. at 574-575.  The party opposing the privilege

25  may use any **non-privileged** evidence in support of its request for *in camera* review.  *United*

26  *States v. Zolin,* supra, 491 U.S. at 574l; see FRCP 104(a).  However, the material for which the

27  privilege is claimed cannot be used to determine whether *in camera* review is appropriate.

28

1  Here, CTI has submitted no evidence to support a reasonable belief that *in camera* review
2  may yield evidence that establishes that the documents withheld are in fact not privileged.
3  Instead, CTI suggests exactly what *Zolin* prohibits – that the Court review the documents and
4  decide for herself whether they are privileged.  CTI's request extends even to correspondence
5  between litigation co-counsel, legal research memoranda and internal law firm documents
6  dealing only with mental impressions or strategies of attorneys – materials which are never
7  subject to production and should normally be excluded from *in camera* review.  See *In re*
8  *Federal Skywalk Cases* (1982, WD Mo) 95 FRD 477.

9  CTI's basis for demanding *in camera* review of all documents is nothing more than
10 speculation – and certainly not a factual basis sufficient to meet the *Zolin* standard.  CTI's theory
11 is nothing more than that "Plaintiff **_believes_** that the attorney-client privilege, the attorney work
12 product doctrine, and the joint defense privilege are **_unlikely_** to apply … to the **_vast majority_** of
13 documents" requested by CTI.   See Moving MPA, 9:14-15 (emphasis added).  If counsel for
14 CTI had bothered to look at the documents that have already been produced, they would have
15 seen that Castle produced over 2,000 pages of responsive documents.

16 Similarly, CTI's suggestion – that the crime-fraud exception "may likely apply" in this
17 case to strip Castle's communications with Draper (or LaLanne)  -- is completely without
18 foundation or evidentiary support.  This is nothing more than throwing mud at the wall to see if it
19 sticks.  CTI offers no evidence of any kind whatsoever to support its naked speculation that
20 Draper or LaLanne[6] rendered business advice services to Castle or any other defendant in
21 connection with the underlying transactions or in any way provided services "to perpetuate the
22 fraud."  Until and unless they have some evidence to support this accusation, they cannot
23 bootstrap *in camera* review on speculation that it is possible.

---

[6]  CTI states that all documents that pre-date Mr. LaLanne's involvement in this case cannot be privileged. Mr. LaLanne represented Castle in other litigation matters that pre-dated this case. Mr. LaLanne's attorney-client communications and work product from those other litigation matters are not subject to disclosure here on the mere basis of time overlap.

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)  11
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

In light of CTI's failure to even proffer evidence of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to refute the privilege claim, *in camera* review is improper. See *In re Grand Jury Investigation*, 974 F.2d 1068, 1074-1075 (9th Cir. Cal. 1992).

## V. THE REQUESTED MONETARY SANCTIONS SHOULD BE DENIED

Finally, CTI requests over $14,000 in attorneys' fees. This request lacks the requisite evidentiary basis and requests fees to which the plaintiffs are not entitled.

There is no evidence that defendant or his attorney made the objections to discovery in bad faith or for the purpose of delay. Furthermore, if plaintiffs are entitled to any attorneys' fees whatever, they must be assessed only for preparing this motion to compel the discovery, not for drafting the discovery request, meeting and conferring and other matters relating to requesting discovery. Fed. R. Civ. Proc. 37(a)(5)(A) allows the court to order the responding party to pay the movant's reasonable expenses (including attorneys' fees) "incurred in making the motion."

Attorney Seto claims fees for "17.5 hours preparing the RFP to CASTLE, reviewing the Response to the RFP, attempting to meet and confer and meeting and conferring with Ms. Draper, and reviewing documents prepared by Ms. Millington related to this discovery dispute." But none of these are clearly expenses incurred in making this motion. The first three categories clearly are not: preparing the request for production, reviewing the responses to it and meeting and conferring regarding the responses were not incurred in making the motion to compel. While some of the time "reviewing documents prepared by Ms. Millington related to this discovery dispute" might have concerned this motion, the evidence is too vague to permit the court to conclude that it did or how many hours his review took.

Attorney Millington's declaration is similarly deficient. She declares that she "spent 31.3 hours preparing Plaintiff's Statement (Dkt. 648), preparing for and attending the compliance hearing on March 31, 2014, reviewing the Amended Response and caselaw cited in it, preparing the Joint Statement (Dkt. 668), reviewing the documents produced by CASTLE, preparing for and attending the compliance hearing on April 29, 2014, and preparing this Motion and

1 supporting documents."  The only matter for which plaintiffs can recover attorneys' fees for Ms.

2 Millington's work is for "preparing this Motion and supporting documents."  Since she does not

3 identify how many hours that took, there is no evidence upon which to determine whether her

4 work is reasonable.

5  Plaintiffs are not entitled to any attorneys' fees and have not met their burden of

6 establishing that they are.  Therefore, the Court must deny the motion for sanctions.

## CONCLUSION

9 Castle has already agreed to provide further amended responses.  His counsel is not being

10 paid and is drowning in discovery minutia.

11 What the parties are arguing about – and what this court was interested in seeing briefed

12 – were the parameters of the joint defense privilege.  In its motion, CTI added a demand –on

13 which there has been no "meet and confer" and without the required factual showing – that **all**

14 privileged documents be submitted to the Court for *in camera* review, coupled with a suggestion

15 that the crime-fraud exception may apply to make all of litigation counsel's communications and

16 work product discoverable in this case.

17 Castle submits that neither *in camera* review is not warranted and that the court should

18 not order the kind of detailed privilege log but should impose reasonable limitations on any

19 further detail to be provided by Castle in support of his privileges.

20 Castle also submits that the monetary sanctions requested are excessive, unwarranted and

21 should be denied.

DATED:  May 23, 2014               RESPECTFULLY SUBMITTED,

**DRAPER LAW OFFICES**

By:       */s/ Ann M. Draper*
          ANN McFARLAND DRAPER

          Attorneys for Counter-Claimant James C. Castle
          (aka J. Christopher Castle)

*Fidelity National Title Ins. Co, et al, v. Castle, et al* (No. 4:11-cv-00896 YGR)   13
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CHICAGO
TITLE'S MOTION TO COMPEL FURTHER RESPONSES AND FOR MONETARY
SANCTIONS

**CERTIFICATE OF SERVICE**

The undersigned attorney herby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's NEF system concurrently upon the filing of this document.  All others not deemed to have consented to electronic service are being served with a true and correct copy of the foregoing via email or facsimile transmission, or by first class mail.

                 */s/ Ann McFarland Draper*_____

                 Ann McFarland Draper