1  Stephen C. Seto (SBN 175458)
   (sseto@wcjuris.com)
2  Kimberly A. Millington (SBN 169200)
    (kmillington@wcjuris.com)
3  **BERGQUIST WOOD McINTOSH SETO** LLP
   1470 Maria Lane, Suite 300
4  Walnut Creek, CA  94596
   Telephone:   (925) 938-6100
5  Facsimile:   (925) 938-4354

6  Attorneys for Plaintiffs
   FIDELITY NATIONAL TITLE INSURANCE
7  COMPANY, et al.

8

                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

                            OAKLAND DIVISION

| FIDELITY NATIONAL TITLE INSURANCE COMPANY, et al., | No. C-11-00896 YGR |
|---|---|
| Plaintiffs, | **PLAINTIFF CHICAGO TITLE INSURANCE COMPANY'S REPLY TO DEFENDANT JAMES CASTLE'S OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR MONETARY SANCTIONS AGAINST CASTLE AND HIS COUNSEL, ANN DRAPER, IN THE AMOUNT OF $14,276.50** |
| vs. | |
| JAMES C. CASTLE aka J. CHRISTOPHER CASTLE et al.,  and Does 1 through 100, inclusive, | |
| Defendants. | |
| | Date:       June 17, 2014<br>Time:       2:00 p.m.<br>Courtroom:  1<br>Judge:      Hon. Yvonne Gonzalez Rogers |
| | No Trial Date Set |
| And Related Cross-Actions | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff CHICAGO TITLE INSURANCE COMPANY ("Plaintiff") submits the following Reply to Defendant JAMES C. CASTLE's ("Castle") Opposition ("Opposition") to Motion to Compel Castle and Request for Sanctions in the amount of $14,276.50 against Castle

-1-

{00026899.1}

**REPLY TO OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR MONETARY SANCTIONS**

and his counsel of record, Ann Draper ("Motion"):

## I. CASTLE CONTINUES TO REFUSE TO PROVIDE PLAINTIFF WITH DISCOVERY RESPONSES AND DOCUMENTS THAT IT IS ENTITLED TO

Nothing in the Opposition or the attached declaration provide any reason for this Court to deny the Motion. In fact, both documents provide ample support for granting the Motion. In the Opposition, and her attached declaration, counsel for Castle, Ann Draper, continues to tell the Court what she and her client will and will not do – regardless of what Federal law or this Court has to say about it. The re-hashing in the Opposition of arguments this Court has already rejected relating to this discovery dispute is incomprehensible.

Ms. Draper is continuing to claim privileges in this case but refusing to provide a Privilege Log, or any of the information required by Federal Rules of Civil Procedure ("F.R.C.P.") Rules 26 and 34 and the case law interpreting those rules. Castle and Ms. Draper continue to claim that they do not have to comply with Federal law. Castle and Ms. Draper are wrong.

Oddly, Ms. Draper is also refusing to let the Court see the documents that she is claiming are privileged. If she and her client have nothing to hide, then one wonders why she would fight so hard to prevent this Court from reviewing the documents that Castle and Ms. Draper claim are privileged. This case is replete with omissions and misrepresentations by Castle as well as both of his counsel. Ms. Draper's refusal to allow this Court to see the documents that she claims are privileged is beyond suspect given what has happened in the many hearings regarding this discovery dispute that have already taken place before this Court.

While Ms. Draper now agrees to provide yet another amended response, despite the fact that the Court has ordered her to provide verified responses, she is refusing to do so. Moreover, to date, Ms. Draper still has not produced the 300 or so e-mails that she claims she has that are responsive to the discovery and that she promised to provide to Plaintiff at the last hearing. In fact, throughout this discovery dispute, Castle and Ms. Draper have repeatedly and blatantly ignored a large number of this Court's orders and repeatedly have failed to simply produce the documents that Plaintiff has been entitled to since the inception of this litigation or even do what Ms. Draper promises this Court she will do.

