1   STEPHEN C. SETO (SBN 175458)
2   **BERGQUIST WOOD McINTOSH SETO LLP**
    1470 Maria Lane, Suite 300
3   Walnut Creek, CA  94596
    Telephone:   (925) 938-6100
    Facsimile:    (925) 938-4354
4
5   Attorneys for Plaintiffs
    FIDELITY NATIONAL TITLE INSURANCE COMPANY,
6   COMMONWEALTH LAND TITLE INSURANCE COMPANY,
    ALLY BANK, WESLEY W. HALIHAN, GINA L. HALIHAN,
7   DAWN R. CARIFI, BRIAN PHUONG, CRICHTON FRIEDLY,
    JANET N. FRIEDLY, CHICAGO TITLE INSURANCE COMPANY,
8   JULIAN MASSA,  ALISON MASSA and CREDIT ONE, LLC

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13  FIDELITY NATIONAL TITLE          | No. C-11-00896 -YGR
    INSURANCE COMPANY,               |
14  COMMONWEALTH LAND TITLE          |  **FOURTH AMENDED COMPLAINT FOR:**
15  INSURANCE COMPANY, ALLY BANK,    |
    WESLEY W. HALIHAN, GINA L.       |  **1. FRAUD;**
16  HALIHAN, DAWN R. CARIFI, BRIAN   |  **2. CIVIL CONSPIRACY;**
17  PHUONG, CRICHTON FRIEDLY,        |  **3. RACKETEERING INFLUENCED AND**
    JANET N. FRIEDLY, CHICAGO TITLE  |  **CORRUPT ORGANIZATIONS ACT 18 U.S.C.**
18  INSURANCE COMPANY, JULIAN        |  **SECTION 1962(c) – RACKETEERING;**
    MASSA,  ALISON MASSA and CREDIT  |  **4. RACKETEERING INFLUENCED AND**
19  ONE, LLC,                        |  **CORRUPT ORGANIZATIONS ACT 18 U.S.C.**
                                     |  **SECTION 1962(d) – CONSPIRACY;**
20              Plaintiffs,          |  **5. BREACH OF CONTRACT;**
21      vs.                          |  **6. BREACH OF IMPLIED COVENANT TO**
                                     |  **CONVEY MERCHANTABLE TITLE TO**
22  JAMES C. CASTLE aka J.           |  **PROPERTY;**
    CHRISTOPHER CASTLE, individually |  **7. NEGLIGENCE;**
23  and as Trustee of the J. Christopher Castle | **8. NEGLIGENT SUPERVISION;**
    Irrevocable Trust, LARA          |  **9. VIOLATION OF CIVIL CODE § 2079; AND**
24  KARAKASEVIC, CHRISTOPHER         |  **B&P CODE §§ 10152 AND 10176**
25  PISCATELLI, BRIAN KEITH LIBERTA, |  **10. NEGLIGENCE (Broker);**
    JON P. SANDERS, ALICIA A.        |  **11. BREACH OF FIDUCIARY DUTY**
26  SANDERS, SHON-TE-EAST-A, WALKS   |
    WITH SPIRIT, CORPORATION SOLE,   |
27  JOHN-MICHAEL DI CHIARA, GOLDEN   |
    HILLS TRUST, REMUS A.            |
28  KIRKPATRICK aka AL KIRKPATRICK,  |

[00010172.1]FNTG.009 v4

                    FOURTH AMENDED COMPLAINT
                              -1-

1  LAURA M. PEZZI, CARL WALLACE,
   OREPLEX INTERNATIONAL, LLC,
2  TODD J. SMITH, DANIEL R. YOUNG,
   KELLY E. YOUNG, BRIANNA
3  HANSON, ALTUS EQUITY, LLC aka
   ATLUS EQUITY, LLC, KEVIN KEITH,
4  CHRISTY KEITH, JENNIFER PEZZI,
   FINANCIAL RECOVERY GROUP,
5  DAVID R. THOMPSON, MELISSA A.
   THOMPSON, CCTT GROUP, TISHA L.
6  TRITES,  FAHED M. EWEIS, NADIA F.
7  EWEIS, BUG REAL ESTATE, INC.,
   JOHN WINTER, JOLEE LANGE,
8  RANDALL C. CRAWFORD, JASON
   YOUNG, DONALD PORTO, PATRICIA
9  PORTO, CF ESCROW, INC., MICHELLE
10 DORNON, TISHA TRITES REALTY,
   CJT FINANCIAL GROUP, GJZ GROUP,
11 AFOG GROUP, CPC MISSION TRUST, ,
   WILLIAM LAVELLE, PATRICK
12 GALLAGHER, CATHY CROSS, GARY
   SILVERMAN, GEORGE LARSEN,
13 PRUDENTIAL CALIFORNIA REALTY,
14 MAGAN ARTHUR, JOAN
   HANGARTER, CURTIS GUILLOTTE
15 and Does 2 through 100, inclusive,

16             Defendants.

17

18          **FOURTH AMENDED COMPLAINT**

19        Plaintiffs Fidelity National Title Insurance Company, Ally Bank, Wesley W. Halihan,

20  Gina L. Halihan, Commonwealth Land Title Insurance Company, Dawn R. Carifi, Brian

21  Phoung, Crichton Friedly, Janet N. Friedly, Chicago Title Insurance Company, Julian Massa,

22  Alison Massa and Credit One, LLC (sometimes, collectively "plaintiffs") complain against

23  defendants James C. Castle aka J. Christopher Castle, Lara Karakasevic, Christopher Piscatelli,

24  Brian Keith Liberta, Jon P. Sanders, Alicia A. Sanders, Shon-te-east-a, Walks With Spirit,

25  Corporation Sole, John-Michael Di Chiara, Golden Hills Trust, Remus A. Kirkpatrick aka Al

26  Kirkpatrick, Laura M. Pezzi, Carl Wallace, Oreplex International, LLC, Todd J. Smith, Daniel

27  R. Young, Kelly E. Young, Brianna Hanson, Altus Equity, LLC aka Atlus Equity, LLC, Kevin

28  Keith, Christy Keith, Jennifer Pezzi, Financial Recovery Group, David R. Thompson, Melissa

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-2-

BERGQUIST WOOD
McINTOSH SETO LLP

A. Thompson, Carl Wallace, CCTT Group, Tisha L. Trites, Fahed M. Eweis, Nadia F. Eweis, John Winter, Jolee Lange, Bug Real Estate, Inc., Randall C. Crawford, Jason Young, Donald Porto, Patricia Porto, CF Escrow, Inc., Michelle Dornon, Tisha Trites Realty, CJT Financial Group, GJZ Group, AFOG Group, CPC Mission Trust, William Lavelle, Patrick Gallagher, Cathy Cross, Gary Silverman, George Larsen, California Prudential Realty, Magan Arthur, Joan Hangarter, Curtis Guillotte and DOES 2 through 100 as follows:

## INTRODUCTION

This is a Racketeering Influenced and Corrupt Organizations ("RICO") action concerning defendants' massive and ongoing scheme to defraud dozens of sellers and buyers of real property and some of their agents and lenders out of millions of dollars. Defendants perpetrated the scheme through a so-called "administrative default procedure" ("ADP") whereby defendants fraudulently reconveyed legitimate deeds of trust on residences, replaced them with sham liens and then "short sold" the properties to unsuspecting buyers. Because the legitimate liens were purportedly reconveyed, the buyers' purchase monies went to defendants, including the sham lien holders, the sellers, and various brokers. The legitimate lenders subsequently discovered the forged reconveyances, have ignored them and are foreclosing or have foreclosed on plaintiff/buyer's property.

## PLAINTIFF PARTIES

1.      Plaintiff Fidelity National Title Insurance Company is a real estate service company authorized to do business in California.

2.      Plaintiff Ally Bank is a national bank doing business in California and other states and is organized under the National Bank Act, 12 U.S.C. §§ 21, *et seq.*

3.      Plaintiff Wesley W. Halihan is an individual residing in Santa Rosa, California.

4.      Plaintiff Gina L. Halihan is an individual residing in Santa Rosa, California.

5.      Plaintiff Tatyana Madina is an individual residing in Antelope, California.

6.      Plaintiff Commonwealth Land Title Insurance Company is a real estate service company authorized to do business in California.

7.      Plaintiff Dawn R. Carifi is an individual residing in Simi Valley, California.

BERGQUIST WOOD
McINTOSH SETO

1    8.    Plaintiff Brian Phoung is an individual residing in California.

2    9.    Plaintiff Crichton Friedly is an individual residing in California.

3    10.    Plaintiff Janet Norman Friedly is an individual residing in California.

4    11.    Plaintiff Chicago Title Insurance Company is a real estate service company

5    authorized to do business in California.

6    12.    Plaintiff Julian Massa is an individual residing in California.

7    13.    Plaintiff Alison Massa is an individual residing in California

8    14.    Plaintiff Credit One, LLC is a limited liability company authorized to do

9    business in California.

10                          **DEFENDANT PARTIES**

11    **Brown Street**

12    15.    On information and belief, defendant James C. Castle is an individual residing

13    in Santa Rosa, California and was the former co-owner of a single-family residence located at

14    601 Brown Street, Santa Rosa, California ("Brown Street"). A legal description of Brown

15    Street is attached hereto as **Exhibit 1**. Castle was involved in the fraudulent schemes alleged

16    herein including the scheme related to Brown Street (the "Brown Street Scheme"). James C.

17    Castle in his capacity as Trustee of the J. Christopher Castle Irrevocable Trust also was the

18    former owner of Brown Street.

19    16.    On information and belief, defendant Lara Karakasevic is an individual residing

20    in Santa Rosa, California and was the former co-owner of Brown Street. Karakasevic was

21    involved in the fraudulent schemes alleged herein including the Brown Street Scheme.

22    17.    On information and belief, defendant Christopher Piscatelli is an individual

23    residing in California and an alleged agent for "Wachovia Mortgage, FSB." On further

24    information and belief, Piscatelli was involved in the fraudulent schemes alleged herein

25    including the Brown Street Scheme.

26    18.    On information and belief, defendant Brian Keith Liberta is an individual

27    residing in Marin County, California. Liberta was a notary public commissioned in the State

28

BERGQUIST WOOD
McINTOSH SETO

of California.   On information and belief, Liberta was involved in the fraudulent schemes alleged herein including the Brown Street Scheme.

**Dunlay Drive**

19.    On information and belief, defendant Jon P. Sanders is an individual residing in Placer County and was the former co-owner of the single-family residence located at 5479 Dunlay Drive, Sacramento, CA ("Dunlay Drive").  A legal description of Dunlay Drive is attached hereto as **Exhibit 2**.  On information and belief, Jon Sanders was involved in the fraudulent schemes alleged herein including the scheme related to Dunlay Drive (the "Dunlay Drive Scheme").

20.    On information and belief, Defendant Alicia A. Sanders is an individual residing in Placer County and was the former co-owner of Dunlay Drive.  On information and belief, Alicia Sanders was involved in the fraudulent schemes alleged herein including the Dunlay Drive Scheme.

21.    On information and belief, defendant Shon-te-east-a, Walks With Spirit, Corporation Sole, is a business entity of unknown form located in California.  Shon-te-east-a was involved in the fraudulent schemes alleged herein including the Dunlay Drive Scheme.

22.    On information and belief, defendant John-Michael Di Chiara is the principal and purported "archbishop" of defendant Shon-te-east-a. John-Michael Di Chiara was involved in the fraudulent schemes alleged herein including the Dunlay Drive Scheme.

23.    On information and belief, defendant Golden Hills Trust ("Golden Hills") is a sham business purportedly located in California.
On information and belief, the principals of Golden Hills Trust are defendants Remus A. Kirkpatrick aka Al Kirkpatrick and Laura Pezzi.  On information and belief, Kirkpatrick currently resides in Missouri.   Golden Hills Trust and its principals were involved in the fraudulent schemes alleged herein including the Dunlay Drive Scheme.

24.    On information and belief, Michelle Dornon is a senior escrow officer with CF Escrow, Inc.  On information and belief, Dornon was involved in the fraudulent schemes alleged herein including the Dunlay Drive Scheme.

BERGQUIST WOOD
McINTOSH SETO

1     25.     On information and belief, defendant CF Escrow, Inc., is an independent escrow

2 company authorized to do business in California and located in El Cahon, CA. On further

3 information and belief, Dornon was involved in the fraudulent schemes alleged herein

4 including the Dunlay Drive Scheme.

5     **Loch Dane**

6     26.     On information and belief, Defendant Laura M. Pezzi is an individual residing

7 in California and was the former owner of the single-family residence located at 4137 Loch

8 Dane Court, Antelope, California ("Loch Dane"). A legal description of Loch Dane is attached

9 hereto as **Exhibit 3**. Laura Pezzi was involved in the fraudulent schemes alleged herein

10 including the scheme related to Loch Dane (the "Loch Dane Scheme").

11     27.     On information and belief, Carl Wallace is an individual residing in California.

12 Wallace was involved in the fraudulent schemes alleged herein including the Loch Dane

13 Scheme.

14     28.     On information and belief, defendant Oreplex International LLC is a Nevada

15 limited liability company. Defendant Castle controls Oreplex and both Oreplex and he were

16 involved in the fraudulent schemes alleged herein including the Loch Dane Scheme.

17     29.     On information and belief, defendant Todd J. Smith is an individual residing in

18 Scottsdale, Arizona. Plaintiffs are informed that Smith was a notary public commissioned in

19 the State of California. Smith was involved in the fraudulent schemes alleged herein including

20 the Loch Dane Scheme.

21     **Shannon Bay**

22     30.     On information and belief, Defendant Daniel R. Young is an individual residing

23 in California and was the former owner of the single-family residence located at 5170 Shannon

24 Bay Drive, Rocklin, California ("Shannon Bay"). A legal description of Shannon Bay is

25 attached hereto as **Exhibit 4**. On information and belief, Daniel Young was involved in the

26 fraudulent schemes alleged herein including the scheme related to Shannon Bay (the "Shannon

27 Bay Scheme").

28

31.     On information and belief, Defendant Kelly E. Young is an individual residing in California and was the former owner of Shannon Bay.   On information and belief, Kelly Young was involved in the Shannon Bay Scheme.

32.     As set forth above, defendant Remus A. Kirkpatrick aka Al Kirkpatrick is an individual residing in California.  Remus Kirkpatrick was involved in the Shannon Bay Scheme.

33.     On information and belief, defendant Brianna Hanson is an individual residing in Sacramento, California and is an alleged agent for "BAC Home Loans Servicing, LP."  On information and belief, Hanson was involved in the fraudulent schemes alleged herein including the Shannon Bay Scheme.

34.     On information and belief, defendant Altus Equity LLC aka Atlus Equity ("Altus Equity") is a California limited liability company

35.     Defendant Laura Pezzi was involved in the Shannon Bay Scheme as both a notary and as a purported "authorized representative" for California Reconveyance Company.

**Roaring Camp**

36.     On information and belief, Defendant Kevin Keith is an individual residing in California and was a former owner of the single-family residence located at 1420 Roaring Camp Court, Plumas Lake, California ("Roaring Camp").  A legal description of Roaring Camp is attached hereto as **Exhibit 5**.

37.     On information and belief, Defendant Christy Keith is an individual residing in California and was a former owner of Roaring Camp.

38.     On information and belief, defendant Financial Recovery Services is a sham company located in California that defendants used to further their fraudulent schemes herein including the scheme related to Roaring Camp (the "Roaring Camp Scheme")..

39.     On information and belief, defendant Jennifer Pezzi is an individual residing in California and an alleged agent for Financial Recovery Services.  On information and belief, Jennifer Pezzi was involved in the fraudulent schemes alleged herein including the Roaring Camp Scheme.

40.    On information and belief, Dornon was involved in the fraudulent schemes alleged herein including the Roaring Camp Scheme.  On further information and belief, Dornon was an employee of CF Escrow while engaged in the Roaring Camp Scheme.

41.    On information and belief, CF Escrow was involved in the fraudulent schemes alleged herein including the Roaring Camp Scheme.

42.    On information and belief, Golden Hills and its principals were involved in the Roaring Camp Scheme and the other schemes described herein.

**Northcrest**

43.    On information and belief, Defendant David R. Thompson is an individual residing in California and was the former owner of a single-family residence located at 3765 Northcrest Court, Simi Valley, California ("Northcrest").  A legal description of Northcrest is attached hereto as **Exhibit 6**.  On information and belief, David Thompson was involved in the fraudulent schemes alleged herein including the scheme related to Northcrest (the "Northcrest Scheme").

44.    On information and belief, Defendant Melissa A. Thompson is an individual residing in California and was the former owner of Northcrest.  On information and belief, Melissa Thompson was involved in the Northcrest Schemes.

45.    Defendant CCTT Group is a sham business purportedly located in San Diego, California.   CCTT was used by defendants to further their fraudulent schemes herein including those related to Northcrest (the "Northcrest Scheme").

46.    On information and belief, defendant Wallace was involved in the Northcrest Scheme.

47.    On information and belief, defendant Tisha L. Trites is an individual residing in San Diego County, California.  Plaintiffs are informed that Trites was a notary public commissioned in the State of California.   Trites was involved in the Northcrest Scheme.

