1  Stephen C. Seto (SBN 175458)
   (sseto@wcjuris.com)
2  **BERGQUIST WOOD McINTOSH SETO** LLP
   1470 Maria Lane, Suite 300
3  Walnut Creek, CA  94596
   Telephone:   (925) 938-6100
4  Facsimile:    (925) 938-4354

5  Attorneys for Plaintiff
   CHICAGO TITLE INSURANCE COMPANY

6

7                    UNITED STATES DISTRICT COURT

8                 NORTHERN DISTRICT OF CALIFORNIA

9                         OAKLAND DIVISION

10

11

12  ALLY BANK, et al.,                    No. C-11-00896 YGR (MEJ)

13           Plaintiffs,                  **[PROPOSED] REPORT &**
                                          **RECOMMENDATION RE: PLAINTIFF**
    vs.                                   **CHICAGO TITLE INSURANCE**
14                                        **COMPANY'S MOTTION FOR DEFAULT**
                                          **JUDGMENT AGAINST DEFENDANTS**
15                                        **FAHED EWEIS AND NADIA EWEIS**
    LARA KARAKASEVIC, et al.,
16                                        Hearing
             Defendants.                   Date:   April 2, 2015
17                                        Time:   10:00 a.m.
                                          Ctrm:   B
18                                        Judge:  Maria Elena James

19

20                            **INTRODUCTION**

21          Pending before the Court is Plaintiff Chicago Title Insurance Company's motion for

22  default judgment ("Motion") against Defendants Fahed Eweis and Nadia Eweis ("Defendants"

23  or the "Eweises").  Dkt. No. 773.  Plaintiff requests that the Court enter an order granting

24  default judgment on its claims against Defendants for $191,500 in compensatory damages plus

25  pre-judgment interest and post-judgment interest.  The Eweises have not responded to the

26  Motion.  After carefully reviewing Plaintiff's Motion, evidence and the controlling authorities,

27  the undersigned RECOMMENDS that the District Court grant Chicago Title's Motion for

28  Default Judgment for the reasons set forth below.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**BACKGROUND**

The EWEISES are the former owners of a single-family residence located at 2313 Valley West Drive, Santa Rosa, California (the "Property"). Fourth Amended Complaint ["FAC"], ¶¶ 49-50; Dkt No. 398. In 2005, they borrowed $480,000 from Aegis Wholesale Corporation. (FAC, ¶ 180.) The loan was secured by a deed of trust (the "Aegis DOT") against the Property. *Id.,* FAC, Exh. 62.

In late 2010, the Eweises began falling behind on their loan with Aegis. According to the FAC, the Eweises, in collaboration with certain of the other defendants in this action, responded to their financial difficulties by commencing an "Administrative Default Procedure" ("ADP") whereby the Eweises executed and recorded a sham lien, forged reconveyance and other fraudulent documents, to deceive future buyers into proceeding with a "short sale" purchase of the Property as described more fully below. FAC, p. 3:8-17.

On January 13, 2011 and as part of the ADP, the Eweises signed a $580,000 deed of trust (the "GH-Valley West DOT") in favor of defendant Golden Hills Trust ("Golden Hills Trust"). FAC, ¶ 182. The transaction was a sham in that no sums were ever lent by Golden Hills Trust to the Eweises and no monies were owed by the Eweises to Golden Hills Trust. FAC, ¶ 182, FAC, Exh. 63.

On March 28, 2011, the Eweises caused a fraudulent Substitution of Trustee and Deed of Reconveyance (the "VALLEY WEST RECONVEYANCE") to be executed and recorded falsely reconveying the AEGIS DOT to themselves. FAC, ¶ 184, FAC, Exh. 65.

In April 2011, the Eweises sold the Property to Karrie Hanna for $191,500. FAC, ¶ 185, FAC. When Hanna purchased the Property, she purchased title insurance from Chicago Title. FAC, ¶ 192. Because of the fraudulent VALLEY WEST RECONVEYANCE, **none** of the sale proceeds from the sale went to pay the AEGIS DOT. FAC, ¶ 189. Instead, the sale proceeds went to defendants, including the Eweises. *Id.*

After the sale closed, the beneficiary of the AEGIS DOT foreclosed on the Property. Declaration of Don Todd ("Todd Decl."), ¶ 5; Dkt. No. 773-1. Hanna then made a claim to Chicago Title under her title policy. *Id.* On April 27, 2012, Chicago Title paid $191,500 to

[00029898.2]

satisfy Hanna's claim, and Chicago Title is pursing the Eweises as a subrogee under the title policy. *Id.*, ¶ 7.   On May 1, 2013, Chicago Title, as subrogee, served the FAC on the Eweises Dkt No. 409.   After the Eweises failed to answer, Plaintiff filed a request for entry of default against the Eweises.  Dkt Nos. 448 and 449.  The clerk entered a default against the Eweises on June 7, 2013.   Dkt No. 453.

