1

2

3

4              UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7   ALLY BANK, et al.,                        Case No. 11-cv-00896-YGR   (MEJ)

                    Plaintiffs,               **REPORT & RECOMMENDATION RE:**
8                                             **PLAINTIFF CHICAGO TITLE**
          v.                                  **INSURANCE COMPANY'S MOTION**
9                                             **FOR DEFAULT JUDGMENT AGAINST**
    LARA KARAKASEVIC, et al.,                 **FAHED EWEIS AND NADIA EWEIS**
10
                    Defendants.               Re: Dkt. No. 773
11

12

13                              **INTRODUCTION**

14          Pending before the Court is Plaintiff Chicago Title Insurance Company's ("Chicago Title")

15  Motion for Default Judgment against Defendants Fahed Eweis and Nadia Eweis.  Dkt. No. 773.

16  Chicago Title requests that the Court enter an order granting default judgment on its claims against

17  the Eweises for $191,500 in compensatory damages plus prejudgment and post-judgment interest.

18  The Eweises have not responded to the Motion.  After carefully reviewing Chicago Title's

19  Motion, the record in this case, and the controlling legal authorities, the undersigned

20  RECOMMENDS that the District Court GRANT Chicago Title's Motion for Default Judgment

21  for the reasons set forth below.

22                              **BACKGROUND**

23          The Eweises are the former owners of a single-family residence located at 2313 Valley

24  West Drive, Santa Rosa, California (the "Property").  Fourth Am. Compl. ("FAC") ¶¶ 49-50, Dkt.

25  No. 398.  In 2005, they borrowed $480,000 from Aegis Wholesale Corporation.  *Id.* ¶ 180.  The

26  loan was secured by a deed of trust (the "Aegis DOT") against the Property.  *Id.* & Ex. 62.

27          In late 2010, the Eweises began falling behind on their loan with Aegis, and a Notice of

28  Default was recorded in December 2010.  *Id.* ¶ 181.  According to the FAC, the Eweises, in

United States District Court
Northern District of California

collaboration with certain of the other Defendants in this action, responded to their financial

difficulties by commencing an "Administrative Default Procedure" ("ADP") whereby they

executed and recorded a sham lien, forged reconveyance and other fraudulent documents, in order

to deceive future buyers into proceeding with a "short sale" purchase of the Property.  FAC at 3:8-

17.

On January 13, 2011, and as part of the ADP, the Eweises signed a $580,000 deed of trust

(the "GH Valley West DOT") in favor of Defendant Golden Hills Trust.  *Id.* ¶ 182.  The

transaction was a sham in that no sums were ever lent by Golden Hills Trust to the Eweises and no

monies were owed by the Eweises to Golden Hills Trust.  *Id.* & Ex. 63.

On March 28, 2011, the Eweises caused a fraudulent Substitution of Trustee and Deed of

Reconveyance (the "Valley West Reconveyance") to be executed and recorded falsely

reconveying the Aegis DOT to themselves.  FAC ¶ 184 & Ex. 65.

In April 2011, the Eweises sold the Property to Karrie Hanna for $191,500.  *Id.* ¶ 185.

When Hanna purchased the Property, she purchased title insurance from Chicago Title.  *Id.* ¶ 192.

Because of the fraudulent Valley West Reconveyance, none of the sale proceeds from the sale

went to pay the Aegis DOT.  *Id.* ¶ 189.  Instead, the sale proceeds went to Defendants, including

the Eweises.  *Id.*

After the sale closed, the beneficiary of the Aegis DOT foreclosed on the Property.  Todd

Decl. ¶ 5, Dkt. No. 773-1.  Hanna then made a claim to Chicago Title under her title policy.  *Id.*

On April 27, 2012, Chicago Title paid $191,500 to satisfy Hanna's claim, and now Chicago Title

is pursing the Eweises as a subrogee under the title policy.  *Id.* ¶ 7.