Ms. Draper's argument that the sole issue that this Court wanted briefed for the Motion was the Joint Defense Privilege is simply wrong.  Also, her arguments about the Joint Defense Privilege are equally unavailing and again, very suspect given her strong reaction to the request that these documents be provided to the Court so that the Court can see if the privilege is valid or not.

There is ample reason to believe that the very claim of this privilege is suspect.  Mr. LaLanne initially represented in this litigation both the fraudsters and those individual homeowners that the fraudsters defrauded – a <u>direct</u> conflict of interest from the very inception of his representation.  Now, it seems that this was done on purpose so that Castle and Ms. Draper could use this representation to claim that <u>all</u> communications are privileged.  It seems much more likely, given Ms. Draper's refusal to provide the Court with these documents to review, that this is yet another continuation of the fraud that forms the basis of this litigation.   This case is replete with evidence as to why this Court should order the production of the documents *in camera* so that this Court can rule on all alleged privileges, including the claimed Joint Defense Privilege.

Finally, Ms. Draper gives no valid reason as to why monetary sanctions should not be imposed against her and her attempts to repudiate the evidence supporting those sanctions lacks both legal and evidentiary support.

Castle and Ms. Draper have gone out of their way to abuse the discovery process in this case and have blatantly refused to provide Plaintiff with the documents and information it is entitled to.  The multiple hours that Castle and Ms. Draper have spent providing unreasonable and improper objections to the discovery could have instead been used to simply comply with Federal law.  Castle and Ms. Draper have deliberately, and repeatedly, thumbed their noses at this Court's orders and rulings and continue to do so in the Opposition.  As a result, the Motion, in its entirety, deserves to be granted.

## II.     <u>AN *IN CAMERA* REVIEW OF ALL WITHHELD DOCUMENTS IS NECESSARY</u>

In addition to claiming that she does not have to provide a Privilege Log or in any way identify or explain what documents are being withheld, the type of documents, the number of documents, and the reasons they are being withheld (see argument below regarding the Privilege

Log), Ms. Draper <u>vehemently</u> opposes Plaintiff's request that these documents be provided to this Court *in camera* so that the Court can determine if the claimed privileges apply or not.

As noted in the Motion, the crime-fraud exception potentially applies to the three privileges Castle stated to this Court that she is now claiming in this case: 1) the attorney-client privilege; 2) the work product doctrine; and 3) the Joint Defense Privilege. To date, almost a year after the documents were requested, and after this Court's intervention and examination of Ms. Draper about these very same responses on approximately 4 separate occasions at Court hearings, Castle <u>still</u> has not provided the minimum information required by Federal law so that the Court and Plaintiff can ascertain if the privileges apply. Nonetheless, Castle and Ms. Draper have the audacity to say that requiring the documents to be reviewed by this Court *in camera* is "another unreasonably intrusive demand." (Opposition, P. 10, L. 13-14.) Castle and Ms. Draper are wrong. This Court is <u>entitled</u> to see the documents.

Castle claims that the documents should not be provided to the Court for an *in camera* review because there was never a meet and confer about it and Plaintiff has not "established a foundation supporting in camera review." (Opposition, p. 10, l. 12-14.) Neither argument is effective at this late stage in this discovery dispute.

All of the hearings that have taken place to date and the two responses by Castle are sufficient for this Court to order an *in camera* review. Castle, who is accused of fraud, has fled the country and jurisdiction of this Court and his counsel has said he will not come back. Counsel for Castle has failed to comply with this Court's orders over and over again with regards to this exact discovery dispute. Castle has refused to comply with the minimal requirements of the F.R.C.P. and continues to argue that he should not have to. There is simply no reason at this point to believe that any of the documents, which to date have not been identified, are actually privileged and ample reason to believe that the crime-fraud exception applies.