48.    On information and belief, Bug Real Estate, Inc. ("BRE"), is a California corporation located in Coronado, California.  On information and belief, Trites is the principal of BRE.  BRE was involved in the Northcrest Scheme.

**Valley West**

49.     On information and belief, Defendant Fahed M. Eweis is an individual residing in Santa Rosa, California and was a former owner of a single-family residence located at 2313 Valley West Drive, Santa Rosa, California ("Valley West"). A legal description of Valley West is attached hereto as **Exhibit 7**.

50.     On information and belief, Defendant Nadia F. Eweis is an individual residing in Santa Rosa, California and also was a former owner of Valley West.

51.     Defendant Golden Hills Trust and its principal Remus Kirkpatrick were involved in the fraudulent scheme related to Valley West (the "Valley West Scheme").

52.     On information and belief, defendant John Winter is an individual residing in California and a purported agent for Recontrust Company, N.A. On information and belief, John Winter was involved in the Valley West Scheme.

53.     On information and belief, defendant Jolee Lange is an individual residing in Roseville, California and a purported agent for Mortgage Electronic Registration Systems, Inc. (MERS) as Nominee for Aegis Wholesale Corporation. On information and belief, Jolee Lange was involved in the Valley West Scheme.

54.     Defendants Henderson, Golden Hills and its principals were involved in the Valley West Scheme.

55.     As set forth above, defendant Tisha Trites is an individual residing in California. Trites was involved in the Valley West Scheme.

56.     BRE was involved in the Valley West Scheme.

57.     On information and belief, defendant Tisha Trites Realty ("TTR"), is a corporation authorized to do business in California. On further information and belief, Tisha Trites is a broker for TTR, and both TTR and BRE were involved in the Valley West Scheme.

**Almondwood**

58.     On information and belief, Defendant Randall C. Crawford is an individual residing in California and was the former owner of a single-family residence located at 7593

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-9-

1  Almondwood Avenue, Citrus Heights, California ("Almondwood"). A legal description of

2  Almondwood is attached hereto as **Exhibit 8**.

3      59.    As set forth above, defendant Golden Hills is a sham business. Golden Hills

4  was used by defendants, including Remus Kirkpatrick and Laura Pezzi, to further their

5  fraudulent schemes herein including those related to Almondwood (the "Almondwood

6  Scheme").

7      60.    Shon-te-east-a and its principal John Michael DiChiara were involved in the

8  fraudulent schemes alleged herein including the Almondwood Scheme.

9      61.    Defendant Jason Young is an individual residing in California and is an alleged

10  agent for "JP Morgan Chase Bank, N.A." On information and belief, Young was involved in

11  the fraudulent schemes alleged herein including Almondwood Scheme.

12      62.    As set forth more fully above, defendant Laura Pezzi was a notary public

13  commissioned in the State of California. Pezzi was involved in the fraudulent schemes alleged

14  herein including Almondwood Scheme.

15      63.    Dornon, while employed by CF Escrow, was involved in the fraudulent

16  schemes alleged herein including the Almondwood Scheme.

17      64.    On information and belief, CF Escrow was involved in the fraudulent schemes

18  alleged herein including the Almondwood Scheme.

19  **Green Garden**

20      65.    On information and belief, defendant Donald Porto is an individual residing in

21  Kern County and was the former co-owner of the single-family residence located at 6303

22  Green Garden Drive, Bakersfield, CA ("Green Garden"). A legal description of Green Garden

23  is attached hereto as **Exhibit 9**.

24      66.    On information and belief, Defendant Patricia Porto is an individual residing in

25  Kern County and was the former co-owner of Green Garden.

26      67.    Defendants Shon-te-east-a and its principal John-Michael Di Chiara were

27  involved in the fraudulent schemes alleged herein including the scheme related to Green

28  Garden (the "Green Garden Scheme").

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO

68.     Defendant Golden Hills, its principals Remus Kirkpatrick and Laura Pezzi, were involved in the Green Garden Scheme.

69.     On information and belief, defendant Young was involved in the Green Garden Scheme.

**Tule Lane**

70.     Defendant Patrick Gallagher is an individual residing in California and was a former owner of the single-family residence located at 2025 Tule Lane, Knightsen, California 94598 ("Tule Lane").  Gallagher was involved in the fraudulent scheme related to Tule Lane (the "Tule Lane Scheme").

71.     Defendant Cathy Cross is an individual residing in California and was a former owner of Tule Lane.  Cross was involved in the Tule Lane Scheme.

72.     Defendant George Larsen is an individual residing in California and is a principal of Defendant GJZ Group.  Larsen was involved in the fraudulent schemes alleged herein including the Tule Lane Scheme.

73.     Defendant GJZ Group is an unincorporated association doing business in California.  GJZ Group and its principals and agents, including defendants George Larsen, Chris Castle and Tisha Trites, were involved in the fraudulent schemes alleged herein including the Tule Lane Scheme.

74.     On information and belief, defendant Gary Silverman is an individual residing in California and was involved in the fraudulent schemes alleged herein including the Tule Lane Scheme.

75.     On information and belief, defendant William Lavelle is an individual residing in California and belief, William Lavelle was involved in the fraudulent schemes alleged herein including the Tule Lane Scheme.

76.     Defendant Prudential California Realty ("Prudential) is a business entity of unknown form located in California.  At all times relevant herein, Defendant Cross was a real estate agent with Prudential.

///

BERGQUIST WOOD
McINTOSH SETO LLP

**Canyon Road**

77.     Defendant Magan Arthur is an individual residing in California and was a former owner of the single-family residence located at 60 Canyon Road, Fairfax, California 94930 ("Canyon Road"). Arthur was involved in the fraudulent schemes alleged herein including the scheme related to Canyon Road (the "Canyon Road Scheme").

78.     On information and belief, defendant AFOG Group is an unincorporated association doing business in California. AFOG Group and its principals and agents, including defendants George Larsen, Chris Castle and Laura Pezzi, were involved in the fraudulent schemes alleged herein including the Canyon Road Scheme

79.     On information and belief, defendant Gary Silverman is an individual residing in California and was involved in the fraudulent schemes alleged herein including the Canyon Road Scheme.

80.     On information and belief, defendant William Lavelle is an individual residing in California and belief, William Lavelle was involved in the fraudulent schemes alleged herein including the Canyon Road Scheme.

81.     Defendants CF Escrow and Dornon performed escrow services for the sale of Canyon Road and were involved in the Canyon Road Scheme.

**Stone Drive**

82.     Defendant Joan Hangarter is an individual residing in California and was a former owner of the single-family residence located at 564 Stone Drive, Novato, California 94947 ("Stone Drive"). Hangarter was involved in the fraudulent schemes alleged herein including the scheme related to Stone Drive (the "Stone Drive Scheme").

83.     GJZ Group and its principals and agents, including defendants George Larsen, Chris Castle and Tisha Trites, were involved in the fraudulent schemes alleged herein including the Stone Drive Scheme.

84.     On information and belief, defendant William Lavelle is an individual residing in California and belief, William Lavelle was involved in the fraudulent schemes alleged herein including the Stone Drive Scheme.

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-12-

**Via Divertirse**

85.      Defendant Curtis Guillotte is an individual residing in California and was a former owner of the single-family residence located at 26 Via Divertirse, San Clemente, California ("Via Divertirse"). Guillotte was involved in the fraudulent schemes alleged herein including the scheme related to Via Divertirse (the "Via Divertirse Scheme") Defendants Chris Castle, Oreplex International and Todd Smith were involved in the Via Divertirse Scheme.

## THE DOE DEFENDANTS

86.      Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as DOES 2 through 100, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

## AGENCY

87.      On information and belief, each defendant was the agent and/or employee of the other defendants, and each of them, and in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of the other defendants, and each of them.

## ALTER EGO

88.      Each of the individual defendants who were or are the owners or principals of the corporate/limited liability company defendants was and is the alter ego of said corporate/limited liability companies.

## JURISDICTION AND VENUE

89.      This Court has jurisdiction under 28 U.S.C. § 1331 because plaintiffs' third and fourth causes of action (RICO claims) arise under the laws of the United States.

90.      Venue is proper under 28 U.S.C. § 1391 because:

    a.      One or more of the defendants resides in this District;

    b.      Many of the events giving rise to this litigation occurred here; and

    c.      Some of the real property at issue in this case is located in this District.

{00010172.1}FNTG.009 v4

## THE FRAUDULENT SCHEMES - INTRODUCTION

91.     This lawsuit concerns defendants' scheme to defraud plaintiffs and others through phantom loans, phony short sales and the execution of fraudulent reconveyances of deeds of trust all under the guise of an ADP.

92.     In one variation of the scheme involving their own property, defendants fraudulently reconveyed their lender's existing deed of trust. Defendants then sold their property to plaintiffs and kept the sale proceeds rather than satisfying the lender's lien. The lender subsequently discovered the fraudulent reconveyance, cancelled it and is either proceeding with foreclosure or has foreclosed on plaintiffs' property.

93.     In another variation of the scheme involving their own property, defendants caused a sham lien to be placed on their property. Defendants then fraudulently reconveyed the existing legitimate deed of trust on their property and sold their property to another defendant. Because the legitimate lien was removed, the sale proceeds were paid to the holders of the sham lien. Defendant then sold the property to plaintiffs. The legitimate lender subsequently discovered the fraudulent reconveyance, cancelled it and has either foreclosed on plaintiffs' property or is proceeding with a foreclosure.

94.     In another variation of the scheme, involving an alleged short sale "assistance" program defendants caused a sham lien to be placed on the defendants' property. Defendants then fraudulently reconveyed the existing legitimate deed of trust on the property and caused the property to be sold to plaintiffs or caused the property to be assigned to a sham business that sold the property to plaintiffs. Because the legitimate lien was fraudulently removed, the sale proceeds were used to pay the sham lien. The legitimate lender subsequently discovered the fraudulent reconveyance, cancelled it and has either foreclosed on the plaintiffs' property or is proceeding with a foreclosure.

95.     In another variation of the short sale scheme, defendants caused a sham lien to be placed on defendants' property. Defendants then fraudulently reconveyed the existing legitimate deed of trust on the property and have been attempting to sell the property or transfer the property to a sham business that has attempted to sell the property.

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-14-

96.     As set forth below, defendants have completed twelve fraudulent real property sales and stolen over $4 million of plaintiffs' purchase monies.  The public record reflects that Defendants have placed fraudulent liens on over thirty other pieces of real property and are attempting to sell those properties to more victims.  The purpose of this action is to recover plaintiffs' damages and put a stop to defendants' scheme.

## THE FRAUDULENT TRANSACTIONS

### The Brown Street Scheme

97.     Defendants Karakasevic and her husband Castle previously owned Brown Street.  In May 2005, Karakasevic obtained a $495,000 loan from World Savings Bank (now Wells Fargo Bank) that was secured by a deed of trust (the "WFB DOT") against Brown Street.  On May 24, 2005, the WFB DOT was recorded against the Property.  A copy of the WFB DOT is attached as **Exhibit 10**.

98.     In 2008, defendants Karakasevic and Castle leased Brown Street to plaintiffs Wesley and Gina Halihan.

99.     On October 26, 2009, defendants fraudulently executed a Revised Full Reconveyance (the "Brown Street Reconveyance") purportedly reconveying the WFB DOT to defendant Karakasevic.  The Brown Street Reconveyance states that it is signed by defendant Piscatelli as "Authorized Agent/Trustee for Wachovia Mortgage, FSB."A copy of the recorded Brown Street Reconveyance is attached as **Exhibit 11**.

100.    The Brown Street Reconveyance states that it was notarized by defendant Liberta who claims that Piscatelli personally appeared before him and acknowledged that Piscatelli was signing the document in his authorized capacity.

101.    On information and belief, on October 27, 2009, Karakasevic and Castle quit claimed the Property to the "J Christopher Castle Irrevocable Trust."  A copy of the revised quitclaim deed is attached as **Exhibit 12**.

102.    In the fall of 2009, defendant Castle offered to sell Brown Street to the Halihans.  During those discussions, Castle informed Mr. Halihan that he wanted to sell Brown Street to the Halihans because they were a nice family and that he wanted to sell the house

1 | quickly.  Castle also represented that he owned Brown Street free and clear of liens, and he

2 | showed Mr. Halihan the Brown Street Reconveyance to "prove it."

3 | 103.   In December 2009, the Halihans purchased Brown Street from the J.

4 | Christopher Castle Irrevocable Trust for $264,000.  Defendant Castle, in his capacity as the

5 | Trustee of the J. Christopher Castle Irrevocable Trust, signed the purchase contract with the

6 | Halihans.  A copy of the purchase contract between the Halihans and the J. Christopher Castle

7 | Trust is attached as **Exhibit 13** and incorporated herein by this reference (the "Brown Street

8 | Purchase Agreement").

9 | 104.   Pursuant to the Brown Street Purchase Agreement, defendant Castle, as Trustee

10 | of the J. Christopher Castle Irrevocable Trust, was required to sell Brown Street to the

11 | Halihans free and clear from any and all liens and encumbrances.  As evidence that Brown

12 | Street was being sold to the Halihans free and clear of any and all liens and other

13 | encumbrances, the Brown Street Purchase Agreement specifically references the reconveyance

14 | recorded on October 26, 2009, as document number 2009102013 (**Exhibit 11**), and the quit

15 | claim deed, recorded on October 26, 2009, as document number 2009102013 (**Exhibit 12**).

16 | 105.   On December 7, 2010, defendant Castle, as Trustee for the J. Christopher Castle

17 | Irrevocable Trust, executed and delivered a grant deed conveying Brown Street to the

18 | Halihans.  A copy of the Grant Deed is attached as **Exhibit 14**.

19 | 106.   The Halihans duly performed all of the terms, conditions, covenants and

20 | promises required to be performed on their part under the Brown Street Purchase Agreement,

21 | except those which have been waived or excused by the conduct of Defendant Castle, both

22 | individually and as Trustee of the J. Christopher Castle Irrevocable Trust.  Defendant Castle, as

23 | Trustee of the J. Christopher Castle Irrevocable Trust, breached the Brown Street Purchase

24 | Agreement with the Halihans in that Brown Street was not free and clear of any and all liens

25 | and encumbrances, including but not limited to the WFB DOT recorded against Brown Street

26 | which was fraudulently reconveyed and later rescinded by the "Notice of Nonacceptance of a

27 | Recorded Deed" recorded by Wachovia Mortgage on September 22, 2010 as document number

28 | 201008.  In addition, and as a result of the aforementioned liens and encumbrances against

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-16-

BERGQUIST WOOD
McINTOSH SETO

1   Brown Street that continued to exist at the time of the execution of the Grant Deed, defendant

2   Castle, as Trustee of the J. Christopher Castle Irrevocable Trust, breached the implied covenant

3   to convey merchantable title to Brown Street to the Halihans.

4       107.     The Halihans financed the purchase through a $264,000 loan from American

5   Pacific Mortgage. As evidenced by the respective settlement statement and as a result of the

6   Brown Street Reconveyance, **none** of the sale proceeds went to Wells Fargo to pay the WFB

7   DOT. Instead, the proceeds went directly to defendants or to the IRS to satisfy defendants' tax

8   obligations. A copy of the Brown Street settlement statement is attached as **Exhibit 15**.

9       108.     The Halihans' purchase loan was subsequently transferred to plaintiff Ally Bank

10   and is secured by a Deed of Trust (the "Ally DOT") that was recorded on December 10, 2009.

11   A copy of the Ally DOT is attached as **Exhibit 16**.

12       109.     After the Brown Street sale closed, Wells Fargo discovered the fraudulent

13   Brown Street Reconveyance and recorded a "Notice of Nonacceptance of a Recorded Deed"

14   stating that the Brown Street Reconveyance was without any force or effect because it had

15   been signed and recorded by Karakasevic without Wells Fargo's knowledge or consent. A

16   copy of the Notice of Nonacceptance is attached as **Exhibit 17**. Wells Fargo then proceeded

17   with foreclosure proceedings on Brown Street. A copy of the Notice of Trustee's Sale is

18   attached as **Exhibit 18.**

19      **The Dunlay Drive Scheme**

20       110.     Defendants Jon Sanders and Alicia Sanders previously owned Dunlay Drive.

21   On information and belief, in July 2004, the Sanders borrowed $396,000 from Countrywide

22   Home Loans n/k/a BAC Home Loans. The loan was secured by a deed of trust (the "BAC

23   DOT") against the Property. A copy of the BAC DOT is attached as **Exhibit 19**.

24       111.     On July 26, 2010, the Sanders signed and caused to be recorded a $567,000

25   deed of trust (the "GH-Dunlay Drive DOT") in favor of defendant Golden Hills Trust. On

26   information and belief, the loan was a sham transaction in that no sums were ever lent by

27   Golden Hills to the Sanders. A copy of the Golden Hills DOT is attached as **Exhibit 20**.

28

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO

112.    On August 6, 2010, the Sanders assigned all of their rights under the BAC DOT and the GH-Dunlay Drive DOT to defendants Shon-te-east-a, and John-Michael Di Chiara, Archbishop.  A copy of the Assignment is attached as **Exhibit 21**.