## DISCUSSION

### A.    Jurisdiction and Service of Process

In considering whether to enter default judgment, a court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 173 F.3d 707, 712 (9th Cir. 1999).

1.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Here, the Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' third and fourth causes of action ("RICO Claims") against the Eweises arise under the laws of the United States— specifically 18 U.S.C. §§ 1962(c) and (d). The Court has supplemental jurisdiction to hear the other causes of action against the Youngs under 28 U.S.C. § 1367 because those claims arise out of the same case or controversy as the RICO Claims.

2.  Personal Jurisdiction

"[A] court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, the Court has

FINDINGS OF FACT AND CONCLUSIONS OF LAW

[00029898.2]

personal jurisdiction over the Eweises because they are individuals residing in California and were the former owners of the Property. FAC ¶¶ 49-50; *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). Venue is also proper in this District under 28 U.S.C. § 1391 because: (1) one or more of the Defendants resides in this District; (2) many of the events giving rise to this litigation occurred in this District; and (3) some of the real property at issue in this case is located in this District.  FAC, ¶ 90.

> 3.  Service of Process

Additionally, the Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the W. v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C.*, 504 F.3d at 1138-39.

> *Fahed Eweis*

Plaintiffs served the Summons and complaint on Fahed Eweis on September 11, 2011. Dkt No. 89-4.  Plaintiff served the FAC on Fahed Eweis by mail on May 1, 2013.  Dkt No. 409. Fahed Eweis failed to appear or otherwise respond to the FAC within the time prescribed by the Federal Rules of Civil Procedure Rule 12(a).  Dkt No. 448-1.  Fahed Eweis is not a minor or an incompetent person.  Dkt 448-1.  Fahed Eweis is not in military service or otherwise exempted from a default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.  *Id.* Accordingly, the undersigned finds service of process adequate.

> *Nadia Eweis*

Plaintiffs served the Summons and complaint on Nadia Eweis on September 11, 2011. Dkt No. 89-4.   Plaintiff served the FAC on Nadia Eweis by mail on May 1, 2013.  Dkt No. 409.  Nadia Eweis failed to appear or otherwise respond to the FAC within the time prescribed by the Federal Rules of Civil Procedure Rule 12(a).  Dkt No. 449-1.  Nadia Eweis is not a minor or an incompetent person.  Dkt No. 449-1.  Nadia Eweis is not in military service or otherwise exempted from a default judgment under the Soldiers' and Sailors' Civil Relief Act

[00029898.2]

of 1940. *Id.* Accordingly, the undersigned finds service of process adequate.

4. **Legal Standard for Entry of Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for the court to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

5. **Application to this Case**

Applying the foregoing *Eitel* factors to the case at bar, the undersigned finds that Chicago Title is entitled to entry of default judgment.

1. The possibility of prejudice to the Plaintiff

The first factor that the Court considers in determining whether to grant a default judgment is the possibility of prejudice to Plaintiff if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy. *See Landstar Range, Inc. v. Parth Enter., Inc.,* 725 F.Supp.2d 916, 920 (C.D.Cal.2010) (concluding that the plaintiff would suffer prejudice if default judgment was not entered where the plaintiff had only received partial payment owed under a contract). Here, absent entry of a default judgment, Chicago Title would be prejudiced by having to incur additional fees and costs litigating against Trites even though Trites has never appeared in the case. Accordingly, this factor weighs in favor of entry of default judgment.

[00029898.2]

2.   <u>The merits of plaintiff's substantive claim and the sufficiency of the</u>

<u>complaint</u>

The second and third *Eitel* factors require the Court to look at the merits of Plaintiff's substantive claims and the sufficiency of the allegations of the Complaint.  *Eitel*, 782 F.2d at 1471-72.  Here, Plaintiff seeks a default judgment on its claim for fraud, conspiracy to defraud and negligence.

a.  *Fraud*

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of falsity, intent to defraud, justifiable reliance, and damages." *Vess v. Ciba-Geigy Corp. USA*, 317 F.ed 1097, 1005 (9th Cir.2003) (quotation and citation omitted). Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff to allege a fraud claim with particularity.  Fed. R. Civ. P. 9(b).