On April 30, 2013, Plaintiffs[1] filed the operative Fourth Amended Complaint, alleging

causes of action for: (1) Fraud; (2) Civil Conspiracy; (3) Racketeering under the Racketeering

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (4) Conspiracy under

RICO, 18 U.S.C. § 1962(d); (5) Breach of Contract; (6) Breach of the Implied Covenant to

_____

[1] Plaintiffs are Fidelity National Title Insurance Company, Commonwealth Land Title Insurance Company, Ally Bank, Wesley W. Halihan, Gina L. Halihan, Dawn R. Carifi, Brian Phuong, Crichton Friedly, Janet N. Friedly, Chicago Title Insurance Company, Julian Massa, Alison Massa, and Credit One, LLC.

United States District Court
Northern District of California

1   Convey Merchantable Title to Property; (7) Negligence; (8) Negligent Supervision; (9) violation

2   of California Civil Code section 2079 and Business & Professions Code sections 10152 and

3   10176; (10) Negligence (Broker); and (11) Breach of Fiduciary Duty.

4          On May 1, 2013, Chicago Title, as subrogee, served the FAC on the Eweises.  Dkt. No.

5   409.  After the Eweises failed to answer, Chicago Title filed a request for entry of default against

6   the Eweises.  Dkt. Nos. 447, 448.  The Clerk of Court entered a default against the Eweises on

7   June 7, 2013.  Dkt. No. 453.

8          Chicago Title filed the present Motion for Default Judgment against the Eweises on

9   February 19, 2015.  It seeks judgment as to the fraud, civil conspiracy, and negligence causes of

10  action.

11                                      **DISCUSSION**

12  **A.     Jurisdiction and Service of Process**

13         In considering whether to enter default judgment, a district court must first determine

14  whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d

15  707, 712 (9th Cir. 1999).

16         1.   Subject Matter Jurisdiction

17         Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction.

18  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court may

19  dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the

20  action.  *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If

21  the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

22  action.").

23         Here, the Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' third and fourth

24  causes of action ("RICO Claims") against the Eweises arise under the laws of the United States—

25  specifically 18 U.S.C. §§ 1962(c) and (d).  The Court has supplemental jurisdiction to hear the

26  other causes of action against the Eweises under 28 U.S.C. § 1367 because those claims arise out

27  of the same case or controversy as the RICO Claims.

28

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    2.   Personal Jurisdiction

2    "[A] court may exercise personal jurisdiction over a defendant consistent with due process

3    only if he or she has 'certain minimum contacts' with the relevant forum such that the

4    maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

5    *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir.

6    2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Here, the Court has

7    personal jurisdiction over the Eweises because they are individuals residing in California and were

8    the former owners of the Property.  FAC ¶¶ 49-50; *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir.

9    2007).  Venue is also proper in this District under 28 U.S.C. § 1391 because: (1) one or more of

10   the Defendants resides in this District; (2) many of the events giving rise to this litigation occurred

11   in this District; and (3) some of the real property at issue in this case is located in this District.

12   FAC ¶ 90.

13   3.   Service of Process

14   Additionally, the Court must "assess the adequacy of the service of process on the party

15   against whom default is requested." *Bank of the W. v. RMA Lumber Inc.*, 2008 WL 2474650, at

16   *2 (N.D. Cal. June 17, 2008).  "Without a proper basis for jurisdiction, or in the absence of proper

17   service of process, the district court has no power to render any judgment against the defendant's

18   person or property unless the defendant has consented to jurisdiction or waived the lack of

19   process." *S.E.C.*, 504 F.3d at 1138-39.