In the Opposition, Castle claims as follows:

> "In this case, Castle was formerly represented by attorney LaLanne as well as his present counsel Draper. LaLanne also represented other defendants in this case. The joint defense privilege protects all communications and work product materials shared between Draper and LaLanne, as well as communications and work product materials between LaLanne and his many clients, even if more than one client was named or copied on an email. The

-4-

> joint defense privilege also protects communications between the co-defendants made for the purpose of facilitating attorney client communications (e.g., regarding defense strategy, or what the attorney said, or what to say to the attorney)." (OPPOSITION, p. 8, l. 10-17.)

As noted above, Mr. LaLanne initially represented in this litigation both the fraudsters and those individual homeowners that the fraudsters defrauded which was a <u>direct</u> conflict of interest from the very inception of his representation. Now Castle is using this conflict of interest to shield himself from producing documents. Again, Castle has produced a mere 2,180 documents in this case (zero with the Initial Disclosures, 16 with the Amended and Supplemental Disclosures, and 2160 in response to this discovery, but only after being ordered to by this Court.) Plaintiff has thousands more responsive documents that it obtained from various sources, including some of the homeowners once Mr. LaLanne stopped representing them, public records, and as a result of subpoenas. There are likely tens of thousands of documents that Castle has simply failed to produce or account for.

This discovery dispute, let alone this case, is replete with evidence as to why this Court should order the production of the documents *in camera* so that this Court can rule on all of the privileges being claimed by Castle and Ms. Draper, including the claimed Joint Defense Privilege.

### III. PLAINTIFF IS ENTITLED TO A PRIVILEGE LOG OF ALL WITHHELD DOCUMENTS AND THE IDENTIFICATION OF WHICH REQUEST THE CLAIMED DOCUMENTS ARE RESPONSIVE TO

F.R.C.P. Rule 34(b)(2)(B) requires that when documents are being withheld, any response must include "a description of the document or group of documents and the reasons they are being withheld." Neither Castle's original responses nor the Amended Responses provide any description whatsoever of the documents and they do not specify the reasons the documents are being withheld. The Amended Responses merely cite to the same 35 or so objections. There is no description at all of the documents and Plaintiff is being forced to guess which of the 35 objections constitute the reason they are being withheld. Even with the Court going through each individual response with Ms. Draper at the last hearing, Castle's counsel continued to claim that the documents were being withheld on the basis of any of three claimed privileges.

1  Nonetheless, in the Opposition, Castle's counsel claims that Federal law does not require
2  her to prepare a Privilege Log and that "[e]ven in cases requiring a privilege log, there is no
3  requirement that the log identify what request the document would otherwise be responsive to."
4  (Opposition, p. 7, l. 3-4.) Obviously, Ms. Draper could not find a case to cite as this is not the law.
5  Her comments ignore the plethora of 9th Circuit and California Federal cases which require exactly
6  what she is claiming she does not have to provide.[1]

7  The 9th Circuit is replete with cases that require a party to prepare a Privilege Log (or the
8  equivalent, none of which Castle has done) when refusing to produce documents due to the claim
9  of a privilege. It is required so that the Court and the requesting party can determine if there is a
10 legitimate basis for the privilege.

> "**The party claiming the privilege has the burden of proof as to the legitimacy of the privilege. The party asserting the privilege or protection from disclosure bears the burden of proving the applicability of the privilege or protection to a given set of documents or communications.** *See, e.g., In re Grand Jury Investigation (The Corporation),* 974 F.2d 1068, 1070 (9th Cir.1992); *Kandel v. Brother Int'l Corp.,* 683 F.Supp.2d 1076, 1084 (C.D.Cal.2010). **A party's "[f]ailure to provide sufficient information may constitute a waiver of the privilege."** *Ramirez v. County of L.A.,* 231 F.R.D. 407, 410 (C.D.Cal.2005)." *Friends of Hope Valley v. Frederick Co.* (E.D.Cal.,2010) 268 F.R.D. 643, 650, emphasis added.