113.    On August 30, 2010, the BAC DOT was assigned to Deutsche Bank.

114.    In September 2010, defendants fraudulently executed a Revised Full Reconveyance (the "Dunlay Drive Reconveyance") purportedly reconveying the BAC DOT to the Sanders.  The Dunlay Drive Reconveyance appears to be signed by a Sarah Contessa as "Authorized Agent/Trustee for Wachovia Mortgage, FSB." A copy of the recorded Dunlay Drive Reconveyance is attached as **Exhibit 22**.

115.    On October 21, 2010, Plaintiffs Li-Ling Sung and Tiee-Shan Tsai (the "Sungs") agreed to purchase Dunlay Drive from the Sanders for $195,000.  A copy of the California Residential Purchase Agreement is attached hereto as **Exhibit 23** and incorporated herein by this reference (the "Dunlay Drive Purchase Agreement").

116.    Pursuant to the Dunlay Drive Purchase Agreement, Jon and Alicia Sanders were required to disclose to the Sungs any and all matters known to Jon and Alicia Sanders affecting title, whether of record or not, to Dunlay Drive.

117.    In November 2010, an escrow for the sale was opened with defendant CF Escrow and specifically its escrow officer defendant Dornon.

118.    On or about November 17, 2010, the sale closed and Jon and Alicia Sanders executed and delivered a grant deed conveying Dunlay Drive Street to the Sungs.  A copy of the Grant Deed is attached as **Exhibit 23A**.

119.    The Sungs duly performed all of the terms, conditions, covenants and promises required to be performed on their part under the Dunlay Drive Purchase Agreement, except those that have been waived or excused by the conduct of defendants Jon and Alicia Sanders. Defendants Jon and Alicia Sanders breached the Dunlay Drive Purchase Agreement with the Sungs in that Sanders failed to convey merchantable title to the Sungs and failed to disclose all matters known to them affecting title to Dunlay Drive, including but not limited to failing to disclose that Sanders' loan from Countrywide Home Loans n/k/a BAC Home Loans had not

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO

1    been fully repaid; failing to disclose that the BAC DOT was valid and enforceable; failing to

2    disclose that the Dunlay Drive Reconveyance was fraudulent because the underlying loan had

3    not been fully repaid; failing to disclose that no sums were ever lent to the Sanders by Golden

4    Hills; and failing to disclose that the Golden Hills DOT was fraudulent. In addition, and as a

5    result of the aforementioned liens and encumbrances against Dunlay Drive that continued to

6    exist at the time of the execution of the Grant Deed, defendants Jon and Alicia Sanders

7    breached the implied covenant to convey merchantable title to Dunlay Drive to the Sungs.

8         120.   Moreover, as a result of the fraudulent reconveyance of the BAC DOT, **none** of

9    the sale proceeds went to pay the BAC DOT. Instead, the proceeds went directly to defendants

10   including Golden Hills, CF Escrow and Dornon. A copy of the Combined Closing Statement

11   is attached as **Exhibit 24**.

12        121.   The Dunlay Drive was an alleged short sale in that even though the July 26,

13   2010 GH-Dunlay Drive DOT was for $567,000, four months later Golden Hills accepted

14   approximately $170,000 to close the sale.

15        122.   On information and belief, after the sale closed, Deutsche Bank discovered the

16   Dunlay Drive Reconveyance. Deutsche Bank then rescinded the reconveyance, a copy of

17   which is attached as **Exhibit 25** and foreclosed on Dunlay Drive. A copy of the Trustee's Deed

18   Upon Sale evidencing the foreclosure is attached as **Exhibit 26**.

19        123.   On March 30, 2010, Deutsche Bank listed Dunlay Drive for sale.

20        124.   When the Sungs purchased Dunlay Drive, they purchased title insurance from

21   Plaintiff Chicago Title. After the Sungs discovered the Dunlay Drive Scheme, they made a

22   claim to Chicago Title under their title policy, and Chicago Title has since paid that claim.

23   Chicago Title is, therefore, subrogated to the Sungs' rights and is pursuing defendants in that

24   capacity.

25        **The Loch Dane Scheme**

26        125.   Defendant Laura Pezzi previously owned Loch Dane. On information and

27   belief, in 2006, Pezzi borrowed $396,000 from SCME Mortgage Bankers, Inc. The loan,

28

{00010172.1}FNTG.009 v4

1  which was later assigned to Aurora Loan Services, was secured by a deed of trust (the "Aurora

2  DOT"). A copy of the Aurora DOT is attached as **Exhibit 27**.

3     126. In April 2010, Laura Pezzi signed and caused to be recorded a $375,000 a deed

4  of trust (the "Oreplex DOT") in favor of defendant Oreplex International LLC, which is

5  controlled by defendant Castle. On information and belief, the transaction was a sham in that

6  no sums were ever lent by Oreplex to Laura Pezzi. A copy of the Oreplex DOT is attached as

7  **Exhibit 28**.

8     127. In late April 2010, defendants fraudulently executed a Substitution of Trustee

9  and Deed of Reconveyance (the "Loch Dane Reconveyance") purportedly reconveying the

10  Aurora DOT to Laura Pezzi. The Loch Dane Reconveyance appears to be signed by defendant

11  Wallace as "Authorized Representative" for GMAC Mortgage. A copy of the recorded Loch

12  Dane Reconveyance is attached as **Exhibit 29**.

13     128. The Loch Dane Reconveyance was notarized by defendant Todd J. Smith who

14  falsely acknowledged that Wallace had signed the document in his authorized capacity as an

15  authorized representative of GMAC Mortgage. When Smith notarized Wallace's signature on

16  the Loch Dane Reconveyance he was aware that Wallace was not an authorized representative

17  of GMAC Mortgage. Nevertheless, he notarized the Loch Dane Reconveyance with the intent

18  to mislead the public, including future potential purchasers such as plaintiff Madina and her

19  escrow agent and title insurer, into believing and relying on the representation that the Aurora

20  DOT had been legitimately reconveyed by GMAC Mortgage.

21     129. In May 2010, Nobuco Financials, LLC purchased Loch Dane. A copy of the

22  Grant Deed from Pezzi to Nobuco is attached as **Exhibit 30**. In June 2010, Nobuco flipped

23  Loch Dane to Real Estate Star. A copy of the Grant Deed from Nobuco to Real Estate Star is

24  attached as **Exhibit 31**.

25     130. In June 2010, Real Estate Star sold Loch Dane to Madina for $210,000. A copy

26  of the California Residential Purchase Agreement is attached hereto as **Exhibit 32** and

27  incorporated herein by this reference (the Loch Dane Purchase Agreement").

28

{00010172.1}FNTG.009 v4

131.   On information and belief, Real Estate Star executed and delivered a grant deed conveying Loch Dane to Madina.

132.   Plaintiff Madina purchased Loch Dane for $210,000 utilizing monies borrowed from PMC Bancorp.  When Madina purchased Loch Dane, she did so in part in justifiable reliance on the purported legitimacy of the Loch Dane Reconveyance.  Because of the Loch Dane Reconveyance, **none** of the sale proceeds went to the Aurora DOT.  A copy of the HUD-1 Final Statement is attached as **Exhibit 33**.

133.   On information and belief, after the sale closed, Aurora Bank discovered the Loch Dane Reconveyance and rescinded it.  A copy of the Rescission of Substitution of Trustee and Deed of Reconveyance is attached as **Exhibit 34**.

134.   When Madina purchased Loch Dane, she purchased title insurance from Plaintiff Chicago Title.  After Madina discovered the Loch Dane Scheme, she made a claim to Chicago Title under its title policy, and Chicago Title has since paid that claim.  Chicago Title is, therefore, subrogated to Madina's rights and is pursuing defendants in that capacity.

**The Shannon Bay Scheme**

135.   Defendants Daniel R. Young and Kelly E. Young previously owned Shannon Bay.  On information and belief, in 2005, the Youngs borrowed $340,000 from America's Wholesale Lender.  The loan, which was eventually assigned to Bank of New York ("BNY"), was secured by a deed of trust (the "BNY DOT") against Shannon Bay.  A copy of the BNY DOT is attached as **Exhibit 35**.

136.   On information and belief, in 2006, the Youngs borrowed $39,800 from Countrywide Bank (now Bank of America).  The loan was secured by a deed of trust (the "BAC DOT").  A copy of the BAC DOT is attached as **Exhibit 36**.

137.   On April 14, 2010, a Notice of Default was recorded on the BNY DOT.

138.   On April 28, 2010, the Youngs signed a $410,000 deed of trust (the "Kirkpatrick DOT") in favor of defendant Kirkpatrick.  On information and belief, the transaction was a sham in that no sums were ever lent by Kirkpatrick to the Youngs.  A copy of the Kirkpatrick DOT is attached as **Exhibit 37**.

{00010172.1}FNTG.009 v4

139. The Kirkpatrick DOT states after recording it should be returned to 5046 Caspian Dr., Oceanside, CA, which is the same address as for Golden Hills on GH-Dunlay Drive DOT.

140. On May 19, 2010, defendant Laura Pezzi, as an "Authorized Representative" for California Reconveyance Company executed a Notice of Rescission of Notice of Default relative to the BNY DOT. A copy of the Notice is attached as **Exhibit 38**.

141. In June 2010, defendants fraudulently executed a Substitution of Trustee and Deed of Reconveyance (the "First Shannon Bay Reconveyance") purportedly reconveying the BNY DOT to the Youngs. The First Shannon Bay Reconveyance appears to be signed by defendant Hanson as "Authorized Representative" for BAC Home Loans Servicing LP. A copy of the recorded First Shannon Bay Reconveyance is attached as **Exhibit 39**.

142. The First Shannon Bay Reconveyance was notarized by defendant Laura Pezzi who claims that Hanson personally appeared before her and acknowledged that she was signing the document in her authorized capacity.

143. Also in June 2010, defendants fraudulently executed a Substitution of Trustee and Deed of Reconveyance (the "Second Shannon Bay Reconveyance") purportedly reconveying the BAC DOT to the Youngs. The Second Shannon Bay Reconveyance appears to be signed by defendant Hanson as "Authorized Representative" for BAC Home Loans Servicing LP. A copy of the recorded Second Shannon Bay Reconveyance is attached as **Exhibit 40**.

144. The Second Shannon Bay Reconveyance was notarized by defendant Laura Pezzi who claims that Hanson personally appeared before her and acknowledged that she was signing the document in her authorized capacity.

145. On information and belief, in August 2010, the Youngs sold Shannon Bay to defendant Altus Equity for $140,000. A copy of the Grant Deed is attached hereto as **Exhibit 41**.

146. On September 13, 2010, Altus Equity sold the Property to Eric and Cindy Andersen for $190,000. A copy of the California Residential Purchase Agreement is attached

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

1    hereto as **Exhibit 42** and incorporated herein by this reference (the Shannon Bay Purchase

2    Agreement").

3         147.    Pursuant to the Shannon Bay Purchase Agreement, Altus Equity was required to

4    disclose to the Andersens all matters known to Altus Equity affecting title, whether of record

5    or not, to Dunlay Drive.

6         148.    On or about September 13, 2010, Altus Equity executed and delivered a grant

7    deed conveying Shannon Bay to the Andersens.  A copy of the Grant Deed is attached as

8    **Exhibit 43**.

9         149.    The Andersens duly performed all of the terms, conditions, covenants and

10   promises required to be performed on their part under the Shannon Bay Purchase Agreement,

11   except those that have been waived or excused by the conduct of Altus Equity.  Altus Equity

12   breached the Shannon Bay Purchase Agreement with the Andersens in that Altus Equity failed

13   to convey merchantable title to the Andersens and failed to disclose all matters known to them

14   affecting title to Shannon Bay, including but not limited to failing to disclose that the BNY

15   DOT and BAC DOT were valid and enforceable, and failing to disclose that the First Shannon

16   Bay Reconveyance, Second Shannon Bay Reconveyance and Notice of Rescission of Notice of

17   Default of the BNY DOT were fraudulent. In addition, and as a result of the aforementioned

18   liens and encumbrances against Shannon Bay that continued to exist at the time of the

19   execution of the Grant Deed, defendant Altus Equity breached the implied covenant to convey

20   merchantable title to Shannon Bay to the Andersens.

21        150.    Moreover, because of the Shannon Bay Reconveyances, **none** of the sale

22   proceeds went to pay the BNY or BAC DOT.  Instead, the proceeds went to defendants.

23        151.    On information and belief, after the sale closed, BNY discovered the First

24   Shannon Bay Reconveyance and recorded a Rescission of Deed of Reconveyance.  A copy of

25   the Rescission of Deed of Reconveyance is attached as **Exhibit 44**.

26        152.    In March 2011, BNY foreclosed on the BNY DOT.  A copy of the Trustee's

27   Deed Upon Sale is attached as **Exhibit 45**.

28

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-23-

153.    When the Andersens purchased Shannon Bay, they purchased title insurance from Plaintiff Commonwealth. After the Andersens discovered the Shannon Bay Scheme, they made a claim to Commonwealth under their title policy, and Commonwealth has since paid that claim. Commonwealth is, therefore, subrogated to the Andersens' rights and is pursuing defendants in that capacity.

**The Roaring Camp Scheme**

154.    Defendants Kevin Keith and Christy Keith previously owned Roaring Camp. On information and belief, in December 2005, the Keiths borrowed $275,000 from Fidelity Home Mortgage Corp ("FHM"). The loan was secured by a deed of trust (the "FHM DOT") against the Property. A copy of the FHM DOT is attached as **Exhibit 46**.

155.    In October 2010, the Keiths signed and caused to be recorded a $283,000 deed of trust (the "GH-Roaring Camp DOT") in favor of defendant Golden Hills. On information and belief, the loan was a sham transaction in that no sums were ever lent by Golden Hills Trust to the Keiths. A copy of the GH-Roaring Camp DOT is attached as **Exhibit 47**.

156.    In December 2010, defendants fraudulently executed a Substitution of Trustee and Deed of Reconveyance (the "Roaring Camp Reconveyance") purportedly reconveying the FHM DOT to the Keiths. The Roaring Camp Reconveyance appears to be signed by defendant Jennifer Pezzi as "Authorized Representative" for Financial Recovery Group. A copy of the recorded Roaring Camp Reconveyance is attached as **Exhibit 48**.

157.    In February 2011, Richard W. Heinz, trustee for the Richard W. Heinz Living Trust entered into an agreement with defendants Kevin and Christy Keith to purchase Roaring Camp for approximately $91,000. A copy of the unexecuted California Residential Purchase Agreement setting forth the terms and conditions of the purchase agreement between Richard W. Heinz, trustee for the Richard W. Heinz Living Trust, and the Keiths is attached hereto as **Exhibit 49** and incorporated herein by this reference (the "Roaring Camp Purchase Agreement").

158.    An escrow for the sale was opened with defendants CF Escrow and specifically its escrow officer defendant Dornon. On or about February 14, 2011, the Keiths executed and

{00010172.1} FNTG.009 v4

1    delivered a grant deed conveying Roaring Camp to Heinz. A copy of the Grant Deed is

2    attached as **Exhibit 50**.

3        159.    Pursuant to the Roaring Camp Purchase Agreement, the Keiths were required to

4    disclose to Heinz all matters known to the Keiths affecting title, whether of record or not, to

5    Roaring Camp.

6        160.    Heinz duly performed all of the terms, conditions, covenants and promises

7    required to be performed on his part under the Roaring Camp Purchase Agreement, except

8    those that have been waived or excused by the conduct of the Keiths. Defendants Kevin and

9    Christy Keith breached the Roaring Camp Purchase Agreement with Heinz in that the Keiths

10   failed to convey merchantable title to Heinz and failed to disclose all matters known to them

11   affecting title to Roaring Camp, including but not limited to failing to disclose that the Keiths'

12   loan from FHM had not been fully repaid; failing to disclose that the FHM DOT was valid and

13   enforceable; failing to disclose that the Roaring Camp Reconveyance was fraudulent because

14   the underlying loan had not been fully repaid; failing to disclose that no sums were ever lent to

15   the Keiths by Golden Hills; and failing to disclose that the GH-Roaring Camp DOT was

16   fraudulent. In addition, and as a result of the aforementioned liens and encumbrances against

17   Roaring Camp that continued to exist at the time of the execution of the Grant Deed,

18   defendants Kevin and Christy Keith breached the implied covenant to convey merchantable

19   title to Roaring Camp to Heinz.

20       161.    Moreover, as a result of the fraudulent reconveyance of the Fidelity DOT, **none**

21   of the sale proceeds went to pay that lien. Instead, the proceeds went to defendants, including

22   Golden Hills Trust, CF Escrow and Dornon.

23       162.    On information and belief, after the sale closed, FHM discovered the fraudulent

24   reconveyance and is claiming an interest in Roaring Camp.

25       163.    When Heinz purchased Roaring Camp, he also purchased title insurance from

26   Plaintiff FNTIC. After Heinz discovered the Roaring Camp Scheme, Heinz made a claim to

27   FNTIC under his title policy, and FNTIC has since paid that claim. FNTIC is, therefore,

28   subrogated to Heinz's rights and is pursuing defendants in that capacity.

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

**The Northcrest Scheme**

164.    Defendants David R. Thompson and Melissa A. Thompson previously owned Northcrest.  On information and belief, on May 1, 2005, the Thompsons borrowed $444,000 from United Capital Funding, Inc.  The loan was secured by a deed of trust (the "UCF DOT") against Northcrest.  A copy of the UCF DOT is attached as **Exhibit 51**.