Here, the Eweises made several knowing misrepresentations and fraudulent omissions. As owners of the Property, the Eweises knew that they had taken out a loan, secured by the AEGIS DOT, and that the loan was never paid off.  FAC, ¶¶ 180, 188.   The EWEISES also knew that they never borrowed money from GOLDEN HILLS TRUST, yet they signed and recorded the GH VALLEY WEST DOT falsely representing that GOLDEN HILLS TRUST had lent them money and held an enforceable lien on the Property.  FAC, ¶ 182.   Further, the Eweises knowingly engaged in the "ADP to fraudulently reconvey the AEGIS DOT. FAC, p.3, ¶¶ 93, 182-184.  The Eweises knew that VALLEY WEST RECONVEYANCE had been fraudulently executed by someone without authority to sign that document and that the corresponding lien remained a valid lien against the Property despite the execution and recordation of that reconveyances.  FAC, ¶ 184, 188.

The Eweises then sold the Property to Hanna without disclosing the fraudulent circumstances surrounding the ADP and the reconveyances.   FAC, ¶ 188. As part of the sale, the Eweises sold the Property and they executed a grant deed that warranted that the Property was free and clear of the AEGIS DOT.  (FAC, p. 3, ¶ 186.)  The sale was insured by Chicago Title. FAC, ¶ 192.  Because of the fraudulent VALLEY WEST RECONVEYANCE, none of

-6-

[00029898.2]

BERGQUIST WOOD
McINTOSH SETO LLP

the sale proceeds went to pay the AEGIS DOT.  (FAC, ¶ 189.) Instead, they went to the EWEISES among other defendants.  (*Id.*)

Further, Chicago Title and its insureds, Hanna, were justified in relying upon the Eweises' representations in the public record that the AEGIS DOT had been paid.  FAC, ¶¶ 188, 285.   As a result of the execution and recording of the VALLEY WEST RECONVEYANCE, it appeared that the AEGIS DOT had been paid and legally removed.

The beneficiary of the AEGIS DOT subsequently foreclosed on the Property.  Todd Decl., ¶ 5.  Hanna then made a claim to Chicago Title under her title policy.  *Id.*  On April 27, 2012, CHICAGO TITLE was required to pay $191,500 to Hanna to satisfy her claim and, therefore, it is entitled to pursue the EWEISES as a subrogee to Hanna's right under the title policy.  *Id.*, ¶¶ 6-7.

### b.   *CONSPIRACY TO DEFRAUD*

As to the claim of conspiracy to defraud, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Arei II Cases*, 216 Cal. App. 4th 1004, 1021-22 (2013) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994)). A civil conspiracy "must be activated by the commission of an actual tort," such as fraud. *Id*.

To support a conspiracy claim, a plaintiff must allege the following elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Id*. (citing *Kidron v. Movie Acquisition Corp*., 40 Cal. App. 4th 1571, 1581 (1995)). While a complaint must contain more than a bare allegation that the defendants conspired, a complaint is sufficient if it apprises the defendant of the character and type of facts and circumstances upon which she was relying to establish the conspiracy. *Id.* (citing *Schessler v. Keck*, 125 Cal. App. 2d 827, 833 (1954)).

While a party seeking to establish a civil conspiracy must show that the members acted in concert, knew of the intended act, and agreed tacitly to achieve that act, "[i]t must be recognized, however, that because of the very nature of a conspiracy, 'its existence must often

[00029898.2]

be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and circumstances suggestive of concerted action.'" *Id.* "While a complaint must contain more than a bare allegation the defendants conspired, a complaint is sufficient if it apprises the defendant of the 'character and type of facts and circumstances upon which she was relying to establish the conspiracy.'" *Id.* (internal citations omitted).

Here, Chicago Title has alleged the formation and operation of the conspiracy between themselves and Defendants Golden Hills Trust, which consisted of a plan to execute and record fraudulent documents to stop foreclosure proceedings against the Property that made it seem as though (1) the valid lien against the Property had been satisfied, and (2) Golden Hills Trust had a valid lien against the Property that had to be paid through any sale.