20   a.   *Fahed Eweis*

21   Plaintiffs served the Summons and Complaint on Fahed Eweis on September 11, 2011.

22   Dkt. No. 89-4.  Plaintiffs served the FAC on Fahed Eweis by mail on May 1, 2013.  Dkt. No. 409.

23   Fahed Eweis failed to appear or otherwise respond to the FAC within the time prescribed by the

24   Federal Rules of Civil Procedure Rule 12(a).  Dkt. No. 448-1.  Fahed Eweis is not a minor or an

25   incompetent person.  *Id.*  Fahed Eweis is not in military service or otherwise exempted from a

26   default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.  *Id.*  Accordingly, the

27   undersigned finds service of process adequate.

28

4

United States District Court
Northern District of California

1

                    b.      *Nadia Eweis*

2          Plaintiffs served the Summons and Complaint on Nadia Eweis on September 11, 2011.

3    Dkt. No. 89-4.  Plaintiff served the FAC on Nadia Eweis by mail on May 1, 2013.  Dkt. No. 409.

4    Nadia Eweis failed to appear or otherwise respond to the FAC within the time prescribed by the

5    Federal Rules of Civil Procedure Rule 12(a).  Dkt. No. 446-1.  Nadia Eweis is not a minor or an

6    incompetent person.  *Id.*  Nadia Eweis is not in military service or otherwise exempted from a

7    default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.  *Id.*  Accordingly, the

8    undersigned finds service of process adequate.

9    **B.      Legal Standard for Entry of Default Judgment**

10         Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant,

11   to enter default judgment in a case.  "The district court's decision whether to enter default

12   judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In

13   determining whether default judgment is appropriate, the Ninth Circuit has enumerated the

14   following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the

15   merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of

16   money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether

17   default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of

18   Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th

19   Cir. 1986).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of

20   Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or

21   exceed in amount, what is demanded in the pleadings."

22   **C.      Application to the Case at Bar**

23         Applying the foregoing *Eitel* factors to the case at bar, the undersigned finds that Chicago

24   Title is entitled to entry of default judgment.

25         1.   The Possibility of Prejudice to Plaintiff

26         The first factor that the Court considers in determining whether to grant a default judgment

27   is the possibility of prejudice to a plaintiff if a default judgment is not entered.  *Eitel*, 782 F.2d at

28   1471-72.  Courts have held that prejudice exists where denying the requested default judgment

5

1   would leave the plaintiff without a proper remedy.  *See Landstar Ranger, Inc. v. Parth Enter.,*

2   *Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (concluding that the plaintiff would suffer

3   prejudice if default judgment was not entered where the plaintiff had only received partial

4   payment owed under a contract).  Here, absent entry of a default judgment, Chicago Title would

5   be left without a proper remedy against the Eweises.  As there is a strong possibility of prejudice

6   to Chicago Title, this factor weighs in favor of entry of default judgment.

7          2.   The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint

8         The second and third *Eitel* factors require the Court to look at the merits of the substantive

9   claims and the sufficiency of the allegations in the FAC.  *Eitel*, 782 F.2d at 1471-72.  Here,

10  Chicago Title seeks default judgment on its claims for fraud, conspiracy to defraud, and

11  negligence.

12            *a.*   *Fraud*

13        "Under California law, the indispensable elements of a fraud claim include a false

14  representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."  *Vess*

15  *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quotation and citation omitted).

16  Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff to allege a fraud claim with

17  particularity.  Fed. R. Civ. P. 9(b).

18        Here, the Eeweises made several knowing misrepresentations and fraudulent omissions.

19  As owners of the Property, the Eweises knew that they had taken out a loan, secured by the Aegis

20  DOT, and that the loan was never paid off.  FAC ¶¶ 180, 188.  The Eweises also knew that they

21  never borrowed money from Golden Hills Trust, yet they signed and recorded the GH Valley West

22  DOT falsely representing that Golden Hills Trust had lent them money and held an enforceable

23  lien on the Property.  *Id.* ¶ 182.  Further, the Eweises knowingly engaged in the ADP to

24  fraudulently reconvey the Aegis DOT.  *Id.* ¶¶ 93, 182-84.  The Eweises knew that the Valley West

25  Reconveyance had been fraudulently executed by someone without authority to sign that

26  document and that the corresponding lien remained a valid lien against the Property despite the

27  execution and recordation of that reconveyance.  *Id.* ¶¶ 184, 188.