17 Castle and Ms. Draper have failed to meet this burden.
18  In the recent case of *Khasin v. Hershey Company* (N.D. Cal., 2014), 2014 WL 690278,
19 (which Castle claims in the Opposition limits the information required, see Opposition, p. 10, l. 4-
20 5), the Court noted that when documents are withheld based on the attorney-client privilege, the
21 Privilege Log must contain certain information required by the 9th Circuit:

> "When a party withholds information otherwise discoverable by claiming that the information is privileged, the party must describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[FN19] **The Ninth Circuit has held that a party meets its burden of demonstrating the applicability of the attorney-client privilege by submitting a log that identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document,**

---
[1] As to Ms. Draper's further claim in the Opposition that she cannot identify the documents without breaching the privilege, once an *in camera* review is performed, the Court will be able to give her guidance if the documents are deemed privileged.

**(d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated. [FN20] The privilege log goes beyond these standards if it also provides information on the subject matter of each document.[FN21] Such a log should generally be submitted within thirty days of the production request being served.[FN22]"**
(Emphasis added.)

The footnotes in *Khasin* cite to *In re Grand Jury Investigation* (9th Cir. 1992) 974 F.2d 1068, 1071 in which the 9th Circuit set forth these requirements for a Privilege Log and states that in lieu of a Privilege Log, a party may provide the documents to the Court for an *in camera* review. Here, Castle wants to do neither.

Likewise, a Privilege Log (or its equivalent) is also required with respect to a claim of the work product privilege (*E-Pass Technologies, Inc. v. Moses & Singer, LLP* [N.D. Cal., 2011] 2011 WL 3794889 at p. 2) and a claim of privilege based on the Joint Defense Privilege (*see Narog v. City of Redwood City* (N.D. Cal., 2014) 2014 WL 1088297 at p. 3.)

Castle has not met the legal standard and as a result, has not met his burden of proof. As noted in the Motion, without a Privilege Log or the documents being produced to this Court *in camera*, it is impossible to determine if Castle is withholding documents and if his claims of privilege are valid. The Court in *Flanagan*, *supra.*, 2008 WL 2073952 at p. 7, pointed out the problem:

> "[Defendant] has not provided a privilege log in regard to the document requests, and has provided no further explanation to support the privileges claimed in response to the interrogatories, or any explanation beyond that given in the objections cited above. No substantive responses have been given. **Even at this time the court and defendants are not aware of what documents have been withheld on account of the asserted privileges. The documents withheld could number one, ten, one hundred-who knows?** [Plaintiff's] counsel has been compelled to make his plea that no privilege/immunity attaches without recourse to the basic, essential information which would enable him (and the court) to sensibly determine whether particular documents were indeed privileged." (Emphasis added.)

Castle requests in the Opposition that this Court only order him to provide some of the required information if a Privilege Log is required. (Opposition, p. 9, l. 18 through p. 10, l. 1.) There is simply no basis for this request.

Due to the problems with Castle and Ms. Draper refusing to comply with this Court's orders and their failure to meet the standards of Federal law in <u>two</u> responses, Castle should be ordered to provide a Privilege Log with all of the required information – something that should have been provided almost a year ago. No one forced Ms. Draper to take this case and no one

-7-

forced her to spend hours and hours preparing meritless objections to valid discovery rather than spending that time actually complying with Federal law.

## IV. CASTLE'S AMENDED RESPONSES SHOULD INCLUDE THE INFORMATION LISTED IN THE MOTION

Castle states in the Opposition that he will provide amended responses but claims that "CTI's motion, however, does not identify what specifics that would aid Castle in doing so." (Opposition, p. 3, l. 13-16.) Castle is wrong. The Motion is clear and counsel for Plaintiff has made it abundantly clear, that Plaintiff seeks "Amended Responses that contain a statement as to whether or not Castle has responsive documents and only the objections Castle is relying upon to withhold documents responsive to each particular request" (Motion, p. 7, l. 11-13.) Castle's statement makes no sense given the fact that this Court spent a great deal of time at the last hearing going through each response with Ms. Draper and asking her which of the approximately 35 objections actually applied to each response.