165.    On information and belief, on May 19, 2005, the Thompsons obtained a $27,750 home equity line of credit from BofA.  The home equity loan was secured by a deed of trust (the "BofA DOT") against Northcrest.  A copy of the BofA DOT is attached as **Exhibit 52**.

166.    In the fall of 2010, the Thompsons were experiencing problems paying the above-referenced mortgages.  The Thompsons were then approached by certain of the defendants, including defendants Castle and Trites, who claimed that they could help them eliminate their obligations under the UCF DOT and the BofA through an ADP.  The Thompsons agreed, and signed a contract to initiate an ADP with defendant CCTT Group through its representatives Christopher Castle "CC" and Tisha Trites "TT".

167.    On October 18, 2010, and as part of the ADP, the Thompsons signed and caused to be recorded a $575,000 deed of trust (the "CCTT DOT") in favor of defendant CCTT group.  A copy of the CCTT DOT is attached as **Exhibit 53.**  When defendants Castle and Trites caused the Thompsons to sign the CCTT DOT, they knew the loan was a sham transaction in that no sums were ever lent by CCTT to the Thompsons.  Defendants, nevertheless, caused the CCTT DOT to be signed and then recorded to mislead future purchasers, such as plaintiff Carifi and her lender, escrow agent and title insurer, into believing that the CCTT DOT was a legitimate obligation that had to be paid as part of any purchase.

168.    Also on October 18, 2010, the Thompsons quit claimed Northcrest to defendant Shon-te-east-a.  A copy of the Quit Claim Deed is attached as **Exhibit 54**.

169.    On January 12, 2011, defendants fraudulently executed a Substitution of Trustee and Deed of Reconveyance (the "First Northcrest Reconveyance") purportedly reconveying the UCF DOT to the Thompsons.  The reconveyance appears to be signed by defendant Wallace as

{00010172.1}FNTG.009 v4

1   "Authorized Representative" for BofA.  A copy of the recorded First Northcrest Reconveyance

2   is attached as **Exhibit 55**.

3        170.    The First Northcrest Reconveyance was notarized by Tisha Trites who falsely

4   acknowledged that Wallace had signed the document in his authorized capacity as an

5   authorized representative of BofA.  When Trites notarized Wallace's signature on the First

6   Northcrest Reconveyance she was aware that Wallace was not an authorized representative of

7   BofA.  Nevertheless, Trites notarized the First Northcrest Reconveyance with the intent to

8   mislead the public, including future potential purchasers such as plaintiff Carifi and her lender,

9   escrow agent and title insurer, into believing and relying on the representation that the UCF

10  DOT had been legitimately reconveyed by BofA.

11       171.    Also on January 12, 2011, defendants fraudulently executed a Substitution of

12  Trustee and Deed of Reconveyance (the "Second Northcrest Reconveyance") purportedly

13  reconveying the BofA DOT.  Again, the reconveyance appears to be signed by defendant

14  Wallace as "Authorized Representative" for BofA.  A copy of the recorded Second Northcrest

15  Reconveyance is attached as **Exhibit 56**.

16       172.    The Second Northcrest Reconveyance was notarized by Trites who falsely

17  acknowledged that Wallace had signed the document in his authorized capacity as an

18  authorized representative of BofA.  When Trites notarized Wallace's signature on the Second

19  Northcrest Reconveyance she was aware that Wallace was not an authorized representative of

20  BofA.  Nevertheless, Trites notarized the Second Northcrest Reconveyance with the intent to

21  mislead the public, including future potential purchasers such as plaintiff Carifi and her lender,

22  escrow agent and title insurer, into believing and relying on the representation that the BofA

23  DOT had been legitimately reconveyed by BofA.

24       173.    In January 2011, Shon-te-east-a quit claimed Northcrest back to the Thompsons.

25  The quit claim is purportedly signed by defendant DiChiara.  The quit claim also states that it

26  is a "gift of unencumbered property."  A copy of the Quit Claim Deed is attached as **Exhibit**

27  **57**.

28

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO

174.    In February 2011, the Thompsons entered into an agreement to sell Northcrest to Terry Petto.  On information and belief, defendant Trites and her company BRE represented the Thompsons as their broker in the sale.

175.    The sale was an alleged short sale in that even though CCTT purportedly was wired $530,000, it sent escrow a payment demand for $265,000.  The payoff demand is signed by defendant Castle.  A copy of the CCTT payoff demand is attached as **Exhibit 58**.

176.    In February 2011, the Thompson-Petto sale closed.  On information and belief, $269,365.12 of the sale proceeds went to CCTT and approximately $8,700 was paid to defendant BRE and its principal Trites.  A copy of the Grant Deed is attached hereto as **Exhibit 59**.

177.    Although Trites was the broker for the Thompsons and was aware of the fraudulent circumstances concerning the CCTT DOT, the First Northcrest Reconveyance, the Second Northcrest Reconveyance and the ADP, she never disclosed such circumstances to Petto.  Trites deliberately concealed the fraudulent circumstances from Petto with the intent to defraud Petto into purchasing Northcrest and to ensure that the purchase monies for Northcrest be paid to CCTT, BRE, Castle and Trites rather than the beneficiaries of the legitimate UCF DOT and BofA DOT.

178.    In April 2011, Plaintiff Carifi purchased Northcrest from Terry Petto.  A copy of the California Residential Purchase Agreement is attached hereto as **Exhibit 60** and incorporated herein by this reference (the "Northcrest Purchase Agreement").  A copy of the Grant Deed is attached hereto as **Exhibit 61**.

179.    Carifi purchased Northcrest for $370,000.  However, as a result of the First and Second Northcrest Reconveyances, **none** of the sale proceeds went to pay the UCF or BofA DOTs.

**The Valley West Scheme**

180.    Defendants Fahed Eweis and Nadia Eweis previously owned Valley West.  On information and belief, in September 2005, the Eweises borrowed $480,000 from Aegis Wholesale Corporation.  The loan was secured by a deed of trust (the "Aegis DOT")

1   whereunder Mortgage Electronic Registration Systems, Inc ("MERS") is the beneficiary as

2   nominee for Aegis. A copy of the Aegis DOT is attached as **Exhibit 62**.

3         181.   On information and belief, in December 2010, a Notice of Default was recorded

4   relative to the Aegis DOT.

5         182.   On January 13, 2011, defendants caused to be recorded a $580,000 deed of trust

6   (the "GH-Valley West DOT") in favor of defendant Golden Hills Trust. On information and

7   belief, the loan was a sham transaction in that no sums were ever lent by Golden Hills Trust to

8   the Eweises. A copy of the GH-Valley West DOT is attached as **Exhibit 63**.

9         183.   On March 25, 2011, defendants fraudulently executed a Notice of Rescission of

10   Notice of Default relative to the Aegis DOT. The Notice states that it was signed by defendant

11   John Winter as "Authorized Agent" for Recontrust Company. The Notice also states that when

12   recorded it should be returned to defendant Laura Pezzi at 5098 Foothills Blvd., #3-123,

13   Roseville, CA – which is a P.O. Box at a UPS Store. A copy of the Notice of Rescission is

14   attached as **Exhibit 64**.

15         184.   On March 28, 2011, defendants fraudulently executed a Substitution of Trustee

16   and Deed of Reconveyance (the "Valley West Reconveyance") purportedly reconveying the

17   Aegis DOT to the Eweises. The Reconveyance appears to be signed by Jolee Lange as

18   "Agent" for MERS as nominee for Aegis. A copy of the recorded Valley West Reconveyance

19   is attached as **Exhibit 65**.

20         185.   In April 2011, Plaintiff Hanna agreed to purchase Valley West from the

21   Eweises for $191,500. On information and belief, the Eweises were represented by defendants

22   BRE, TTR and Trites. On information and belief, Hanna and defendants Fahed and Nadia

23   Eweis entered into a standardized California Residential Purchase Agreement and Joint Escrow

24   Instructions, C.A.R. Form RPA-CA, Revised 4/10, which sets forth the terms and conditions of

25   the purchase and sale agreement for Valley West (the "Valley West Purchase Agreement").

26   With the exception of the purchase price, property and parties, the Valley West Purchase

27   Agreement contains the same terms and conditions as those set forth in the Dunlay Drive

28

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO

1  Purchase Agreement (**Exhibit 23**), Loch Dane Purchase Agreement (**Exhibit 32**) and Shannon

2  Bay Purchase Agreement (**Exhibit 42**).

3        186.    On information and belief, the Eweises executed and delivered a Grant Deed

4  conveying Valley West to Hanna.

5        187.    Pursuant to the Valley West Purchase Agreement, the Eweises were required to

6  disclose to Hanna all matters known to the Eweises affecting title, whether of record or not, to

7  Valley West.

8        188.    Hanna duly performed all of the terms, conditions, covenants and promises

9  required to be performed on his part under the Valley West Purchase Agreement, except those

10  which that been waived or excused by the conduct of the Eweises.  The Eweises breached the

11  Valley West Purchase Agreement with Hanna in that the Eweises failed to convey

12  merchantable title to Hanna and failed to disclose all matters known to them affecting title to

13  Valley West, including but not limited to failing to disclose that Eweises' loan from Aegis

14  Wholesale had not been fully repaid; failing to disclose that the Aegis DOT was valid and

15  enforceable; failing to disclose that the Valley West Reconveyance was fraudulent because the

16  underlying loan had not been fully repaid; failing to disclose that the Notice of Rescission of

17  Notice of Default was fraudulent; failing to disclose that no sums were ever lent to the Eweises

18  by Golden Hills; and failing to disclose that the GH-Valley West DOT was fraudulent. In

19  addition, and as a result of the aforementioned liens and encumbrances against Valley West

20  that continued to exist at the time of the execution of the Grant Deed, defendants Fahed and

21  Nadia Eweis breached the implied covenant to convey merchantable title to Valley West to

22  Hanna.

23        189.    Moreover, as a result of the Valley West Reconveyance, **none** of the sale

24  proceeds went to pay the Aegis DOT.  Instead, the proceeds went to defendants, including

25  Golden Hills, Trites, BRE and TTR.  A copy of the Posting Summary evidencing the payments

26  is attached as **Exhibit 66**.

27        190.    Trites was the broker for the Eweises on the Valley West Sale.  As broker, and

28  having conspired with the other defendants in Northcrest Scheme, Trites was aware of the

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

1  fraudulent circumstances concerning the GH-Valley West DOT, the Valley West

2  Reconveyance and the ADP for Valley West.  Trites deliberately concealed the fraudulent

3  circumstances concerning Valley West from Hanna with the intent to defraud Hanna into

4  purchasing Valley West.  Trites also concealed the Valley West Scheme to ensure that the

5  purchase monies for Valley West be paid to Golden Hills, BRE, TTR and Trites rather than the

6  beneficiary of the legitimate AEGIS DOT.

7          191.    The Valley West sale was another purported short sale in that even though the

8  January 2010 GH -Valley West DOT was for $580,000, four months later, Golden Hills

9  accepted approximately $180,000 to close the sale.

10          192.    When Hanna purchased Valley West, she purchased title insurance from

11  Plaintiff Chicago Title.  After Hanna discovered the Valley West Scheme, she made a claim to

12  Chicago Title under its title policy, and Chicago Title has since paid that claim.  Chicago Title

13  is, therefore, subrogated to Hanna's rights and is pursuing defendants in that capacity.

14          **The Almondwood Scheme**

15          193.    Defendant Randall C. Crawford previously owned Almondwood.  On

16  information and belief, in December 2006, Crawford borrowed $240,500 from Washington

17  Mutual Bank nka JPMorgan Chase, N.A.  The loan was secured by a deed of trust (the "JPM

18  DOT") against Almondwood.

19          194.    In June 2010, Crawford signed and caused to be recorded a $280,000 deed of

20  trust (the "GH-Almondwood DOT") in favor of defendant Golden Hills.  On information and

21  belief, the loan was a sham transaction in that no sums were ever lent by Golden Hills to

22  Crawford.  A copy of the GH-Almondwood DOT is attached as **Exhibit 67.**

23          195.    Also in June 2010, Crawford quit claimed Almondwood to defendant Shon-te-

24  east-a.  A copy of the Quit Claim Deed is attached as **Exhibit 68**.  Further, Crawford assigned

25  to Shon-te-east-a, his rights in the JPM DOT.  The assignment was notarized by defendant

26  Laura Pezzi.  A copy of the assignment is attached as **Exhibit 69**.

27  ///

28

BERGQUIST WOOD
McINTOSH SETO LLP

196.   In June 2010, defendant Shon-te-east-a quitclaimed Almondwood back to Crawford. A copy of the Quit Claim Deed is attached as **Exhibit 70**. The Quit Claim states that it was executed by defendant Di Chiara.

197.   In October 2010, defendants executed a Substitution of Trustee and Deed of Reconveyance (the "Almondwood Reconveyance") purportedly reconveying the JPM DOT. The reconveyance appears to be signed by defendant Young as an authorized representative of JP Morgan Chase Bank, N.A. A copy of the Almondwood Reconveyance is attached as **Exhibit 71**.

198.   On information and belief, in January 2011, Crawford entered into an agreement to sell Almondwood to plaintiff Phuong. A copy of the California Residential Purchase Agreement is attached hereto as **Exhibit 72** and incorporated herein by this reference (the "Almondwood Purchase Agreement"). Defendants then opened an escrow with Defendant CF Escrow and specifically with Dornon for the sale.

199.   On or about January 14, 2011, the Almondwood sale closed and Crawford executed and delivered a Grant Deed conveying Almondwood to Phuong. A copy of the Grant Deed is attached hereto as **Exhibit 73**.

200.   Pursuant to the Almondwood Purchase Agreement, Crawford was required to disclose to Phuong all matters known to Crawford affecting title, whether of record or not, to Almondwood.

201.   Phuong duly performed all of the terms, conditions, covenants and promises required to be performed on his part under the Almondwood Purchase Agreement, except those that have been waived or excused by the conduct of Crawford. Crawford breached the Almondwood Purchase Agreement with Phuong in that Crawford failed to convey merchantable title to Phuong and failed to disclose all matters known to him affecting title to Almondwood, including but not limited to failing to disclose that Crawford's loan from Washington Mutual Bank nka JPMorgan Chase, N.A. had not been fully repaid; failing to disclose that the JPM DOT was valid and enforceable; failing to disclose that the Almondwood Reconveyance was fraudulent because the underlying loan had not been fully repaid; failing to

BERGQUIST WOOD
McINTOSH SETO LLP

1  disclose that no sums were ever lent to Crawford by Golden Hills; and failing to disclose that

2  the GH-Almondwood DOT was fraudulent. In addition, and as a result of the aforementioned

3  liens and encumbrances against Almondwood that continued to exist at the time of the

4  execution of the Grant Deed, defendant Crawford breached the implied covenant to convey

5  merchantable title to Almondwood to Phuong.

6       202.  The Almondwood sale was an alleged short sale in that even though the June

7  2010 GH-Almondwood DOT allegedly was for $280,000. In January 2011, Golden Hills

8  agreed to accept $70,234.60 to close the sale. A copy of Golden Hills' payoff demand is

9  attached as **Exhibit 74**.

10       203.  Plaintiff purchased Almondwood for $77,500. However, because of the

11  Almondwood Reconveyances, **none** of the sale proceeds went to pay the JPM DOT. Instead,

12  the proceeds went directly to defendants, including Golden Hills, CF Escrow and Dornon.

13      **Green Garden**

14       204.  Defendants Donald Porto and Patricia Porto previously owned Green Garden.

15  On information and belief, in December 2005, the Portos borrowed $300,000 from M&T

16  Mortgage Corporation. The loan was secured by a deed of trust (the "M&T DOT") against

17  Green Garden. A copy of the M&T DOT is attached as **Exhibit 75**.

18       205.  On information and belief, in December 2006, the Portos borrowed $95,231

19  from RBS Citizens, NA (fka Charter One Bank). The home equity loan was secured by a deed

20  of trust (the "RBS DOT") against Green Garden. A copy of the RBS DOT is attached as

21  **Exhibit 76**.

22       206.  On October 18, 2010, the Portos signed and caused to be recorded a $395,000

23  deed of trust (the "GH–Green Garden DOT") in favor of defendant Golden Hills. On

24  information and belief, the loan was a sham transaction in that no sums were ever lent by

25  Golden Hills to the Portos. A copy of the GH-Green Garden DOT is attached as **Exhibit 77.**

26       207.  Approximately two weeks later, the Portos quit claimed Green Garden to

27  defendant Shon-te-east-a. A copy of the Quit Claim Deed is attached as **Exhibit 78**.

28

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT

BERGQUIST WOOD
McINTOSH SETO LLP

208. On September 24, 2010, defendants executed a Substitution of Trustee and Deed of Reconveyance (the "First Green Garden Reconveyance") purportedly reconveying the M&T DOT. The First Green Garden Reconveyance purportedly appears to be signed by a Sarah Contessa as "authorized representative" for Bank of America. A copy of the recorded First Green Garden Reconveyance is attached as **Exhibit 79**.