The Eweises participated in the scheme to defraud Plaintiff by causing the execution and recordation of the fraudulent VALLEY WEST RECONVEYANCE and the GH VALLEY WEST DOT.  These fraudulent documents made it appear to Hanna and Chicago Title that the prior loan relating to the Property had been paid off, that there were no encumbrances on the Property other than the GH VALLEY WEST DOT, that the foreclosure proceedings against the Property had been stopped, and that Golden Hills Trust had a valid lien against the Property and was entitled to the sale proceeds of the Property rather than the legitimate lienholder.  The Eweises owned the Property and knew the status of the loan they had taken out.  The Eweises knew that they had not paid off the Aegis loan, they knew the AEGIS DOT was a valid lien on the Property, and they also knew that they were not entitled to any proceeds from the sale of the Property.

The Eweises conspired with the other defendants in covering up the fact that there was a valid lien on the Property that had not been paid off.  The Eweises pretended to take out a loan with Golden Hills Trust and allowed a sham lien, the GH VALLEY WEST DOT, to be recorded against the Property.  The Eweises did so in order to sell the Property and abscond with sale proceeds to which they were not entitled.  If the Property had been foreclosed upon or sold legally, the Eweises and Golden Hills Trust would not have received any money whatsoever.

[00029898.2]

As a result of the Eweises' participation in the conspiracy to defraud Hanna and Plaintiff as subrogee, Plaintiff has been damaged in the amount of $191,500 plus interest. Accordingly, the undersigned finds that the FAC alleges sufficient facts to support a claim for conspiracy to defraud.

### i. NEGLIGENCE

As to Chicago Title's negligence cause of action, the elements of a cause of action for negligence are (1) duty, (2) breach of duty, (3) legal cause, and (4) damages. *Friedman v. Merck & Co.*, 107 Cal.App.4th 454, 463 (2003).

Chicago Title has alleged each of the elements necessary to support its negligence claim. The Eweises owed a duty to Hanna as a subsequent purchaser of the Property to disclose the existence of valid liens against the Property. The Eweises breached this duty and caused Chicago Title to suffer damages as a result. A seller of real property has the duty to convey good and marketable title and the "right of the vendee to receive such marketable title is not dependent upon the terms of the contract but is given by the law itself." *King v. Stanley*, 32 Cal. 2d 584, 590 (1948) (reversed on other grounds). California Civil Code section 1113(b) establishes that when a seller executes a grant deed, he warrants that the property is free from encumbrances done, made, or suffered by the seller unless the grant deed expressly states otherwise. *See also Snyder v. Pine Grove Lumber*, 40 Cal. App. 2d 660, 663-64 (1940).

The Eweises owed a duty to Hanna to convey marketable title to the Property. The Eweises signed and recorded a grant deed that warranted that the Property was free from any encumbrances. However, because the AEGIS DOT, an encumbrance that the Eweises themselves placed on the Property, still encumbered the Property when the Eweises signed the grant deed, the Eweises breached their duty.

The beneficiary of the AEGIS DOT subsequently foreclosed on the Property. Todd Decl., ¶ 5. Hanna then made a claim to Chicago Title under her title policy. *Id.* On April 27, 2012, Chicago Title was required to pay $191,500 to Hanna to satisfy her claim and it therefore has been damaged in that amount plus interest. Accordingly, the undersigned finds that the FAC alleges sufficient facts to support a claim for negligence.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

[00029898.2]

As Chicago Title's FAC is well-pleaded, this factor supports entry of default judgment.

### 3.   The sum of money at stake in the action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp 2d 1172, 1176 (C.D.Cal.2002).  When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored.  *See Eitel,* 782 F.2d at 1472.  (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

Here, Chicago Title seeks $190,000 plus interest, which is proportional to the harm caused by the Eweises' conduct.  *See FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir.2009) (affirming award of over $17 million in equitable monetary relief that represented the amount of loss incurred by consumers); *FTC v. Springtech 77376 LLC*, 2013 WL 5955395 at *2 (C.D.Cal. May 30, 2014) (finding $7,279,000 in damages appropriate where proportional to the seriousness of the defendants' conduct and where the damages represented the actual amount consumers paid for defendants' products).  The amount of money at stake equals the amount of money Chicago Title has to pay Hanna.  Accordingly, this factor weighs in favor of entry of default judgment.

### 4.   The possibility of dispute concerning material facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  Here, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true. *Televideo Sys., Inc., v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992).  Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint.  *DirectTV, Inc.v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007).  Further, the Eweises have not submitted anything to contradict the well-plead allegations in the FAC.  Thus, this factor favors entry of default judgment.