28

United States District Court
Northern District of California

1    The Eweises then sold the Property to Hanna without disclosing the fraudulent

2    circumstances surrounding the ADP and the reconveyances.  *Id.* ¶ 188.  As part of the sale, the

3    Eweises sold the Property and they executed a grant deed that warranted that the Property was free

4    and clear of the Aegis DOT.  *Id.* ¶¶ 186-88.  The sale was insured by Chicago Title.  *Id.* ¶ 192.

5    Because of the fraudulent Valley West Reconveyance, none of the sale proceeds went to pay the

6    Aegis DOT.  *Id.* ¶ 189.  Instead, they went to the Eweises, among other Defendants.  *Id.*

7    Further, Chicago Title and its insured, Hanna, were justified in relying upon the Eweises'

8    representations in the public record that the Aegis DOT had been paid.  *Id.* ¶¶ 188, 285.  As a

9    result of the execution and recording of the Valley West Reconveyance, it appeared that the Aegis

10   DOT had been paid and legally removed.  *Id.* ¶ 188.

11   The beneficiary of the Aegis DOT subsequently foreclosed on the Property.  Todd Decl. ¶

12   5.  Hanna then made a claim to Chicago Title under her title policy.  *Id.*  On April 27, 2012,

13   Chicago Title was required to pay $191,500 to Hanna to satisfy her claim and, therefore, it is

14   entitled to pursue the Eweises as a subrogee to Hanna's right under the title policy.  *Id.* ¶¶ 6-7.

15   Based on these allegations, the undersigned finds that Chicago Title satisfies all the

16   necessary elements of a claim for fraud.

17                    b.        *Conspiracy to Defraud*

18   As to the claim of conspiracy to defraud, "[c]onspiracy is not a cause of action, but a legal

19   doctrine that imposes liability on persons who, although not actually committing a tort themselves,

20   share with the immediate tortfeasors a common plan or design in its perpetration."  *Arei II Cases*,

21   216 Cal. App. 4th 1004, 1021 (2013) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7

22   Cal. 4th 503, 510-11 (1994)).  A civil conspiracy "must be activated by the commission of an

23   actual tort," such as fraud.  *Id*. at 1022.

24   To support a conspiracy claim, a plaintiff must allege the following elements:  "(1) the

25   formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy,

26   and (3) damages arising from the wrongful conduct."  *Id*. at 1021-22 (citing *Kidron v. Movie*

27   *Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).  While a complaint must contain more

28   than a bare allegation that the defendants conspired, a complaint is sufficient if it apprises the

United States District Court
Northern District of California

7

1    defendant of the character and type of facts and circumstances upon which she was relying to

2    establish the conspiracy.  *Id.* at 1022 (citing *Schessler v. Keck*, 125 Cal. App. 2d 827, 833 (1954)).

3         While a party seeking to establish a civil conspiracy must show that the members acted in

4    concert, knew of the intended act, and agreed tacitly to achieve that act, "[i]t must be recognized,

5    however, that because of the very nature of a conspiracy, 'its existence must often be inferentially

6    and circumstantially derived from the character of the acts done, the relations of the parties and

7    other facts and circumstances suggestive of concerted action.'"  *Id.* (internal citation omitted).

8    "While a complaint must contain more than a bare allegation the defendants conspired, a

9    complaint is sufficient if it apprises the defendant of the 'character and type of facts and

10   circumstances upon which she was relying to establish the conspiracy.'"  *Id*. (internal citations

11   omitted).