As pointed out in the Motion, there are likely thousands of relevant, responsive documents that have not been produced. Plaintiff cannot tell if these thousands of documents were: never searched for and are still in Castle's possession; destroyed; or are being withheld based on a claimed privilege that likely may not apply due to the crime fraud exception. Both Castle and Ms. Draper have been less than forthcoming in this case and this Court has spent hours of time on this discovery dispute. Castle and Ms. Draper should be required to comply with Federal law.

## V. PLAINTIFF IS ENTITLED TO MONETARY SANCTIONS AGAINST CASTLE AND HIS COUNSEL, MS. DRAPER, FOR THEIR OUTRAGEOUS AND CONTINUED ABUSE OF THE DISCOVERY PROCESS

Castle claims in the Opposition that Plaintiff is only entitled to the time spent preparing the Motion to Compel as sanctions pursuant to F.R.C.P. Rule 37(a)(5)(A) but fails to provide any legal support for his position. No such support exists.

Plaintiff's request for sanctions is based on: F.R.C.P. 26(g)(1)(B)(i-iii), which provides that an attorney's signature on discovery responses certifies that the responses are consistent with the F.R.C.P., not interposed for any improper purpose, and not unreasonable or unduly

-8-
**REPLY TO OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR MONETARY SANCTIONS**

{00026899.1}

burdensome and oppressive; F.R.C.P. 37(a)(5)(A), which allows a Court to require a party or its attorney, or both, to pay the moving party's reasonable expenses incurred in making a motion to compel, including attorney's fees; and the Court's power to impose sanctions pursuant to F.R.C.P. 37 when a party fails to comply with a Court order enforcing the F.R.C.P. (*Flanagan v. Benicia Unified School District* [E.D. Cal. 2008] 2008 WL 2073952 at p. 2.) The Court pointed out in *Flanagan* that "'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith or fault." *Id.* at p. 9.

There is ample support for the requested sanctions. Plaintiff has been forced to expend $14,276.50 due to Castle and his counsel's refusal to comply with Federal law. Due to the blatant disregard shown by both Castle and his counsel in regards to this discovery dispute, the many hearings that have already taken place regarding it, the refusal to comply with numerous Court orders, and the continued insistence in the Opposition that Castle and his counsel have acted properly despite so much evidence to the contrary, it is proper for the Court to order Castle and his counsel, Ann Draper, to reimburse Plaintiff the full amount of the requested monetary sanctions.

## VI. CONCLUSION

It is difficult to understand the time and effort expended by Castle and his counsel to avoid following Federal law and providing documents that were supposed to be produced to Plaintiff pursuant to both F.R.C.P. Rules 26 and 34. It is difficult to understand the time and effort that this Court and Plaintiff have been forced to expend seeking compliance. Nothing in the Opposition provides any support for denying any portion of the Motion. In fact, it actually provides further support as to why the Motion should be granted.

For the reasons set forth in the Motion and supporting exhibits and this reply, Plaintiff respectfully requests that the Court grant the Motion and issue an order compelling Castle to: 1) provide amended responses that contain a statement as to whether or not Castle has responsive documents and only the objections Castle is relying upon to withhold documents responsive to each particular request; 2) prepare a Privilege Log of all withheld documents; 3) produce to the Court for *in camera* review all documents withheld on the basis of the attorney-client, attorney

1  work product, and joint defense privileges so the Court can determine if the privileges or the
2  crime-fraud exception apply; and 4) produce all documents responsive to the Request for
3  Production of Documents that are not alleged to be privileged and imposing monetary sanctions
4  against Castle and his counsel of record, Ann Draper, in the amount of $14,276.50 which
5  constitutes the reasonable expenses incurred by Plaintiff relating to this discovery dispute.

6  Dated:   May 30, 2014                    **BERGQUIST WOOD McINTOSH SETO LLP**

8                                           /s/ Stephen C. Seto
9                                           STEPHEN C. SETO
                                            KIMBERLY A. MILLINGTON
10                                          Attorneys for Plaintiffs