209. In September 2010, defendants executed a Substitution of Trustee and Deed of Reconveyance (the "Second Green Garden Reconveyance") purportedly reconveying the RBS DOT. The Second Green Garden Reconveyance appears to be signed by defendant Young as "authorized representative" for Charter One Bank. A copy of the recorded Second Green Garden Reconveyance is attached as **Exhibit 80**.

210. In December 2010, Plaintiffs Crichton and Janet Friedly purchased Green Garden from Shon-te-east-a for $127,500. On information and belief, the Friedlys and Shon-te-east-a entered into a standardized California Residential Purchase Agreement and Joint Escrow Instructions, C.A.R. Form RPA-CA, Revised 4/10, which sets forth the terms and conditions of the purchase and sale agreement for Garden Green (the "Green Garden Purchase Agreement"). With the exception of the purchase price, property and parties, the Green Garden Purchase Agreement contains the same terms and conditions as those set forth in the Dunlay Drive Purchase Agreement (**Exhibit 23**), Loch Dane Purchase Agreement (**Exhibit 32**) and Shannon Bay Purchase Agreement (**Exhibit 42**).

211. On or about December 14, 2010 Shon-te-east-a executed and delivered a grant deed conveying Green Garden to the Friedlys. A copy of the Grant Deed is attached hereto as **Exhibit 81**.

212. Pursuant to Green Garden Purchase Agreement, Shon-te-east-a was required to disclose to the Friedlys all matters known to Shon-te-east-a affecting title, whether of record or not, to Green Garden.

213. The Friedlys duly performed all of the terms, conditions, covenants and promises required to be performed on their part under the Green Garden Purchase Agreement, except those that have been waived or excused by the conduct of Shon-te-east-a. Shon-te-east-

1  a breached the Green Garden Purchase Agreement with the Friedlys' in that Shon-te-east-a

2  failed to convey merchantable title to the Friedlys and failed to disclose all matters known to it

3  affecting title to Green Garden, including but not limited to failing to disclose that the M&T

4  DOT and RBS DOT were valid and enforceable; failing to disclose that the First Green Garden

5  Reconveyance and Second Green Garden Reconveyance were fraudulent; failing to disclose

6  that no sums were ever lent to the Portos from Golden Hills; and failing to disclose that the

7  GH-Green Garden DOT was fraudulent.  In addition, and as a result of the aforementioned

8  liens and encumbrances against Green Garden that continued to exist at the time of the

9  execution of the Grant Deed, defendant Shon-te-east-a breached the implied covenant to

10  convey merchantable title to Green Garden to the Friedlys.

11      214.  Plaintiffs purchased Green Garden for $127,500.  However, as a result of the

12  First and Second Green Garden Reconveyances, **none** of the sale proceeds went to pay the

13  M&T or RBS DOTs Property.  Instead, the proceeds went to defendants.

14      **The Tule Lane Scheme**

15      215.  Defendants Patrick Gallagher and Cathy Cross previously owned Tule

16  Lane.  A legal description of Tule Lane is attached as **Exhibit 82**.

17      216.  In May 2007, Gallagher and Cross borrowed $870,596 from Indymac Bank,

18  F.S.B. (now "Indymac Federal Bank, FSB") that was secured by a deed of trust (the "Indymac

19  DOT") against Tule Lane.  A copy of the Indymac DOT is attached as **Exhibit 83**.

20      217.  In June 2007, Cross executed and delivered a Grant Deed conveying Tule

21  Lane to Gallagher.  A copy of the Grant Deed is attached hereto as **Exhibit 84**.  In April 2008,

22  Gallagher executed and delivered a Grant Deed conveying Tule Lane to Gallagher and Cross

23  as joint tenants.  A copy of the Grant Deed is attached as **Exhibit 85**.

24      218.  In March 2010, the Indymac DOT was assigned to defendant OneWest

25  Bank, FSB.  A copy of the Corporate Assignment of the Indymac DOT is attached as **Exhibit**

26  **86**.

27      219.  In the fall of 2010, Gallagher and Cross began falling behind on their

28  payments under their loan with Indymac.  Gallagher and Cross, in collaboration with

BERGQUIST WOOD
McINTOSH SETO LLP

{00010172.1}FNTG.009 v4

1    defendants GJZ Group and its principals George Larsen, responded to Gallagher and Cross's

2    mortgage difficulties by commencing an ADP whereby defendants executed and recorded

3    various sham liens, forged reconveyances and other fraudulent documents to deceive plaintiff

4    into proceeding with a "short sale" purchase of Tule Lane as described more fully below.

5        220.    In November 2010 and as part of the ADP, Gallagher and Cross signed and

6    GJZ and Larsen caused to be recorded an $890,000 deed of trust (the "GJZ DOT") in favor of

7    GJZ. A copy of the GJZ DOT is attached as **Exhibit 87.** When defendants signed and

8    recorded the GJZ DOT, they knew the loan was a sham transaction in that no sums were ever

9    lent by GJZ Group to Gallagher and/or Cross.   Defendants, nevertheless, caused the CCTT

10   DOT to be signed and then recorded to mislead future purchasers and their escrow agents and

11   title insurers, into believing that the GJZ DOT was a legitmate obligation that had to be paid as

12   part of any purchase.

13       221.    In February 2011, a Notice of Default and Election to Sell Under the Indymac

14   DOT was recorded on Tule Lane ("NOD"). A copy of the NOD is attached as **Exhibit 88**.

15       222.    In March 2011 and in furtherance of the ADP, defendants, including GJZ,

16   Larsen, Gallagher and Cross, caused a forged Notice of Rescission of the NOD ("NOR") to be

17   recorded on Tule Lane. Defendants were aware that the NOR was fraudulent because it was

18   not authorized to be signed or recorded by the maker of the NOD.  Instead, it was executed by

19   defendant Gary Silverman who falsely represented that he was an authorized representative of

20   Aztec Foreclosure Corporation, the trustee for the Indymac DOT. A copy of the NOR is

21   attached hereto as **Exhibit 89**.

22       223.    In April 2011, and in furtherance of the ADP, defendants, including GJZ,

23   Larsen, Gallagher and Cross, caused a forged Substitution of Trustee and Deed of

24   Reconveyance (the "Tule Lane Reconveyance") to be recorded purportedly reconveying the

25   Indymac DOT to Gallagher and Cross. A copy of the recorded Tule Lane Reconveyance is

26   attached hereto as **Exhibit 90**.

27       224.    Defendants were aware that the Tule Lane reconveyance was fraudulent

28   when it was recorded because they knew (1) it was not authorized to be signed or recorded by

BERGQUIST WOOD
McINTOSH SETO LLP

1 the beneficiary of the Indymac DOT and (2) the loan secured by the Indymac DOT had not

2 been paid. Despite the foregoing, defendants caused Lavelle to execute the Tule Lane

3 Reconveyance wherein he falsely represented that he was an "Authorized Signer" for Indymac

4 Bank, F.S.B.

5 225. Defendants caused the Tule Lane Reconveyance to be recorded with the

6 intent to deceive prospective buyers, such as Reyes, and his title insurer, Chicago Title, into

7 believing that the Indy Mac DOT was no longer an enforceable lien on Tule Lane.

8 226. The Tule Lane Reconveyance falsely states that the recording is being

9 requested by OneWest Bank and that after it is recorded it should be sent to defendant "Patrick

10 Gallagher c/o OneWest Bank, 2025 Tule Lane, Knightsen, CA."

11 227. In May 2011, a Substitution of Trustee was recorded on the Indymac DOT

12 to substitute Aztec Foreclosure Corporation in place of Financial Title Company as the trustee

13 under the Indymac DOT. A copy of the Substitution of Trustee is attached as **Exhibit 91**.

14 228. Also, in May 2011, a Notice of Trustee's Sale was recorded on the Indymac

15 DOT. A copy of the Notice of Trustee's Sale is attached as **Exhibit 92**.

16 229. In June 2011, and in an effort to stop the pending foreclosure sale, Gallagher

17 executed and delivered a Grant Deed conveying an undivided twenty percent (20%) collateral

18 interest in Tule Lane to Scott Dion. In July 2011, Gallagher executed and delivered a Grant

19 Deed conveying an undivided twenty percent (20%) collateral interest in Tule Lane to Teresa

20 Weddle. A copy of the Grant Deed is attached as **Exhibit 93**.

21 230. In August 2011, Reyes entered a California Residential Purchase Agreement

22 to purchase Tule Lane from Gallagher and Cross for $390,000. A copy of the California

23 Residential Purchase Agreement is attached hereto as **Exhibit 94** and incorporated herein by

24 this reference (the "Tule Lane Purchase Agreement").

25 231. Prior to entering into the Tule Lane Purchase Agreement, Cross, on behalf

26 of Prudential, represented Reyes as his real estate agent and/or broker in attempting to locate

27 properties for Reyes to purchase. Cross showed Reyes various properties, including Tule

28 Lane. When Cross initially showed Tule Lane to Reyes, Cross verbally represented to Reyes

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-37-

1    that there were issues with title to Tule Lane and Cross continued to show Reyes other

2    properties. Sometime thereafter, and after having not found any properties that Reyes was

3    interested in purchasing, Cross verbally and falsely represented to Reyes that the "title issues"

4    relating to Tule Lane were resolved and that Tule Lane was free and clear of liens. In

5    reasonable reliance on Cross' representation that the "title issues" relating to Tule Lane had

6    been resolved and that it was free and clear of liens, Reyes agreed to purchase Tule Lane from

7    Gallagher and Cross.

8        232.    Although Cross was the real estate agent who initially showed Tule Lane to

9    Reyes, Cross eventually transferred Reyes' representation to another Prudential agent, Cory

10   Rangel, to further assist Reyes in purchasing Tule Lane. Gallagher and Cross then retained

11   Jack Williamson, another Prudential agent, to represent them on the Tule Lane sale.

12       233.    The Tule Lane sale was an alleged short sale in that even though the GJZ

13   DOT allegedly was for $890,000, in September 2011, GJZ Group agreed to accept $390,000 to

14   close the sale. GJZ Group's payoff demand is signed by defendant George Larsen. A copy of

15   the GJZ Group payoff demand is attached hereto as **Exhibit 95**. Defendant Tisha Trites was

16   also acting as an agent for GJZ Group and assisted in the alleged short sale of Tule Lane.

17       234.    In September 2011, and to allow the Tule Lane sale to close, Scott Dion

18   executed and delivered a Grant Deed conveying his undivided twenty percent (20%) collateral

19   interest in Tule Lane to Gallagher. Also in September 2011, Teresa Weddle executed and

20   delivered a Grant Deed conveying her undivided twenty percent (20%) collateral interest in

21   Tule Lane to Gallagher.

22       235.    An escrow for the Tule Lane Sale was opened with Ticor Title Company of

23   California and in September, 2011, the sale closed. In September 2011, Gallagher and Cross

24   executed and delivered a grant deed conveying Tule Lane to Reyes. A copy of the Grant Deed

25   is attached as **Exhibit 96**.

26       236.    Pursuant to the Tule Lane Purchase Agreement, Gallagher and Cross were

27   required to disclose to Reyes all matters known to Gallagher and Cross affecting title, whether

28

BERGQUIST WOOD
McINTOSH SETO

1  of record or not, to Tule Lane.  The Tule Lane Purchase Agreement further provides that

2  Gallagher and Cross agree to be responsible for all monetary liens on Tule Lane.

3        237.  Reyes duly performed all of the terms, conditions, covenants and promises

4  required to be performed on his part under the Tule Lane Purchase Agreement, except those

5  that have been waived or excused by the conduct of Gallagher and/or Cross.  Defendants

6  Gallagher and Cross breached the Tule Lane Purchase Agreement with Reyes in that Gallagher

7  and Cross failed to convey merchantable title to Reyes and intentionally failed to disclose all

8  matters known to them affecting title to Tule Lane, including but not limited to (1) failing to

9  disclose that Gallagher's and Cross' loan from Indymac Bank had not been fully repaid, (2)

10  failing to disclose that the Indymac DOT was valid and enforceable, (3) failing to disclose that

11  the Tule Lane Reconveyance was fraudulent because the underlying loan had not been fully

12  repaid, (4)failing to disclose that no sums were ever lent to Gallagher and/or Cross by GJZ, (5)

13  failing to disclose that Scott Dion was given an undivided twenty percent (20%) collateral

14  interest in Tule Lane to stop a pending foreclosure sale, (6) failing to disclose that Teresa

15  Weddle was given an undivided twenty percent (20%) collateral interest in Tule Lane to stop a

16  pending foreclosure sale, (7) failing to remove all monetary liens of record, including the IRS'

17  monetary lien and the IndyMac DOT; and failing to disclose that the GJZ DOT was fraudulent.

18  In addition, and as a result of the aforementioned liens and encumbrances against Tule Lane

19  that continued to exist at the time of the execution of the Grant Deed, defendants Gallagher and

20  Cross breached the implied covenant to convey merchantable title to Tule Lane to Reyes.

21        238.  Reyes purchased Tule Lane for $390,000.  However, as a result of the Tule

22  Lane Reconveyance, **none** of the sale proceeds went to pay the Indymac DOT.  Instead,

23  $353,523.45 of the sale proceeds went to GJZ Group, $11,700 went to Williamson and

24  Prudential, $11,700 went to Rangel, Cross and Prudential and $10,226.51 went to the IRS to

25  satisfy Gallagher and/or Cross' tax obligations.  Copies of the Tule Lane settlement statement,

26  final distribution report, incoming wire request and outgoing wire request are attached hereto

27  as **Exhibits 97, 98, 99 and 100.**  Plaintiffs are informed and believe that after the

28

BERGQUIST WOOD
McINTOSH SETO LLP

{00010172.1}FNTG.009 v4

1   aforementioned defendants received the proceeds, defendants then transferred some of the

2   proceeds they received to other defendants.

3        239.      After the Tule Lane sale closed and because the Indymac DOT was not paid,

4   OneWest Bank initiated foreclosure proceedings on the Property.  When Reyes learned of the

5   pending foreclosure sale, he made a claim under his title insurance policy to Plaintiff Chicago

6   Title.  Chicago Title has since paid Reyes' claim and is, therefore, subrogated to his rights and

7   is pursuing defendants in that capacity.

8        **The Canyon Road Scheme**

9        240.      Magan Arthur was the owner of a single family residence located at 60 Canyon

10  Road, Fairfax, CA ("Canyon Road").  In 2005, Arthur borrowed $574,000 from the

11  predecessor-in-interest to Deutsche Bank, Residential Mortgage Capital.  The loan was secured

12  by a deed of trust (the "Deutsche DOT") against Canyon Road.  A copy of the recorded

13  Deutsche DOT is attached as **Exhibit 101.**

14       241.      In March 2006, Arthur opened a home equity line of credit with National City

15  Bank that was secured by second deed of trust (the "National City DOT") against Canyon

16  Road.  A copy of the recorded National City DOT is attached as **Exhibit 102.**

17       242.      On January 25, 2010, Regional Trustee Services Corporation ("RTSC")

18  recorded a Notice of Default and Election to Sell Canyon Road relative to the Deutsche DOT

19  (the "Deutsche NOD").  A copy of the recorded Deutsche NOD is attached as **Exhibit 103.**

20       243.      Arthur, in collaboration with defendants AFOG Group and its principal Larsen,

21  responded to the impending foreclosure sale by commencing an ADP whereby defendants

22  executed and recorded various sham liens, forged reconveyances and other fraudulent

23  documents to deceive plaintiff PCD into financing a short sale purchase of Canyon Road as

24  described more fully below.

25       244.      On January 4, 2011, and as part of the ADP, Arthur signed and AFOG and

26  Larsen caused to be recorded against Canyon Road a $679,222 deed of trust (the "AFOG

27  DOT") in favor of defendant AFOG Group.  A copy of the AFOG DOT is attached as **Exhibit**

28  **104.**  When defendants signed and recorded the AFOG DOT, they knew the loan was a sham

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

1  transaction in that no sums were ever lent by AFOG Group to Arthur. Defendants,

2  nevertheless, caused the AFOG DOT to be signed and then recorded to mislead future

3  purchasers and their escrow agents and title insurers, into believing that the AFOG DOT was a

4  legitimate obligation that had to be paid as part of any purchase.

5       245.   On March 11, 2011, RTSC recorded a Notice of Trustee Sale for a foreclosure

6  sale of Canyon Road. A copy of the Notice of Trustee Sale is attached as **Exhibit 105**.

7       246.   On March 18, 2011, defendants, including Arthur and AFOG, caused a forged

8  Notice of Rescission of the Deutsche NOD to be recorded. Defendants were aware that the

9  Notice of Rescission was fraudulent because it was not authorized to be signed or recorded by

10  the maker of the Deutsche NOD. Instead, the Notice of Rescission was executed by Marya

11  Merritt who falsely represented that she was authorized by RTSC to rescind the Deutsche

12  NOD. A copy of the Notice of Rescission is attached as **Exhibit 106.**

13       247.   On March 22, 2011, defendants, including Arthur and AFOG, caused a forged

14  Substitution of Trustee and Deed of Reconveyance to be recorded purportedly reconveying the

15  Deutsche DOT (the "First Canyon Road Reconveyance"). A copy of the First Canyon Road

16  Reconveyance is attached as **Exhibit 107.**

17       248.   Defendants were aware that the First Canyon Road Reconveyance was

18  fraudulent when it was recorded because they knew (1) it was not authorized to be signed or

19  recorded by the holder of the Deutsche DOT and (2) the loan secured by the Deutsche DOT

20  had not been paid in full. Despite the foregoing, defendants caused defendant Silverman to

21  execute the First Canyon Road Reconveyance wherein he falsely represented that he was an

22  authorized representative of MERS and that MERS was reconveying the Deutsche DOT.