### 5.   Whether default was due to excusable neglect

The sixth *Eitel* factor examines whether the Eweises' failure to respond to the FAC

[00029898.2]

was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. The undersigned finds that the Eweises were given adequate notice of this lawsuit and pending Motion for Default Judgment. First, Plaintiffs named the Eweises as parties to this action in the FAC, which was filed on April 30, 2013. As discussed above, the Eweises were properly served. After they failed to answer, the Clerk of the Court entered default against them. The Eweises have failed to appear in this matter and have not responded to Chicago Title's Motion. There is nothing in the record suggesting that the Eweises' failure to appear and litigate this matter is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.CA. 2001) (default after proper service was not excusable neglect). Thus, this factor support default judgment.

> 6.   The strong policy underlying the Federal Rules of Civil Procedure
>       favoring decisions on the merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Similarly, other courts have stated that default judgment is appropriate when a defendant refuses to litigate a case. *See, e.g.*, *Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010). Here, the Eweises have not responded to communication efforts by Chicago Title or participated in the proceedings. As such, a decision on the merits would not be possible. In situations such as this, Rule 55(b) allows the Court to grant default judgment. Thus, this final factor weighs in favor of granting Chicago Title's Motion.

> 7.   Summary of the *Eitel* Factors

Based on the foregoing analysis, the undersigned finds that each of the *Eitel* factors weighs in favor of granting default judgment and it will enter default judgment against Trites as to the § 523 (a)(2) fraud cause of action.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

### D.  Relief Sought

After determining liability, the Court then calculates the amount of damages that should be awarded. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012). This two-step process is proper because, while for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages. *Id.*

As discussed above, Chicago Title has established that the Property was foreclosed on. Consequently, on April 27, 2012, Chicago Title was required to pay $191,500 to Hanna.  Todd Decl., ¶ 5-7.  As a result, the undersigned finds that Chicago Title has been damaged in the amount of $191,500.  Chicago Title also requests pre-judgment and post-judgment interest.

Where state law provides the rule of decision, it is the duty of federal courts to ascertain and apply that law. *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007).  Prejudgment interest is a substantive part of a plaintiff's claim and not merely a procedural mechanism; thus, state law governs entitlement to it as well as its computation, unless preempted by federal law. *Id.* at 1101.  California Civil Code section 3288 provides that in actions for breach of an obligation not arising from contract, and in every case of fraud, malice, or oppression, interest may be given in the discretion of the trier of fact. *See Vogelsang v. Wolpert*, 227 Cal. App. 2d 102, 125 (1964) ("It is, of course, well settled that interest may be awarded in a fraud action under Civil Code, § 3288, in the discretion of the trier of fact.").  However, because there is no legislative act specifying the rate of prejudgment interest for a fraud claim, the rate set forth in Cal. Const., art. XV, § 1, of seven per cent per annum, is applicable to the award of tort damages. *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994).

As discussed above, on April 27, 2011, Chicago Title was paid Hanna $191,500. Thus, Plaintiff is entitled to prejudgment interest as follows:  prejudgment interest at the rate of $36.73 per day, representing the full $191,500 paid by Plaintiff ($191,500 x .07% per annum, divided by 365 days) from April 27, 2011 until the date of judgment.

As to post-judgment interest, while state law determines the rate of prejudgment interest in diversity actions, post-judgment interest is governed by federal law. 28 U.S.C. § 1961;

-12-

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

*Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998). Plaintiff is therefore entitled to post-judgment interest at the federal rate pursuant to 28 U.S.C. § 1961, to be calculated from the date of the entry of judgment. Post-judgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Thus, the post-judgment interest calculation must be made at the time of judgment.

Based on this analysis, the undersigned RECOMMENDS that the District Court GRANT Chicago Title's request for an award of $191,500 in damages, plus prejudgment interest in the amount of $36.73 per day from April 27, 2011 until the date of judgment, and post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

### CONCLUSION

Based on the above analysis, the undersigned RECOMMENDS that the District Court GRANT Chicago Title's Motion for Default Judgment and enter judgment against Defendants Fahed Eweis and Nadia Eweis as to the fraud, conspiracy to defraud and negligence causes of action.  The undersigned further RECOMMENDS that the Court award Chicago Title damages of $191,500, plus prejudgment interest in the amount of $36.73 per day from April 27, 2011 until the date of judgment, and post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

///

///

///

///

///

///

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

[00029898.2]

1          Chicago Title shall serve a copy of this Report & Recommendation upon Defendants.

2    Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may

3    serve and file objections to this Report and Recommendation 14 days after being served.

4          **IT IS SO ORDERED:**

5

6    **DATED:** _____

7

8                   _____

9                      **MARIA ELENA JAMES**
          **UNITED STATES DISTRICT COURT JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

[00029898.2]