12        Here, Chicago Title has alleged the formation and operation of the conspiracy between the

13   Eweises and Defendant Golden Hills Trust, which consisted of a plan to execute and record

14   fraudulent documents to stop foreclosure proceedings against the Property, made it seem as

15   though (1) the valid liens against the Property had been satisfied, and (2) Golden Hills Trust had a

16   valid lien against the Property that had to be paid through any sale.

17        The Eweises participated in the scheme to defraud Chicago Title by causing the execution

18   and recordation of the fraudulent Valley West Reconveyance and the GH Valley West DOT.

19   These documents made it appear to subsequent purchasers of the Property that all prior loans had

20   been paid off, that there were no encumbrances on the Property other than the GH Valley West

21   DOT, that the foreclosure proceedings against the Property had been stopped, and that Golden

22   Hills Trust had a valid lien against the Property and was entitled to any sale proceeds.  The

23   Eweises owned the Property and knew the status of the loans they had taken out.  They also knew

24   that they had not paid off the Aegis loan that they previously took out against the Property, and

25   that the Aegis DOT was a valid lien on the Property.

26        The Eweises conspired with the other Defendants in covering up the fact that there was a

27   valid lien on the Property that had not been paid off.  The Eweises pretended to take out a loan

28   with Golden Hills Trust and allowed a sham lien, the GH Valley West DOT, to be recorded

United States District Court
Northern District of California

8

1    against the Property.  The Eweises did so in order to sell the Property and abscond with sale

2    proceeds to which they were not entitled.

3         As a result of the Eweises' participation in the conspiracy to defraud Hanna and Chicago

4    Title as subrogee, Chicago Title has been damaged in the amount of $191,500 plus interest.

5    Accordingly, the undersigned finds that the FAC alleges sufficient facts to support a claim for

6    conspiracy to defraud.

7              *c.      Negligence*

8         As to the negligence cause of action, the elements are (1) duty, (2) breach, (3) legal cause,

9    and (4) damages.  *Friedman v. Merk & Co.*, 107 Cal. App. 4th 454, 463 (2003).  Chicago Title has

10   alleged each of the elements necessary to support its negligence claim.  The Eweises owed a duty

11   to Hanna as a subsequent purchaser of the Property to disclose the existence of valid liens against

12   the Property.  The Eweises breached this duty and caused Chicago Title to suffer damages as a

13   result.  A seller of real property has the duty to convey good and marketable title and the "right of

14   the vendee to receive such marketable title is not dependent upon the terms of the contract but is

15   given by the law itself."  *King v. Stanley*, 32 Cal. 2d 584, 590 (1948), *disapproved of on other*

16   *ground by Patel v. Liebermensch*, 45 Cal. 4th 344, 349-52 (2008).  California Civil Code section

17   1113(b) establishes that when a seller executes a grant deed, he warrants that the property is free

18   from encumbrances done, made, or suffered by the seller unless the grant deed expressly states

19   otherwise.  *See also Snyder v. Pine Grove Lumber*, 40 Cal. App. 2d 660, 663-64 (1940).

20        The Eweises owed a duty to Hanna as the subsequent purchaser of the Property to convey

21   marketable title to the Property.  The Eweises signed and recorded a grant deed that warranted that

22   the Property was free from any encumbrances.  However, because the Aegis DOT—an

23   encumbrance that the Eweises themselves placed on the Property—still encumbered the Property

24   when they signed the grant deed, the Eweises breached their duty to Hanna.

25        The beneficiary of the Aegis DOT subsequently foreclosed on the Property.  Todd Decl. ¶

26   5.  Hanna then made a claim to Chicago Title under her title policy, and on April 27, 2012,

27   Chicago Title was required to pay $191,500 to Hanna to satisfy her claim.  *Id.*  Accordingly, the

28   undersigned finds that Chicago Title has been damaged in the amount of $191,500 plus interest,

United States District Court
Northern District of California

9

1    and the FAC alleges sufficient facts to support a claim for negligence.