23  Defendants caused the First Canyon Road Reconveyance to be recorded with the intent to

24  deceive prospective lenders, such as PCD, and its title insurer, FNTIC, into believing that the

25  Deutsche DOT was no longer an enforceable lien on Canyon Road.

26       249.   Also on March 22, 2011, defendants, including Arthur and AFOG, caused a

27  forged Substitution of Trustee and Deed of Reconveyance to be recorded purportedly

28

BERGQUIST WOOD
McINTOSH SETO

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-41-

1    reconveying the National City DOT (the "Second Canyon Road Reconveyance"). A copy of

2    the Second Canyon Road Reconveyance is attached as **Exhibit 108.**

3        250.    Defendants were aware that the Second Canyon Road Reconveyance was

4    fraudulent when it was recorded because they knew (1) it was not authorized to be signed or

5    recorded by the holder of the National City DOT and (2) the loan secured by the National City

6    DOT had not been paid in full. Despite the foregoing, defendants caused Lavelle to execute

7    the Second Canyon Road Reconveyance wherein he falsely represented that he was an

8    authorized representative of National City and that National City was reconveying the National

9    City DOT. Defendants caused the Second Canyon Road Reconveyance to be recorded with

10   the intent to deceive prospective lenders, such as PCD, and its title insurer, FNTIC, into

11   believing that the Deutsche DOT was no longer an enforceable lien on Canyon Road.

12       251.    On March 28, 2011, and in a further effort to stop the pending foreclosure sale,

13   Arthur transferred a 2% interest in Canyon Road to Scott Dion and another 2% interest in

14   Canyon Road to Theresa Weddle.

15       252.    In May 2011, Arthur entered into an agreement to sell Canyon Road to Prime

16   Capital Resources, LLC ("PCR"). The parties opened an escrow with Defendant CF Escrow

17   and specifically with Dornon for the sale. The sale was an alleged short sale in that even

18   though AFOG purportedly was owed approximately $650,000, it sent escrow a payoff demand

19   stating that it would agree to accept $252,000 to release its lien. The payoff demand was

20   prepared by defendant George Larsen on behalf of AFOG. A copy of the AFOG payoff

21   demand is attached as **Exhibit 109**.

22       253.    In January 2012, the Canyon Road sale closed and Arthur executed and

23   delivered a Grant Deed conveying Canyon Road to PCR. As evidenced by the respective

24   settlement statement and as a result of the First and Second Canyon Road Reconveyances,

25   **none** of the sale proceeds went to pay the Deutsche DOT or National City DOT. Instead, the

26   sale proceeds went to AFOG Group which then transferred certain of the proceeds to

27   defendants, including AFOG's principals George Larsen, Laura Pezzi and Chris Castle. A

28   copy of the Canyon Road settlement statement is attached as **Exhibit 110.**

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-42-

BERGQUIST WOOD
McINTOSH SETO LLP

254.     PCR financed the purchase through a $292,000 loan from PCD that PCR and PCD intended would be secured by a first priority deed of trust (the "PCD DOT") against Canyon Road.  A copy of the PCD DOT is attached as **Exhibit 111**.  PCD relied on the recorded First and Second Canyon Road Reconveyances as being valid reconveyances in making its decision to finance the sale.  PCD would not have financed the Canyon Road Sale had it known the fraudulent circumstances surrounding the First and Second Canyon Road Reconveyances.  As a result of defendants' fraudulent recordation of the First and Second Canyon Road Reconveyances, the PCD DOT is behind the Deutsche DOT and National City DOT.

255.     PCR purchased Canyon Road for $390,000.  However, as a result of the First and Second Canyon Road Reconveyances, **none** of the sale proceeds went to pay the Deutsche or National City DOTs.  Instead, $253,685.94 of the sale proceeds went to AFOG Group and its principals, George Larsen, Laura Pezzi and Chris Castle.  After AFOG received the proceeds, it transferred some or all of the proceeds to other defendants, including Arthur who received 20% of said monies.

256.     After the sale closed, the holder of the Deutsche DOT discovered the fraudulent reconveyance and initiated foreclosure proceedings.  When PCD learned of the pending foreclosure sale, it made a claim under its title insurance policy to Plaintiff FNTIC which had insured the PCD DOT as a first priority deed of trust.  FNTIC has since paid PCD's claim and is, therefore, subrogated to PCD's rights and is pursuing defendants in that capacity.

**The Stone Drive Scheme**

257.     Defendant Joan Hangarter previously owned Stone Drive.  On December 16, 2004, Hangarter borrowed $767,200 from Bank of America, N.A.  The loan was secured by a deed of trust (the "BofA - Stone Drive DOT") against Stone Drive.  A copy of the Stone Drive - BofA DOT is attached as **Exhibit 112**.

258.     On May 8, 2006, Hangarter opened a $100,000 equity line of credit with Citibank that was secured by a deed of trust (the "CITI DOT") against Stone Drive.  A copy of the CITI DOT is attached as **Exhibit 113**.

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-43-

BERGQUIST WOOD
McINTOSH SETO LLP

259. On July 27, 2010, Recontrust Company recorded a Notice of Default and Election to Sell Stone Drive (the "Stone Drive NOS") based on a default on the BofA - Stone Drive DOT. A copy of the Stone Drive NOS is attached hereto as **Exhibit 114**.

260. Hangarter, in collaboration with the other defendants including GJZ Group, Larsen and Castle responded to the impending foreclosure sale by commencing an ADP whereby defendants executed and recorded various sham liens, forged reconveyances and other fraudulent documents to deceive plaintiffs into proceeding with a short sale purchase of Stone Drive as described more fully below.

261. On October 12, 2010, and as part of the ADP, Hangarter signed and caused to be recorded a $950,000 deed of trust (the "GJZ – STONE DRIVE DOT") in favor of defendant GJZ Group. Hangarter and GJZ were aware that the secured transaction was a sham in that no sums were ever lent by GJZ to Hangarter. A copy of the GJZ – STONE DRIVE DOT is attached as **Exhibit 115.** When defendants signed and recorded the GJZ – STONE DRIVE DOT, they knew the loan was a sham transaction in that no sums were ever lent by GJZ Group to Hangarter. Defendants, nevertheless, caused the GJZ – STONE DRIVE DOT to be signed and then recorded to mislead future purchasers and their escrow agents and title insurers, into believing that the deed of trust was a legitmate obligation that had to be paid as part of any purchase.

262. On January 12, 2011, and as part of a further effort to stop the impeding foreclosure sale, Hangarter transferred 2% of Stone Drive to Defendant Scott Dion

263. On February 14, 2011, defendants, including Hangarter, Castle and GJZ, caused a forged Notice of Rescission of the Stone Drive NOS ("Stone Drive – NOR") to be recorded. The Stone Drive - NOR was executed by defendant Castle who falsely represented that he was authorized by Recontrust to rescind the Stone Drive NOS. A copy of the recorded Stone Drive NOR is attached hereto as **Exhibit 116**. When Castle executed the Stone-Drive NOR he was aware that he was not an authorized to do. Nevertheless, he signed the Stone-Drive NOR with the intent to mislead the public, including future potential purchasers, escrow agents and title

1 insurers into believing and relying on the representation that the Stone Drive NOS was no

2 longer enforceable.

3      264.    On February 17, 2011, defendants, including Hangarter, Castle and GJZ, caused

4 a forged Substitution of Trustee and Deed of Reconveyance to be recorded purportedly

5 reconveying the BofA – Stone Drive DOT (the "First Stone Drive Reconveyance"). A copy of

6 the First Stone Drive Reconveyance is attached as **Exhibit 117**.

7      265.    Defendants were aware that the First Stone Drive Reconveyance was fraudulent

8 when it was recorded because they knew (1) it was not authorized to be signed or recorded by

9 the holder of the BofA – Stone Drive DOT and (2) the loan secured by the BofA – Stone Drive

10 DOT had not been paid in full. Despite the foregoing, defendants caused Marya Merritt to

11 execute the First Stone Drive Reconveyance wherein she falsely represented that she was an

12 authorized representative of BAC and that BAC was reconveying the BofA – Stone Drive

13 DOT. Defendants caused the First Stone Drive Reconveyance to be recorded with the intent to

14 deceive prospective buyers, such as Plaintiffs Julian and Alison Massa, into believing that the

15 BofA – Stone Drive DOT was no longer an enforceable lien on Stone Drive.

16      266.    Also on February 17, 2011, defendants, including Hangarter, Castle and GJZ,

17 caused a forged Substitution of Trustee and Deed of Reconveyance to be recorded purportedly

18 reconveying the Citibank DOT (the "Second Stone Drive Reconveyance"). A copy of the

19 Second Stone Drive Reconveyance is attached as **Exhibit 118**.

20      267.    Defendants were aware that the Second Stone Drive Reconveyance was

21 fraudulent when it was recorded because they knew (1) it was not authorized to be signed or

22 recorded by the holder of the Citibank DOT and (2) the loan secured by the Citibank DOT had

23 not been paid in full. Despite the foregoing, defendants caused Lavelle to execute the Second

24 Stone Drive Reconveyance wherein he falsely represented that he was an authorized

25 representative of CitiMortgage and that CitiMortgage was reconveying the Citibank DOT.

26 Defendants caused the Second Stone Drive Reconveyance to be recorded with the intent to

27 deceive prospective buyers, such as Plaintiffs Julian and Alison Massa, into believing that the

28 Citibank DOT was no longer an enforceable lien on Stone Drive.

BERGQUIST WOOD
McINTOSH SETO LLP

{00010172.1}FNTG.009 v4

268. In April 2011, Hangarter entered into an agreement to sell Stone Drive to Prime Capital Resources (the "Hangarter – PCR Sale"). The sale was an alleged short sale in that even through GJZ purportedly was owed $950,000 (and in reality was owed nothing), it sent escrow a payment demand for a fraction of that amount.

269. In February 2011, the Hangarter-PCR Sale closed. On information and belief, some of the sale proceeds went to GJZ with those sums being dividing among all other defendant parties, including a 20% payment to Hangarter.

270. PCR financed the Hangarter-PCR Sale through a loan from Pilo, LLC and Robert and Marsha Lo. In June 2011, PCR transferred the property to Pilo, LLC and Robert and Marsha Lo in lieu of foreclosure. A copy of the Deed in Lieu of Foreclosure is attached hereto as **Exhibit 119** and incorporated herein by this reference.

271. In the spring of 2011, Plaintiffs Julian and Alison Massa purchased Stone Drive from Pilo and Robert and Marsha Lo for $641,000. A copy of the California Residential Purchase Agreement is attached hereto as **Exhibit 129** and incorporated herein by this reference (the "Stone Drive Purchase Agreement"). The Massas relied on the recorded First and Second Stone Drive Reconveyances being valid in making their decision to purchase Stone Drive. The Massas would not have purchased Stone Drive had they known the fraudulent circumstances surrounding the First and Second Canyon Road Reconveyances. As a result of defendants' fraudulent recordation of the First and Second Stone Drive Reconveyances, the Massas have been damaged in an amount to be determined at trial but no less than the purchase price for Stone Drive.

**The Via Divertirse Scheme**

272. Guillotte previously owned Via Divertirse. In March 2006, Guillotte borrowed $1,000,000 from Duxford Financial, Inc., that was secured by a deed of trust (the "Duxford DOT") against Via Divertirse. A copy of the Duxford DOT is attached hereto as **Exhibit 120** and incorporated by this reference. In January 2007, Guillotte borrowed $150,000 from Delta Community Credit Union that was secured by a deed of trust (the "Delta DOT") against Via

BERGQUIST WOOD
McINTOSH SETO LLP

1  Divertirse.  A copy of the Delta DOT is attached hereto as **Exhibit 121** and incorporated by

2  this reference.

3      273.    In the spring of 2010, Guillotte began falling behind on his mortgage with

4  Duxford Financial.  Guillotte, in collaboration with certain of the other defendants in this

5  action, responded to his financial difficulties by commencing an ADP whereby defendants

6  executed, notarized and recorded a sham lien, forged reconveyance and other fraudulent

7  documents to deceive plaintiff into proceeding with a "short sale" purchase of Via Divertirse as

8  described more fully below.

9      274.    On April 27, 2010, and as part of the ADP, Guillotte signed and caused to be

10  recorded a $1,200,000 deed of trust (the "Via Divertirse - Oreplex DOT") in favor of defendant

11  Oreplex.  When Guillotte signed the Via Divertirse - Oreplex DOT, he knew the underlying

12  loan was a sham transaction in that no sums were ever lent by Oreplex to Guillotte.  A copy of

13  the Oreplex DOT is attached as **Exhibit 122** and incorporated by this reference.

14      275.    In April 2010, a Notice of Default and Election to Sell Under the Duxford DOT

15  was recorded on Via Divertirse (the "Duxford NOD").  A copy of the Duxford NOD is

16  attached hereto as **Exhibit 123** and incorporated by this reference.  In May 2010, and in

17  furtherance of the ADP, defendants, including Guillotte, Castle and Oreplex, caused a forged

18  Notice of Rescission ("Duxford NOR") of the Duxford NOD to be recorded on Via Divertirse.

19  Defendants were aware that the Duxford NOR was fraudulent because it was not authorized to

20  be signed or recorded by the maker of the Duxford NOD.  Instead, it was executed by

21  defendants' agent who falsely represented that he was an authorized representative of

22  Northwest Trustee Services, Inc.  A copy of the Duxford NOR is attached hereto as **Exhibit

23  124** and incorporated by this reference.

24      276.    In May 2010, and in furtherance of the ADP, defendants, including Guillotte,

25  Oreplex, Castle and Smith, caused a fraudulent Substitution of Trustee and Deed of

26  Reconveyance (the "First Via Divertirse Reconveyance") to be recorded purportedly

27  reconveying the Duxford DOT to Guillotte.  Defendants were aware that the First Via

28  Divertirse Reconveyance was fraudulent when recorded because they knew (1) it was not

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-47-

BERGQUIST WOOD
McINTOSH SETO

1   authorized to be signed or recorded by the beneficiary of the Duxford DOT, and (2) the loan

2   secured by the Duxford DOT had not been paid.  Despite the foregoing, defendants caused

3   Carl Wallace to execute the Duxford Reconveyance wherein he falsely represented that he was

4   an "Authorized Representative" for JP Morgan Chase Bank, N.A.  A copy of the recorded First

5   Via Divertirse Reconveyance is attached hereto as **Exhibit 125** and incorporated by this

6   reference.

7        277.    On August 25, 2011 and in furtherance of the ADP, defendants, including

8   Oreplex, Castle and Oreplex, caused a fraudulent Full Reconveyance (the "Second Via

9   Divertirse Reconveyance") to be recorded purportedly reconveying the Duxford DOT to

10   Guillotte.  Defendants were aware that the Second Via Divertirse Reconveyance was

11   fraudulent when recorded because they knew (1) it was not authorized to be signed or recorded

12   by the beneficiary of the Duxford DOT; and (2) the loan secured by the Duxford DOT had not

13   been paid.  Despite the foregoing, defendants caused W. Jerome Myers to execute the Second

14   Via Divertirse Reconveyance wherein he falsely represented that he was an "Authorized

15   Representative" for JP Morgan Chase Bank, N.A.  A copy of the recorded Second Via

16   Divertirse Reconveyance is attached hereto as **Exhibit 126** and incorporated by reference.

17        278.    On August 26, 2011 and in furtherance of the ADP, defendants, including

18   Oreplex, Castle and Oreplex, caused a fraudulent Substitution of Trustee and Deed of

19   Reconveyance (the "Third Via Divertirse Reconveyance") to be recorded purportedly

20   reconveying the Delta DOT to Guillotte.  Defendants were aware that the Third Via Divertirse

21   Reconveyance was fraudulent when recorded because they knew (1) it was not authorized to be

22   signed or recorded by the beneficiary of the Delta DOT; and (2) the loan secured by the Delta

23   DOT had not been paid.  Despite the foregoing, defendants caused Brooks Gregg to execute

24   the Third Via Divertirse Reconveyance wherein he falsely represented that he was an

25   "Authorized Representative" for Delta Community Credit Union.  A copy of the recorded

26   Third Via Divertirse Reconveyance is attached hereto as **Exhibit 127** and incorporated by

27   reference.

28

{00010172.1}FNTG.009 v4

279.     Defendants caused the First, Second and  Third Via Divertirse Reconveyances to be recorded with the intent to deceive prospective buyers, such as Credit One, LLC and its title insurer into believing that the Duxford and Delta DOTs were no longer enforceable liens on Via Divertirse. Each of the fraudulent reconveyances falsely state that the recording is being requested by the subject beneficiary and that after it is recorded it should be sent to defendant Guillotte.