2           As Chicago Title's FAC is well-pleaded, this factor supports entry of default judgment.

3           3.    The Sum of Money at Stake in the Action

4           The fourth *Eitel* factor addresses the amount of money at stake in relation to the

5    seriousness of Defendant's conduct.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176

6    (C.D. Cal. 2002).  When the amount at stake is substantial or unreasonable in light of the

7    allegations in the complaint, default judgment is disfavored.  *See Eitel*, 782 F.2d at 1472

8    (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the

9    parties disputed material facts in the pleadings).

10          Here, Chicago Title seeks $191,500 plus interest, which is proportional to the harm caused

11   by the Eweises' conduct.  *See FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (affirming

12   award of over $17 million in equitable monetary relief that represented the amount of loss incurred

13   by consumers); *FTC v. Springtech 77376 LLC*, 2013 WL 5955395, at *2 (C.D. Cal. May 30, 2014)

14   (finding $7,279,000.00 in damages appropriate where proportional to the seriousness of the

15   defendants' conduct and where the damages represented the actual amount consumers paid for

16   defendants' products).  The amount of money at stake equals the amount of the money Chicago

17   Title had to pay to Hanna.  Accordingly, this factor weighs in favor of entry of default judgment.

18          4.    The Possibility of Dispute Concerning Material Facts

19          The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

20   material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  With regard to this factor, no

21   genuine issues of material fact are likely to exist because the allegations in the complaint are taken

22   as true.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992).  Upon entry of

23   default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the

24   complaint.  *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P.

25   55(a)).  Further, the Eweises have not submitted anything to contradict the well-pled allegations in

26   the FAC.  Accordingly, this factor favors entry of default judgment.

27          5.    Whether Default was Due to Excusable Neglect

28          The sixth *Eitel* factor examines whether the Eweises' failure to respond to Chicago Title's

United States District Court
Northern District of California

10

1    FAC was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. The undersigned finds that

2    the Eweises were accorded adequate notice of this lawsuit and pending Motion for Default

3    Judgment. First, Plaintiffs named the Eweises as parties to this action in the FAC, which was filed

4    on April 30, 2013. As discussed above, the Eweises were properly served. After they failed to

5    answer, the Clerk of Court entered default against them. The Eweises have failed to appear in this

6    matter and have not responded to Chicago Title's Motion. There is nothing in the record

7    suggesting that their failure to appear and litigate this matter is based on excusable neglect. *See*

8    *Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after

9    proper service was not excusable neglect). Thus, this factor supports default judgment.

10            6.    Policy Favoring Deciding a Case on its Merits

11           The last *Eitel* factor examines whether the policy of deciding a case based on the merits

12    precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit

13    admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.*

14    However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this

15    preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal

16    quotation and citation omitted). Similarly, other courts have stated that default judgment is

17    appropriate when a defendant refuses to litigate a case. *See, e.g.*, *Bd. of Trs. v. RBS Wash. Blvd,*

18    *LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010). Here, the Eweises have not responded to

19    communication efforts by Chicago Title or participated in the proceedings. As such, a decision on

20    the merits would not be possible. In situations such as this, Rule 55(b) allows the Court to grant

21    default judgment. Thus, this final factor weighs in favor of granting Chicago Title's Motion.

22            7.    Summary of the *Eitel* Factors

23           Based on the foregoing analysis, the undersigned finds that each of the *Eitel* factors weighs

24    in favor of granting default judgment. Accordingly, the undersigned RECOMMENDS that the

25    District Court GRANT Chicago Title's Motion and enter default judgment against the Eweises as

26    to the fraud, conspiracy to defraud, and negligence causes of action.

27    **D.    Relief Sought**

28           After determining liability, the Court then calculates the amount of damages that should be

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1      awarded.  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012).