280.     In October 2011, Guillotte "short sold" Via Divertirse to Gabhart Real Estate Opportunity Fund Series 4, LLC ("Gabhart").  As part of that sale, defendant Castle and Oreplex submitted a short sale approval letter stating that Oreplex would accept $616,000 to release its lien on Via Divertirse.  A copy of the Oreplex payoff demand is attached hereto as **Exhibit 128**.   None of the sale proceeds from the sale to Gabhart went to pay the Duxford or Delta DOTs.  Instead, the sale proceeds went to the defendants including Guillotte, Oreplex, Chris Castle and Todd Smith.

281.     In the spring of 2011, Credit One, LLC purchased Via Divertirse from Gabhart for $935,000.  Credit One relied on the recorded First and Second Via Divertirse Reconveyances being valid in making their decision to purchase Via Divertirse.  Credit One would not have purchased Via Divertirse had they known the fraudulent circumstances surrounding the First and Second Via Divertirse Reconveyances.  As a result of defendants' fraudulent recordation of the First and Second Via Divertirse Reconveyances and the ADP generally, Credit One has been damaged in an amount to be determined at trial but no less than the purchase price for Divertirse plus interest and costs.

///
///
///
///
///
///
///

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO

**FIRST CAUSE OF ACTION**

**(Fraud)**

**(Against defendants Castle, individually and as Trustee of the J. Christopher Castle Irrevocable Trust, Karakasevic, Jon Sanders, Alicia Sanders, Laura Pezzi, Shon-te-east-a, Walks With Spirit, John-Michael Di Chiara, Financial Recovery Group, Golden Hills Trust, Oreplex International, Remus Kirkpatrick aka Al Kirkpatrick, CCTT Group, Piscatelli, Wallace, Hanson, Jennifer Pezzi, Winter, Lange, Daniel Young, Kelly Young, Jason Young, Liberta, Smith, Trites, CF Escrow, Dornon, BRE, TTR, GJZ Group, William Lavelle, Patrick Gallagher, Cathy Cross, Gary Silverman, George Larsen, Magan Arthur, AFOG Group, Joan Hangarter. Curtis Guillotte and Does 2-10)**

282.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 281, inclusive.

283.    As set forth more fully above, defendants have engaged in and/or conspired to engage in the Brown Street, Dunlay Drive, Loch Dane, Shannon Bay, Roaring Camp, Northcrest, Valley West Almondwood and, Green Garden and Tule Lane, Canyon Road, Stone Drive and Via Divertirse Schemes.

284.    Defendants committed or conspired with the other defendants to commit the aforementioned fraudulent acts and make the aforementioned misrepresentations and omissions with the intent to defraud plaintiffs.

285.    As to defendants' misrepresentations and omissions, they were material because they contained information upon which plaintiffs relied or would have relied to decide whether to purchase the subject properties. Plaintiffs justifiably relied on the misrepresentations and omissions.

286.    Plaintiffs have been damaged by defendants' fraud because their properties are either being foreclosed on or have been foreclosed on. Plaintiffs' damages are in an amount according to proof, but believed to exceed $4,000,000.

///

BERGQUIST WOOD
McINTOSH SETO

287. Defendants' conduct was fraudulent and malicious, thus entitling plaintiffs to punitive or exemplary damages in an amount sufficient to deter defendants from such wrongful conduct in the future.

288. On information and belief, defendants have partially dissipated or hidden, and will continue to dissipate and hide plaintiffs' purchase monies unless injunctive relief is granted by the court. Plaintiffs have a legitimate interest that equitably should be protected, there being no adequate remedy at law; irreparable harm is immediately threatened; plaintiffs have a likelihood of success on the merits, and the balance of hardships and the public interest weigh decidedly in plaintiffs' favor.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION

### (Conspiracy to Defraud)

**(Against defendants Castle, individually and as Trustee of the J. Christopher Castle Irrevocable Trust, Karakasevic, Jon Sanders, Alicia Sanders, Laura Pezzi, Shon-te-east-a, Walks With Spirit, John-Michael Di Chiara, Financial Recovery Group, Golden Hills Trust, Oreplex International, Remus Kirkpatrick aka Al Kirkpatrick, CCTT Group, Piscatelli, Wallace, Hanson, Jennifer Pezzi, Winter, Lange, Daniel Young, Kelly Young, Jason Young, Liberta, Smith, Trites, CF Escrow, Dornon, BRE, TTR, GJZ Group, William Lavelle, Patrick Gallagher, Cathy Cross, Gary Silverman, George Larsen, Magan Arthur, AFOG Group, Joan Hangarter, Curtis Guillotte and Does 11-20)**

289. Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 288, inclusive.

290. Defendants, and each of them, agreed to and operated a common plan to defraud plaintiffs and their title insurers out of millions of dollars through the above-described series of phantom loans, phony short sales and fraudulent reconveyances of deeds of trust.

291. The wrongful acts that defendants did in furtherance of their common plan to defraud plaintiffs are as follows. Castle, Karakasevic, Laura Pezzi, John Sanders, Alicia Sanders, Daniel Young, Kelly Young, Patrick Gallagher, Cathy Cross, Magan Arthur, Joan

BERGQUIST WOOD
McINTOSH SETO LLP

{00010172.1}FNTG.009 v4

1 Hangarter and Curtis Guillotte participated in the conspiracy by, among other things, selling or
2 causing to be sold the properties under the guise that they were free of encumbrances and
3 recording fraudulent documents.  Defendants Piscatelli, Wallace, Hanson, Laura Pezzi,
4 Jennifer Pezzi, Winter, Lange, and Jason Young, William Lavelle and Gary Silverman
5 participated in the conspiracy by among other things, executing and recording fraudulent
6 reconveyances and other documents.  Defendants Liberta, Smith, Laura Pezzi, Henderson and
7 Trites participated in the conspiracy by notarizing fraudulent reconveyances to mislead the
8 plaintiff, their escrow agents and title insurers into believing the reconveyances were valid so
9 the lender would not receive any sale proceeds.  Defendants Golden Hills, Remus Kirkpatrick,
10 Laura Pezzi, Shon-te-east-a, Financial Recovery Group, John-Michael Di Chiara, Oreplex,
11 Castle and CCTT Group, GJZ Group, George Larsen, Trites and AFOG Group participated in
12 the conspiracy by causing fraudulent liens to attach to the properties, accepting funds for
13 phantom obligations, luring victims into the scheme through a conjured short sale program and
14 by otherwise planning the schemes.  Defendants CF Escrow and Dornon participated in the
15 conspiracy by providing escrow service to close the fraudulent short sales.  Defendants BRE,
16 TTR, and Trites participated in the conspiracy by acting as real estate brokers for the
17 fraudulent short sales and intentionally concealing from the buyers that the sales were
18 fraudulent because (1) there were sham liens on the property and (2) the recorded
19 reconveyances were forged.  Defendants BRE, TTR, and Trites concealed the aforementioned
20 facts to ensure that the sales closed and that defendants received the sale proceeds rather than
21 the legitimate lien holders.

22      292.   Plaintiffs have been damaged by defendants' agreement to and operation of
23 their common plan because plaintiffs' properties are either being foreclosed on or has been
24 foreclosed on.  Plaintiffs' damages are in an amount according to proof, but believed to exceed
25 $4,000,000.

26      293.   Defendants' conduct was fraudulent and malicious, thus entitling plaintiffs to
27 punitive or exemplary damages in an amount sufficient to deter defendants from such wrongful
28 conduct in the future.

BERGQUIST WOOD
McINTOSH SETO LLP

294.     On information and belief, defendants have partially dissipated or hidden, and will continue to dissipate and hide, plaintiffs' purchase monies unless injunctive relief is granted by the court.  Plaintiffs have a legitimate interest that equitably should be protected, there being no adequate remedy at law; irreparable harm is immediately threatened; plaintiffs have a likelihood of success on the merits, and the balance of hardships and the public interest weigh decidedly in plaintiffs favor.

WHEREFORE, plaintiffs pray for judgment as set forth below.

### THIRD CAUSE OF ACTION

### (Racketeering Influenced and Corrupt Organizations

### Act 18 U.S.C. section 1962(c) - Racketeering)

**(Against defendants Castle, individually and as Trustee of the J. Christopher Castle Irrevocable Trust, Karakasevic, Jon Sanders, Alicia Sanders, Laura Pezzi, Shon-te-east-a, Walks With Spirit, John-Michael Di Chiara, Financial Recovery Group, Golden Hills Trust, Oreplex International, Remus Kirkpatrick aka Al Kirkpatrick, CCTT Group, Piscatelli, Wallace, Hanson, Jennifer Pezzi, Winter, Daniel Young, Kelly Young, Liberta, Smith, Henderson, Trites, CF Escrow, Dornon, BRE, TTR, CJT Financial Group, GJZ Group, AFOG Group, CPC Mission Trust, GJZ Group, William Lavelle, Gary Silverman, George Larsen, Curtis Guillotte and Does 21-30)**

295.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 294, inclusive.

296.     Defendants have violated 18 U.S.C. Section 1962(c) because they have engaged in the conduct of an enterprise through a pattern of racketeering activity.

297.     Defendants are persons within the meaning of 18 U.S.C. Section 1961(3).

298.     Defendants were part of an association-in-fact that engaged in the business of real estate sales, real estate leasing, mortgage loans, notarizing real property documents, performing escrow services, performing real estate brokerage services and other activities affecting interstate commerce.  Although the association-in-fact conducted some legitimate activities such as rental activity, the primary purpose of the association was to defraud

{00010172.1}FNTG.009 v4

1   plaintiffs through a series of phantom loans, fraudulent reconveyances phony short sales and

2   subsequent re-sales to plaintiffs.  Defendants worked together as members of the association-

3   in-fact to achieve the association's purpose of defrauding plaintiffs.  Examples of such

4   cooperation include falsifying loan transactions, executing fraudulent reconveyances,

5   concealing liens, wire transferring funds for phantom obligations, notarizing fictitious

6   reconveyances signed by individuals without authority and performing escrow services for

7   sham short sales.

8          299.    The association-in-fact has been operating for a period of almost two years to

9   allow defendants to pursue their fraudulent scheme and is continuing to operate.  The

10  association-in-fact constitutes an enterprise under 18 U.S.C. Section 1961.

11         300.    Each defendant managed or participated in the conduct of the enterprise.  For

12  example, defendants Castle, Karakasevic, Laura Pezzi, Jon Sanders, Alicia Sanders, Daniel

13  Young, Kelly Young and Curtis Guillotte participated and managed the enterprise by, among

14  other things, selling or causing to be sold the properties under the guise that they were free of

15  encumbrances and recording fraudulent documents.  Defendants Piscatelli, Wallace, Hanson,

16  Smith, Trites, Jennifer Pezzi, Winter, Daniel Young, William Lavelle and Gary Silverman

17  participated in the enterprise by, among other things, executing and recording fraudulent

18  reconveyances and other documents.  Defendants Liberta, Smith, Laura Pezzi and Trites

19  participated in the enterprise by notarizing forged reconveyances with the intent to mislead the

20  plaintiffs, their escrow agents and title insurers into believing the legitimate liens had been

21  reconveyed.  Defendants Golden Hills, Remus Kirkpatrick, Shon-te-east-a, Financial Recovery

22  Group, John-Michael Di Chiara, Oreplex, Castle, CCTT Group, CJT Financial Group, GJZ

23  Group, AFOG Group, and CPC Mission Trust, George Larsen and Trites participated and

24  managed the enterprise by causing fraudulent liens to attach to the properties, accepting funds

25  for phantom obligations, luring victims into the scheme through a conjured short sale program

26  and by otherwise planning the schemes.   Defendants CF Escrow and Dornon participated in

27  and managed the enterprises by providing escrow service to close the fraudulent short sales.

28

1  Defendants BRE, TTR and Trites participated and managed the enterprise by acting as real

2  estate brokers for the fraudulent short sales.

3        301.    The enterprise's activities constitute a pattern because defendants' actions had

4  the same purpose, types of victims and methods of commission, which was to defraud home

5  buyers and sellers by through fraudulent sales and short sales.  Further, the enterprise's pattern

6  of fraudulent activity has continued for a period of almost two years and is ongoing.

7        302.    Defendants' acts constitute racketeering within the meaning of 18 U.S.C.

8  § 1961(1)(B) because they include bank fraud, wire fraud and mail fraud.

9        303.    Defendants committed bank fraud by executing the fraudulent reconveyances

10  and diverting and converting sale proceeds from fraudulent sales and short sales.  Defendants

11  committed mail fraud by sending documents and causing to be sent documents through the

12  U.S. mail in furtherance of the fraud.

13        304.    Defendants committed wire fraud by causing plaintiffs and their banks to wire

14  transfer funds in interstate commerce that were diverted and converted by defendants.

15  Moreover, information concerning these fraudulent transactions was sent by electronic

16  transmission through interstate commerce.

17        305.    Defendants' conduct has injured and damaged plaintiffs in numerous ways,

18  including that their properties either will or have been sold in foreclosure.  Plaintiffs also have

19  incurred attorneys' fees to seek relief from these injuries.  Finally, defendants' conduct has

20  harmed the general public and threatens continued harm.

21        WHEREFORE, plaintiffs pray for judgment as set forth below.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

{00010172.1}FNTG.009 v4

FOURTH AMENDED COMPLAINT
-55-

BERGQUIST WOOD
McINTOSH SETO LLP

## FOURTH CAUSE OF ACTION

### (Racketeering Influenced and Corrupt Organizations

### Act 18 U.S.C. Section 1962(d) - Conspiracy)

**Against defendants Castle, individually and as Trustee of the J. Christopher Castle Irrevocable Trust, Karakasevic, Jon Sanders, Alicia Sanders, Laura Pezzi, Shon-te-east-a, Walks With Spirit, John-Michael Di Chiara, Financial Recovery Group, Golden Hills Trust, Oreplex International, Remus Kirkpatrick aka Al Kirkpatrick, CCTT Group, Piscatelli, Wallace, Hanson, Jennifer Pezzi, Winter, Daniel Young, Kelly Young, Liberta, Smith, Trites, CF Escrow, Dornon, BRE, TTR, CJT Financial Group, GJZ Group, AFOG Group, CPC Mission Trust, GJZ Group, William Lavelle, Gary Silverman, George Larsen, Curtis Guillotte and Does 31-40)**

306.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 305, inclusive.

307.    Defendants are persons within the meaning of 18 U.S.C. Section 1961(3).

308.    Defendants have violated 18 U.S.C. § 1962(d) because they have agreed to manage, conduct or participate in the affairs of an enterprise through a pattern of racketeering activity, or agreed to assist or profit from such conduct or participation. In addition, the defendants knew their conduct or the conduct of their co-conspirators constituted a pattern of racketeering activity.

309.    Each conspiring defendant knew their own and the other defendants' predicate acts were part of a pattern of racketeering activity because of the similarity and frequency of the events in the scheme.

310.    Defendants' conduct has injured and damaged plaintiffs in numerous ways, including that their properties either will or have been sold in foreclosure. Plaintiffs also have incurred attorneys' fees to seek relief from these injuries. Finally, defendants' conduct has harmed the general public and threatens continued harm.

WHEREFORE, plaintiffs pray for judgment as set forth below.

///

{00010172.1}FNTG.009 v4

## FIFTH CAUSE OF ACTION

### (Breach of Contract)

**(Against defendants Castle, as Trustee of the J. Christopher Castle Irrevocable Trust, Jon Sanders, Alicia Sanders, Altus Equity, Kevin Keith, Christy Keith, Fahed Eweis, Nadia Eweis, Crawford and Shon-te-east-a, Patrick Gallagher and Cathy Cross**

311.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 310, inclusive.

312.    In December 2009, plaintiffs Halihan and defendant James C. Castle, as Trustee of the J. Christopher Castle Irrevocable Trust, entered into the Brown Street Purchase Agreement for purposes of buying and selling, respectively, Brown Street. See, **Exhibit 13**.

313.    On October 21, 2010, plaintiff Sung and defendants Jon and Alicia Sanders entered into the Dunlay Drive Purchase Agreement for purposes of buying and selling, respectively, Dunlay Drive. See, **Exhibit 23**.

314.    On September 13, 2010, plaintiffs Eric and Cindy Andersen and defendant Altus Equity entered into the Shannon Bay Purchase Agreement for purposes of buying and selling, respectively, Shannon Bay for $190,000. See, **Exhibit 42**.

315.    In February 2011, Richard W. Heinz, as trustee of the Richard W. Heinz Living Trust, and defendants Kevin and Christy Keith entered into the Roaring Camp Purchase Agreement for purposes of buying and selling, respectively, Roaring Camp for $91,000. See, **Exhibit 49**.

316.    In April 2011, plaintiff Hanna and defendants Fahed and Nadia Eweis entered into the Valley West Purchase Agreement for purposes of buying and selling, respectively, Valley West for $191,500.

317.    In January 2011, plaintiff Phuong and defendant Randall Crawford entered into the Almondwood Purchase Agreement for purposes of buying and selling, respectively, Almondwood for $77,500. See, **Exhibit 72**.

///

BERGQUIST WOOD
McINTOSH SETO LLP

{00010172.1}FNTG.009 v4

318.     In December 2010, plaintiffs Crichton and Janet Friedly and defendant Shon-te-east-a entered into the Green Garden Purchase Agreement for purposes of buying and selling, respectively, Green Garden for $127,500.