2      This two-step process is proper because, while for purposes of default judgment the Court

3      generally accepts as true the factual allegations of the complaint, the Court need not do so

4      regarding damages.  *Id.*

5              As discussed above, Chicago Title has established that the Property was foreclosed upon.

6      Consequently, on April 27, 2012, it was required to pay $191,500 to Hanna.  Todd Decl. ¶¶ 5-6.

7      As a result, the undersigned finds that Chicago Title has been damaged in the amount of $191,500.

8      Chicago Title also requests prejudgment and post-judgment interest.

9              Where state law provides the rule of decision, it is the duty of federal courts to ascertain

10     and apply that law.  *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007).  Prejudgment

11     interest is a substantive part of a plaintiff's claim and not merely a procedural mechanism; thus,

12     state law governs entitlement to it as well as its computation, unless preempted by federal law.  *Id.*

13     at 1101.  California Civil Code section 3288 provides that in actions for breach of an obligation

14     not arising from contract, and in every case of fraud, malice, or oppression, interest may be given

15     in the discretion of the trier of fact.  *See also Vogelsang v. Wolpert*, 227 Cal. App. 2d 102, 125

16     (1964) ("It is, of course, well settled that interest may be awarded in a fraud action under Civil

17     Code, § 3288, in the discretion of the trier of fact.").  However, because there is no legislative act

18     specifying the rate of prejudgment interest for a fraud claim, the rate set forth in Article XV,

19     Section 1 of the California Constitution, of seven per cent per annum, is applicable to the award of

20     tort damages.  *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994).

21             As discussed above, Chicago Title paid Hanna $191,500.  Thus, it is entitled to

22     prejudgment interest as follows: prejudgment interest at the rate of $36.73 per day, representing

23     the full $191,500 paid by Plaintiff ($191,500 x 7% per annum, divided by 365 days) from April

24     27, 2012 until the date of judgment.

25             As to post-judgment interest, while state law determines the rate of prejudgment interest in

26     diversity actions, post-judgment interest is governed by federal law.  28 U.S.C. § 1961; *Citicorp*

27     *Real Estate v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998).  Chicago Title is therefore entitled

28     to post-judgment interest at the federal rate pursuant to 28 U.S.C. § 1961, to be calculated from the

United States District Court
Northern District of California

1    date of the entry of judgment. Post-judgment interest is calculated "from the date of the entry of

2    the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

3    published by the Board of Governors of the Federal Reserve System, for the calendar week

4    preceding the date of the judgment." 28 U.S.C. § 1961(a). Thus, the post-judgment interest

5    calculation must be made at the time of judgment.

6        Based on this analysis, the undersigned RECOMMENDS that the District Court GRANT

7    Chicago Title's request for an award of $191,500 in damages, plus prejudgment interest in the

8    amount of $36.73 from April 27, 2012 through the date of judgment, and post-judgment interest at

9    a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

10   Board of Governors of the Federal Reserve System, for the calendar week preceding the date of

11   the judgment.

12                                   **CONCLUSION**

13       Based on the above analysis, the undersigned RECOMMENDS that the District Court

14   GRANT Chicago Title's Motion for Default Judgment and enter judgment against Defendants

15   Fahed Eweis and Nadia Eweis as to the fraud, conspiracy to defraud, and negligence causes of

16   action. The undersigned further RECOMMENDS that the Court award Chicago Title damages in

17   the amount of $191,500, plus prejudgment interest in the amount of $36.73 per day from April 27,

18   2012 through the date of judgment, and post-judgment interest at a rate equal to the weekly

19   average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

20   Federal Reserve System, for the calendar week preceding the date of the judgment.

21       Chicago Title shall serve a copy of this Report & Recommendation upon Fahed Eweis and

22   Nadia Eweis. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a

23   party may serve and file objections to this Report and Recommendation 14 days after being

24   served.

25       **IT IS SO RECOMMENDED.**

26   Dated: March 19, 2015

27   _____
     MARIA-ELENA JAMES
28   United States Magistrate Judge

13