319.     In August 2011, Reyes and defendants Patrick Gallagher and Cathy Cross entered into the Tule Lane Purchase Agreement for purposes of buying and selling, respectively, Tule Lane for $390,000.  See **Exhibit 96**.

320.     Plaintiffs Halihan, the Phuong and the Friedlys, and Chicago Title (as subrogee to the Sungs, Hanna, the Andersens and Reyes), (the "Purchasing Plaintiffs")  have performed all of the conditions, covenants and promises required to be performed by them pursuant to their respective purchase agreements and more specifically, the Brown Street Purchase Agreement, Dunlay Drive Purchase Agreement, Shannon Bay Purchase Agreement, Roaring Camp Purchase Agreement, Valley West Purchase Agreement, Almondwood Purchase Agreement, Green Garden , and Tule Lane Purchase Agreement.

321.     Defendants James C. Castle, as Trustee of the J. Christopher Castle Irrevocable Trust, Jon and Alicia Sanders, Altus Equity, Kevin and Christy Keith, Fahed and Nadia Eweis, Randall Crawford,  and Shon-te-east-a, Patrick Gallagher, Cathy Cross, (the "Selling Defendants") breached the respective purchase agreements by, among other things, failing to disclose the ongoing encumbrances against the properties suffered by the Selling Defendants and failing to tender the properties to the Purchasing Plaintiffs free of such encumbrances.  The specific breaches by the Selling Defendants are more specifically set forth in **paragraphs 106, 119, 149, 160, 188, 201, 213, and 237,** *supra*.

322.     As a direct and proximate result of Selling Defendants' breaches of their respective purchase agreements, plaintiffs have been damaged because their properties are either being foreclosed on or have been foreclosed on, or the fair market value of the properties are less than what plaintiffs paid for the properties.  Said damages are in an amount according to proof but believed to exceed $1,700,000, which is the total purchase price paid by the Purchasing Plaintiffs to the Selling Defendants for the properties.

WHEREFORE, plaintiffs pray for judgment as set forth below.

{00010172.1}FNTG.009 v4

## SIXTH CAUSE OF ACTION

### (Breach of Implied Covenant to Convey Merchantable Title)

### (Against defendants Castle, as Trustee of the J. Christopher Castle Irrevocable Trust, Karakasevic, Jon Sanders, Alicia Sanders, Altus Equity, Kevin Keith, Christy Keith, Fahed Eweis, Nadia Eweis, Crawford and, Shon-te-east-a, Patrick Gallagher and Cathy Cross)

323.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 322, inclusive.

324.    The Purchasing Plaintiffs and Selling Defendants entered into the following purchase and sale agreements: Brown Street Purchase Agreement; Dunlay Drive Purchase Agreement; Shannon Bay Purchase Agreement; Roaring Camp Purchase Agreement; Valley West Purchase Agreement; Almondwood Purchase Agreement, Green Garden Purchase Agreement, and Tule Lane Purchase Agreement (the "Purchase Agreements").

325.    Pursuant to the Purchase Agreements, the Selling Defendants executed and delivered grant deeds to the Purchasing Plaintiffs for Brown Street, Dunlay Drive, Shannon Bay, Roaring Camp, Valley West, Almondwood, Green Garden, and Tule Lane.

326.    Under California law, a seller of real property is impliedly required to convey merchantable title to the buyer of real property and covenants that the real property granted was at the time of execution of the deed free and clear of any encumbrances done, made or suffered by defendant or any person claiming under him/her/it.

327.    By executing the Grant Deeds, the Selling Defendants implicitly covenanted that they had and would be delivering to the Purchasing Plaintiffs merchantable title to the properties.  In addition, the Selling Defendants covenanted that the properties granted to the Purchasing Plaintiffs were at the time of execution of the Grant Deeds free from any encumbrance done, made or suffered by defendant, or any person claiming under him/her/it.

328.    At the time of the execution of the Grant Deeds for the properties, the properties were encumbered by deeds of trust that were either legally valid, but were fraudulently reconveyed, or were subject to fraudulent deeds of trust and sham liens.

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

329.    The Selling Defendants breached the implied covenant to convey merchantable title by, among other things, failing to tender the properties free of encumbrances and failing to disclose the ongoing encumbrances against the properties suffered by the Selling Defendants. The Selling Defendants' breaches of the implied covenant and the encumbrances on the properties are more specifically set forth in paragraphs 91 through 239, *supra*.

330.    As a direct and proximate result of the existence of the encumbrances on the properties and the Selling Defendants' breaches of the implied covenant to convey merchantable title, the Purchasing Plaintiffs have been damaged because their properties are either being foreclosed on or have been foreclosed on or the fair market value of the properties are substantially less than what the Purchasing Plaintiffs paid for the properties.  Said damages are in an amount according to proof but believed to exceed $1,700,000.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## SEVENTH CAUSE OF ACTION

### (Negligence)

**(Against defendants Dennis Young, Kelly Young, David Thompson, Melissa Thompson, Donald Porto, Patricia Porto, Jon Sanders, Alicia Sanders, Kevin Keith, Christy Keith, Fahed Eweis, Nadia Eweis, Randall Crawford, Patrick Gallagher, Cathy Cross, Magan Arthur, Joan Hangarter and Curtis Guillotte)**

331.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 330, inclusive.

332.    When defendants sold their properties, they had a duty to either cause the liens that they suffered on their property to be paid or to disclose to their buyer or any subsequent buyer that those liens remained outstanding.  Defendants further had a duty to plaintiffs not to allow defendants such as Golden Hills Trust, Remus Kirkpatrick, Al Kirkpatrick, CCTT Group, Oreplex International, Castle and, Laura Pezzi, GJZ Group and AFOG Group to record bogus deeds of trust against their property, allow the fraudulent reconveyances to be executed and recorded and to allow the proceeds from any sale to pay the sham liens.

1    333.    Defendants breached their duty to plaintiffs by allowing the bogus liens to be

2    recorded and paid and not the legitimate liens.

3    334.    As a direct and proximate result of defendants' breach, plaintiffs have been

4    damaged because their properties are either being foreclosed on or have been foreclosed on.

5    Said damages are in an amount according to proof but believed to exceed $4,000,000.

6    335.    Defendants breached each of the above-described duties by (1) failing to pay the

7    liens that they suffered on their property or failing to disclose to their buyer or any subsequent

8    buyer that those liens remained outstanding, (2) allowing defendants such as Golden Hills

9    Trust, Remus Kirkpatrick, Al Kirkpatrick, CCTT Group, Oreplex International, Castle, Laura

10   Pezzi, GJZ Group and AFOG Group to record bogus deeds of trust against their property, (3)

11   causing or  allowing the fraudulent reconveyances to be executed and recorded and (4)

12   allowing the proceeds from the sale of their respective properties to pay the sham liens.

13   336.    Plaintiffs relied on the implicit representation that the reconveyances were valid

14   when recorded when they either purchased the subject properties or financed said purchase.

15   WHEREFORE, plaintiffs pray for judgment as set forth below.

16   ## EIGHTH CAUSE OF ACTION

17   ### (Negligent Supervision)

18   ### (Against CF ESCROW, INC.)

19   337.    Plaintiffs reallege and incorporate herein by reference the allegations contained

20   in paragraphs 1 through 336, inclusive.

21   338.    On information and belief, defendant CF Escrow knew, or in the exercise of

22   reasonable diligence should have known, that defendant Dornon was neither qualified,

23   authorized nor able to provide the escrow services she provided herein, including those

24   services related to Dunlay Drive, Roaring Camp and Almondwood.  CF Escrow further knew

25   or should have known that an undue risk to persons such as Plaintiffs would exist because of

26   Dornon's lack of authority and ability unless defendant CF Escrow adequately supervised her.

27   ///

28

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

339.    Notwithstanding the knowledge that Dornon was neither qualified, authorized nor able to provide escrow services alleged herein, CF Escrow did not adequately supervise Dornon in her performance of said services.

340.    CF Escrow's failure to adequately supervise defendant Dornon was the proximate cause of plaintiffs' injury, as had defendant CF Escrow adequately supervised Dornon, it would have prohibited defendant from closing the aforementioned sales.

341.    On information and belief, plaintiffs allege that defendant Michelle Dornon's conduct was oppressive, fraudulent and malicious, thereby entitling plaintiffs to punitive or exemplary damages in an amount sufficient to deter defendants from such wrongful conduct in the future.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## NINTH CAUSE OF ACTION

**(Breach of the Duty to Be Honest and Truthful- Violation of B&P Code Sections 10152 and 10176 and Civil Code §2079, *et seq.*)**

**(Against Prudential California Realty)**

342.    Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 341, inclusive.

343.    On information and belief, plaintiff alleges that prior to the close of escrow and/or at some time prior to the execution of the Tule Lane Purchase Agreement and continuing through the escrow period, Prudential California Realty, through its agents, became aware of certain conditions of Tule Lane as described herein, and more specifically, those alleged in paragraphs 220 through 244, *supra*, including, the ADP, the liens recorded against Tule Lane and the numerous grant deeds transferring interests in Tule Lane to individuals other than the sellers of Tule Lane, defendants Gallagher and Cross.

344.    On information and belief, plaintiff alleges that Prudential California Realty breached its duty to Plaintiff as subrogee to Reyes to be honest and truthful, in violation of California law, including but not limited to Business and Professions Code sections 10152 and 10176 and Civil Code sections 2079, et seq., when its agents failed to disclose to Reyes the

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

1   existence of the conditions described hereinabove in paragraphs 215 through 239, *supra*,

2   including but not limited to the following: failing to disclose the ADP, failing to disclose that

3   the Indymac DOT was valid and enforceable; failing to disclose that the Tule Lane

4   Reconveyance was fraudulent because the underlying loan had not been fully repaid; failing to

5   disclose that no sums were ever lent to Gallagher and/or Cross by GJZ; failing to disclose that

6   Scott Dion owned an undivided twenty percent (20%) collateral interest in Tule Lane; failing

7   to disclose that Teresa Weddle owned an undivided twenty percent (20%) collateral interest in

8   Tule Lane; and failing to disclose that the GJZ DOT was fraudulent.

9        345.    As a result of Prudential California Realty's breaches of its duty to be honest

10   and truthful with Reyes, Reyes entered into the Tule Lane Purchase Agreement and completed

11   the purchase of Tule Lane and Chicago Title as subrogee to Reyes has been damaged in an

12   amount according to proof at trial but believed to exceed $400,000, together with interest at the

13   maximum legal rate per annum from the date the damages accrued, until paid.

14        WHEREFORE, plaintiff prays for judgment as set forth below.

15   **TENTH CAUSE OF ACTION**

16   **(Negligence)**

17   **(Against Cathy Cross and Prudential California Realty)**

18        346.    Plaintiffs reallege and incorporate herein by reference the allegations contained

19   in paragraphs 1 through 345, inclusive.

20        347.    On information and belief, Plaintiff alleges that defendants Cross and Prudential

21   California Realty are real estate agents and/or brokers duly licensed by the State of California

22   and were conducting business in the State of California.

23        348.    Cross and Prudential California Realty as the agents and/or brokers in the Tule

24   Lane sale owed Reyes a duty to act with due care.

25        349.    On information and belief, Plaintiff alleges that at all times mentioned herein,

26   Cross and Prudential California Realty breached their duty to exercise reasonable skill and care

27   in performing their duties, in that defendants failed to disclose to Reyes certain conditions of

28   Tule Lane as described herein in paragraphs 215 through 239, *supra*, including but not limited

{00010172.1}FNTG.009 v4

BERGQUIST WOOD
McINTOSH SETO LLP

1   to the following: Failing to disclose the ADP, Failing to disclose that the Indymac DOT was

2   valid and enforceable; Failing to disclose that the Tule Lane Reconveyance was fraudulent

3   because the underlying loan had not been fully repaid; Failing to disclose that no sums were

4   ever lent to Gallagher and/or Cross by GJZ; Failing to disclose that Scott Dion owned an

5   undivided twenty percent (20%) collateral interest in Tule Lane; Failing to disclose that Teresa

6   Weddle owned an undivided twenty percent (20%) collateral interest in Tule Lane; and Failing

7   to disclose that the GJZ DOT was fraudulent.

8        350.   As a direct and proximate result of said breaches of Cross and Prudential

9   California Realty of their respective duties as alleged herein, plaintiff Reyes entered into the

10  Tule Lane Purchase Agreement and completed the purchase of Tule Lane and has been

11  damaged in an amount according to proof at trial but believed to exceed $400,000, together

12  with interest at the maximum legal rate per annum from the date the damages accrued, until

13  paid.

14        WHEREFORE, plaintiffs pray for judgment as set forth below.

15                    ELEVENTH CAUSE OF ACTION

16                      (Breach of Fiduciary Duty)

17          (Aagainst Cross, Rangel and Prudential California Realty)

18        351.   Plaintiff realleges and incorporates herein by reference the allegations contained

19  in paragraphs 1 through 350, inclusive.

20        352.   On information and belief, Plaintiff alleges that defendants Cross, Rangel and

21  Prudential California Realty are real estate agents and/or brokers duly licensed by the State of

22  California and were conducting business in the State of California.

23        353.   In or about July or August 2011, Reyes employed defendants Cross, Rangel and

24  Prudential California Realty by an oral agreement to act as Reyes' agent to purchase Tule

25  Lane. As Reyes' agent, defendants Cross, Rangel and Prudential California Realty owed to

26  plaintiff Reyes a fiduciary duty to make the fullest disclosure of all material facts that might

27  affect Reyes' interest in purchasing Tule Lane and entering into the Tule Lane Purchase

28  Agreement.

BERGQUIST WOOD
McINTOSH SETO LLP

354. Plaintiff alleges that defendants Cross, Rangel and Prudential California Realty breached their duty when they failed to disclose to Reyes certain conditions of Tule Lane as described herein in paragraphs 215 through 239, supra, including but not limited to the following: failing to disclose the ADP; failing to disclose that the Indymac DOT was valid and enforceable; failing to disclose that the Tule Lane Reconveyance was fraudulent because the underlying loan had not been fully repaid; failing to disclose that no sums were ever lent to Gallagher and/or Cross by GJZ; failing to disclose that Scott Dion owned an undivided twenty percent (20%) collateral interest in Tule Lane; failing to disclose that Theresa Weddle owned an undivided twenty percent (20%) collateral interest in Tule Lane; failing to remove all monetary liens of record, including the IRS' monetary lien; and failing to disclose that the GJZ DOT was fraudulent.

355. In August 2011, Reyes entered into the Tule Lane Purchase Agreement and purchased Tule Lane for $390,000. Pursuant to the Tule Lane Purchase Agreement, Cross, Prudential California Realty and its agents were paid a commissions out of the sale proceeds for the purchase of Tule Lane

356. As a direct and proximate result of said breaches of Cross and Prudential California Realty of their respective duties as alleged herein, Reyes entered into the Tule Lane Purchase Agreement and completed the purchase of Tule Lane and Chicago Title as Reyes' subrogee has been damaged in an amount according to proof at trial but believed to exceed $400,000, together with interest at the maximum legal rate per annum from the date the damages accrued, until paid.

WHEREFORE, plaintiff prays for judgment as set forth below.

## **PRAYER**

**On the First and Second Causes of Action**

For damages in an amount according to proof but believed to exceed $00,000;

For punitive damages in an amount sufficient to deter defendants from such wrongful conduct in the future;

1       For injunctive relief enjoining defendants and their agents from distributing,

2  dissipating, hiding, transferring or changing the location or nature of plaintiffs' purchase

3  monies;

4       For a declaration that a constructive trust be imposed upon defendants and their agents

5  for the purchase monies;

6  **On the Third and Fourth Causes of Action**

7       For damages in an amount according to proof;

8       For treble damages under 18 U.S.C. § 1964(c);

9       For attorneys' fees and costs;

10       For an injunction restraining defendants and their agents from distributing, dissipating,

11  hiding, transferring or changing the location or nature of plaintiffs' purchase monies or

12  defendants' assets;

13       For a declaration that a constructive trust be imposed upon defendants and their agents

14  for the purchase monies;

15  **On the Fifth through Eighth Causes of Action**

16       For damages in an amount according to proof but believed to exceed $3,100,000;

17       For attorneys' fees and costs to the extent permitted by law;

18  **On the Ninth Cause of Action**

19       For damages in an amount according to proof but believed to exceed $3,100,000;

20       For punitive damages in an amount sufficient to deter defendants from such wrongful

21  conduct in the future;

22  **On the Tenth, Eleventh and Twelfth Causes of Action**

23       For damages in an amount according to proof;

24       For punitive damages in an amount sufficient to deter defendants from such wrongful

25  conduct in the future;

26       For a declaration that a constructive trust be imposed upon defendants and their agents

27  for the purchase monies;

28  ///

BERGQUIST WOOD
McINTOSH SETO

{00010172.1}FNTG.009 v4

1  **On all Causes of Action**

2      For costs of suit herein incurred; and

3      For such other and further relief as the court may deem proper.

4
Dated: April 29, 2013                    **BERGQUIST WOOD McINTOSH SETO** LLP
5

6                                          /s/ Stephen C. Seto

7                                         STEPHEN C. SETO
                                          Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00010172.1}FNTG.009 v4